UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MELISSA KELLEY

               Plaintiff,

        v.

ELI LILLY AND COMPANY

               Defendant.

Civil Action No. 05-CV-1882 (RCL)

**DEFENDANT ELI LILLY AND COMPANY'S
MOTION FOR SUMMARY JUDGMENT
<u>AS TO THE CLAIMS OF PLAINTIFF MELISSA KELLEY</u>**

Defendant Eli Lilly and Company ("Lilly") moves for Summary Judgment pursuant to Fed. R. Civ. P. 56 on all claims asserted against it by Plaintiff Melissa Kelley (Counts I through V) on the ground that there is no genuine issue of material fact and that Lilly is entitled to judgment in its favor as a matter of law.

Lilly is entitled to summary judgment as a matter of law on these counts because Plaintiff has not and can not come forward with any evidence that her mother's treating and prescribing physicians read or relied on any warnings or statements made by Lilly in deciding to prescribe a Lilly product to plaintiff's mother.

In further support of its motion, Lilly adopts and incorporates herein its accompanying Memorandum of Points and Authorities (including Statement of Undisputed Facts), and the Affidavit of Lynn M. Zuchowski.

WHEREFORE, Lilly moves for the entry of summary judgment in its favor as to Counts I through V of the Complaint.

## **REQUEST FOR HEARING**

Pursuant to LCvR 7(f), Lilly requests a hearing on its Motion for Summary Judgment.


Respectfully submitted,

ELI LILLY AND COMPANY


/s/ James J. Dillon
James J. Dillon, D.C. Bar # 485593
Foley Hoag LLP
155 Seaport Boulevard
World Trade Center West
Boston, MA 02210-2600
(617) 832-1000

and

Lawrence H. Martin, D.C. Bar # 476639
Foley Hoag LLP
1875 K Street, NW, Suite 800
Washington, D.C. 20006-1238
(202) 223-1200


Dated: June 30, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MELISSA KELLEY<br><br>                    Plaintiff,<br><br>          v.<br><br>ELI LILLY AND COMPANY<br><br>                    Defendant. | Civil Action No. 05-CV-1882 (RCL) |

**DEFENDANT ELI LILLY AND COMPANY'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction**

Defendant Eli Lilly and Company ("Lilly") submits this Memorandum of Points and

Authorities in Support of Its Motion for Summary Judgment.  Each of the claims asserted -

negligence, strict liability, breach of warranty, negligent misrepresentation - rest in the end on

the alleged inadequacy of Lilly's written product literature and warnings.  Each claim, then,

asserts that those written materials were read and relied upon by the prescribing doctor - the

learned intermediary - and that the doctor would not have prescribed the drug had better written

materials been supplied.  But Plaintiff has no evidence that the prescribing doctor saw, read, or

relied on Lilly's literature.  The pharmaceutical at issue here has been on the market for more

than twenty years when it was prescribed in this case.  It was never patented, and literally

hundreds of companies sold the drug over that span.  At least fifty companies sold it at the time

of the prescription.  So far as the record goes, that doctor might have prescribed the drug based

on his own training and experience, on medical literature, on the standard of care in his

community, or based on the product literature promulgated by one of the other companies that made the drug.

On the record, it is not plausible to assume that the doctor based the prescription decision on Lilly's product literature since at the time of the prescription, that Lilly literature did <u>not</u> have an indication to use the drug for the prevention of miscarriage, the purpose the physician here obviously pursued. It is perfectly acceptable for a physician to prescribe a drug for an FDA-approved use, even if one or more of the companies making the drug did not indicate it for that use. In such cases, however, the doctor's prescription decision cannot be based on the alleged inadequacy of the literature of one of these companies, Lilly, that did not suggest that use. On the record, Lilly's literature is simply not implicated or relevant. Since the only wrong alleged against Lilly is a failure in that literature,[1] Plaintiff cannot show that the alleged Lilly failure was at all a cause of her harm.

While the Complaint also asserts generally that Lilly was negligent in "failure to warn, over-promotion of DES, and failure to heed and report adverse studies regarding the safety and efficacy of DES," those failures, if proved, still relate to Lilly's product literature. Any testing, warning, or report of studies would of necessity be contained in the product literature that is the crux of this claim.

## II.     Statement of Undisputed Facts[2]

1.     In the Complaint, Ms. Kelley alleges that Lilly's failure to warn proximately and in fact caused the injuries for which she is now claiming damages. Complaint (attached as

---

[1] Ms. Kelley alleges that a Lilly product was prescribed to her mother, and that as a result she sustained injuries. Lilly does not concede that a Lilly product was ever prescribed to or ingested by Plaintiff's mother but, in any event, the critical point for liability is whether the prescribing doctor relied on Lilly's warnings and literature in deciding whether to prescribe the generic drug diethylstilbestrol to Plaintiff's mother.

[2] Lilly accepts these facts as undisputed for purposes of this summary judgment motion only and reserves the right to contest any of these facts at trial.

Exhibit 1 to the Affidavit of Lynn M. Zuchowski made in support of Defendant Eli Lilly and

Company's Motion for Summary Judgment ("Zuchowski Aff.") ¶¶5 (Count I - Negligence), 11

(Count II - Strict Liability), 15-18 (Count III - Breach of Warranty), 20-23 (Count IV - Negligent

Misrepresentation), 24 (Count VI - Punitive Damages) (Zuchowski Aff., Ex. 1).

    2.    While living in Massachusetts and while pregnant with Ms. Kelley, Mrs. Elman

was allegedly prescribed the diethylstilbestrol ("DES") by Dr. Safon in 1970 and 1971, even

though she was not experiencing any unusual symptoms during her pregnancy.  Complaint at ¶ 3

(Zuchowski Aff., Ex. 1); Plaintiff Melissa Kelley's Answers to Defendant's First Set of

Interrogatories ("Kelley Interrog") Nos. 6, 12 (attached as Exhibit 2 to Zuchowski Aff.);

Transcript of the Deposition of Roberta Elman ("Elman Dep.") at 14-16 (excerpts attached as

Exhibit 3 to Zuchowski Aff.).

    3.    Plaintiff's mother gave birth to Ms. Kelley at the Boston Hospital for Women,

Lying-In Division, in Boston, Massachusetts.  Plaintiff was born on August 24, 1971.  Kelley

Interrog. No. 1 (Zuchowski Aff., Ex. 2).

    4.    Dr. Safon, the physician who allegedly prescribed diethylstilbestrol to Ms.

Kelley's mother while she was pregnant with Plaintiff, is now deceased.  Kelley Interrog. No. 6

(Zuchowski Aff., Ex. 2).

    5.    Diethylstilbestrol was a prescription drug, available for use only by prescription

from a licensed physician.

    6.    Plaintiff has provided no medical records or prescription records demonstrating

that Dr. Safon prescribed Lilly's diethylstilbestrol, as opposed to a generic prescription or a

specific prescription for another drug company's brand of diethylstilbestrol to Plaintiff's mother

during her pregnancy with Ms. Kelley.  In fact, Plaintiff has provided no medical records or prescription records demonstrating that Dr. Safon prescribed Mrs. Elman diethylstilbestrol at all.

7.     In 1970-1971, the years that Ms. Kelley's mother allegedly took diethylstilbestrol, at least 50 companies manufactured diethylstilbestrol.  *See American Druggist Blue Book* ("Blue Book"), 1970 and 1971 (excerpts attached as at Exhibit 4 to Zuchowski Aff.); *Drug Topics Red Book* ("Red Book"), 1970 and 1971 (excerpts attached as at Exhibit 5 to Zuchowski Aff.).

8.     DES was a generic drug, never patented, that was never proprietary to any company.  *Sutowski v. Eli Lilly & Co.*, 696 N.E.2d 187, 188 (Ohio 1998) ("Because DES was not patented, some two hundred to three hundred drug companies produced DES in the years it was widely prescribed for use during pregnancy.")

9.     Federal Regulations now and in the years of Ms. Kelley's mother's pregnancy with her required *all* manufacturers of prescription medications to provide instructions and warnings for physicians on prescription medications that could only be obtained through the order of a licensed medical practitioner.  Federal Food, Drug and Cosmetic Act §§ 502, 503, 21 U.S.C. §§ 352(f), 353 (1938) (excerpts attached as Exhibit 6 to Zuchowski Aff.); Food and Drugs, 21 C.F.R. § 1.106 (1970) (excerpts attached as Exhibit 7 to Zuchowski Aff.); Food and Drugs, 21 C.F.R. § 1.106 (1971) (excerpts attached as Exhibit 7 to Zuchowski Aff.).

10.     Plaintiff has provided no evidence demonstrating that Dr. Safon ever read or consulted Lilly's product warnings and literature in determining whether or not to prescribe a medication to Ms. Kelley's mother.

11.     At the time of Ms. Kelley's mother's pregnancy with her, from approximately November 1970 to August 1971, Lilly's product literature did not indicate use of the drug during pregnancy.  *See* Lilly's diethylstilbestrol product literature from September 1969 and June 1971

(copies attached as Exhibit 8 to Zuchowski Aff.); 1970 and 1971 entries for Lilly's

diethylstilbestrol in the Physician's Desk Reference (copies attached as Exhibit 9 to Zuchowski

Aff.).

### III.    Argument

**A.    SUMMARY JUDGMENT IS MANDATED FOR A DEFENDANT WHERE THERE IS NO EVIDENCE ON AN ELEMENT ESSENTIAL TO PLAINTIFF'S CLAIMS.**

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). Once the moving party asserts "an absence of evidence to

support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the

latter must establish the existence of an issue that is both "genuine" and "material," *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party moving for summary judgment in a case

where the opposing party will have the burden of proof at trial is entitled to summary judgment if

he negates an essential element of the opponent's case or demonstrates that proof of that element

is unlikely to be forthcoming at trial. "There is no issue for trial unless there is sufficient

evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*,

477 U.S. at 249.

Plaintiff has the burden of proving a causal connection between an allegedly tortious act

of a defendant and their claim of injury. In this case, Plaintiff alleges that warnings by Lilly for

its diethylstilbestrol were inadequate and that these inadequate warnings were the cause of her

injuries. In essence, Plaintiff asserts that, but for Lilly's inadequate warnings, the prescription

for diethylstilbestrol would not have been made and the harm would not have occurred. An

essential element of each of these claims, then, is that the prescribing doctor and learned

intermediary, Dr. Safon, relied upon Lilly's warnings when he prescribed this drug. If Dr. Safon did not so rely, Lilly's warnings, adequate or inadequate, are simply beside the point of these claims.[3] Where the non-moving party bears the burden of proof, it may not defeat summary judgment by relying upon mere allegations or evidence that is "merely colorable" or "not significantly probative." *Anderson*, 477 U.S. at 249-50. Rather, the party must produce sufficient evidence to support a jury verdict. *Id.* at 248.

**B.    THE SUBSTANTIVE LAW OF MASSACHUSETTS CONTROLS PLAINTIFF'S CLAIMS.**

Massachusetts substantive law applies to Plaintiff's claims. Under District of Columbia choice of law principles, this Court must perform a "governmental interest" analysis. *District of Columbia v. Coleman*, 667 A.2d 811, 816 (1995). In determining which jurisdiction's policy would be more advanced by the application of its law, the Court must consider the four factors listed in the Restatement (Second) of Conflicts of Laws § 145: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship is centered. *Id.* The District of Columbia actually applies a "constructive blending" of the governmental interests test and the most significant relationship test. *Id.* (citing *Hercules & Co. v. Shama Rest.*, 566 A.2d 31, 41 n.18 (D.C. 1985)).

Ms. Kelley's exposure to DES took place in Massachusetts, the place where she was born, where her mother lived when she was pregnant with her, and where her mother allegedly was prescribed DES and filled her prescriptions for DES. Kelley Interrog. Nos. 1, 5, 6, 7

---

[3] Lilly does not concede that its product literature concerning diethylstilbestrol was in any way inadequate. However, for purposes of this summary judgment motion only, Lilly focuses on Plaintiff's burden to show that any alleged inadequacy caused Plaintiff's injuries.

(Zuchowski Aff., Ex. 2). The cause of action has no connection whatsoever to the District of Columbia. The substantive law of Massachusetts, then, clearly applies to Plaintiff's claims.

Moreover, the practice in DES cases applying the law of the place of the plaintiff's alleged exposure is consistently followed by other courts. *See, e.g., Tidler v. Eli Lily & Co.*, 95 F.R.D. 332, 334-35 (D.D.C. 1982); *In re DES Cases*, 789 F.Supp. 552, 567 (E.D.N.Y. 1992); *In re New York County DES Litig. (Godfrey v. Eli Lily & Co.)*, 636 N.Y.S.2d 338, 339 (N.Y. App. Div. 1996).

Applying § 145 to the facts of this case clearly shows that Massachusetts law should govern Plaintiff's claims. Maintenance of Plaintiff's claims will serve no substantial interest, if any, of the District of Columbia. As the above analysis regarding the applicable substantive law demonstrates, Massachusetts has a far more significant relationship to the parties and the occurrence at issue than does the District of Columbia.

## C.    BECAUSE THE SUBJECT MATTER OF THIS CASE IS A PRESCRIPTION DRUG, THE LEARNED INTERMEDIARY RULE APPLIES.

In Massachusetts, a drug manufacturer's duty to warn runs to the prescribing physician and not to the ultimate consumer of the product. *See Garside v. Osco Drug, Inc, 976* F. 2d. 77, 80 (1st Cir. 1992) (applying Massachusetts law). The prescribing physician is the logical target of a warning concerning a prescription medication, because only the physician has the scientific acumen required to comprehend the risks and benefits associated with prescription drugs. *Id.* (stating that the physician is in the best position to convey warnings regarding medical products to patients). A physician serves as a learned intermediary between a drug manufacturer and an ultimate patient or consumer. *See id.* Therefore any duty to warn runs to that physician, and not to the patient. *See Knowlton v. Deseret Medical, Inc.,* 930 F.2d 116, 120 n.2 (1st Cir. 1991) ("It

is generally accepted that in a case involving medical products prescribed or used by a physician or trained medical personnel, the warning runs to the physician not the patient.").

This case, arising from events allegedly occurring in 1970 and 1971, predates any use of consumer oriented package inserts, which were not required until at least 1976.[4] Estrogen Preparations, 41 Fed. Reg. 47,573, 47,576 (Oct. 29, 1976) (Zuchowski Aff., Ex. 11).

Plaintiff in this case must be able to demonstrate that Lilly breached a duty by failing to adequately warn Dr. Safon of the risks associated with diethylstilbestrol and, because of that failure, Dr. Safon prescribed diethylstilbestrol. Without proving that Dr. Safon ever read, viewed or relied on Lilly's product warnings, Plaintiff cannot prove that any alleged failure to warn by Lilly caused the injuries that serve as the basis for this action.

## D.    PLAINTIFF'S CLAIM FOR NEGLIGENT FAILURE TO WARN MUST BE DISMISSED BECAUSE SHE CANNOT DEMONSTRATE THAT LILLY'S WARNINGS WERE RELIED UPON BY DR. SAFON.

A cause of action for negligent failure to warn requires a plaintiff to prove that a prescription drug manufacturer (1) owed a duty to warn users of potential dangers of a medication, (2) breached that duty by not adequately warning of risks associated with that drug, (3) where such breach in fact caused harm because of a failure to warn, (4) where such breach proximately caused harm because of the failure to warn, and (5) that the failure to warn caused damages. *See MacDonald v. Ortho Pharm. Corp.*, 475 N.E.2d 65, 70-72 (Mass. 1985)

---

[4] This case predates consumer package inserts. Drugs dispensed by prescription had only limited mandated labeling requirements for the product as sold to consumers - essentially that the pharmacist attach a label with the patient's name, directions for use and cautionary statements, if any, contained in the prescription and dating and dispensing information. *See* Federal Food, Drug, and Cosmetic Act § 503(b)(2), 21 U.S.C. § 353(b)(2) (1938) (Zuchowski Aff., Ex. 6). Effective in 1961, the Food, Drug and Cosmetic Act was amended to require information for the licensed practitioner to be included with the package from which the drug is to be dispensed. *See* Enforcement of Regulations Drugs and Devices, New Drugs, 25 Fed. Reg. 6985 (July 22, 1960, Proposed Amendments to 21 CFR § 1.106(b)(3) and (4)) (attached as Exhibit 10 to Zuchowski Aff.). The "package inserts" now familiar to consumers came later, in 1976 (for estrogens). Estrogen Preparations, 41 Fed. Reg. 47,573, 47,576 (Oct. 29, 1976) (attached as Exhibit 11 to Zuchowski Aff.).

(explaining elements of cause of action for negligent failure to warn). In the context of prescription drugs, a drug manufacturer's warning is directed at a prescribing physician, not the patient. *See Osco Drug*, 976 F.2d at 80. Therefore Ms. Kelley must prove that Lilly failed to warn Dr. Safon of the risks associated with the product. *See id.*

Plaintiff has not produced any evidence that any failure to warn - even if such failure existed - caused any harm in fact or proximately. An inadequate warning may be the specific or proximate cause of harm only if the failure to warn led to a prescription that would not otherwise have occurred. Plaintiff cannot prove that Dr. Safon was even aware that Lilly's warnings existed at the time he allegedly prescribed a Lilly product to Mrs. Elman. Without such proof, Ms. Kelley cannot then claim that any deficiency in Lilly's warnings or literature was the specific cause of her harm, proximately caused her harm, or that any additional warnings by Lilly would have prevented her injuries. *See Motus v. Pfizer Inc.*, 358 F.3d 659, 661 (9th Cir. 2004) (granting summary judgment for defendant, finding that "Because the doctor testified that he did not read the warning label that accompanied Zoloft or rely on the information provided by Pfizer's detail men before prescribing the drug to Mr. Motus, the adequacy of Pfizer's warnings is irrelevant to the disposition of this case.")[5]

      1.     The "Heeding Presumption" Cannot Supply The Threshold Evidence Dr. Safon Read and Relied On Lilly's Warnings.

Plaintiffs in products liability cases can, once clear predicates are proved, gain the benefit of a rebuttable "heeding presumption" that an adequate warning would have been considered by the prescribing doctor, would have altered the doctor's prescription decision and, therefore,

---

[5] While California has not adopted the "heeding presumption," *Motus* is indistinguishable from this case because the so called "heeding presumption" can logically apply only <u>after</u> plaintiff first proves that the allegedly inadequate warning was seen and relied upon by the prescribing doctor. Only <u>after</u> the warning is implicated in the case, in a causal way, can there be a predicate for the presumption that a different warning would have been heeded and injury prevented. *See infra.* III.D(1).

would have prevented the injury. The predicate condition for this presumption is that the particular defendant failed to warn the specified physician who wrote the prescription. This predicate proof establishes the nexus between the defendant's act - the warning - and the prescription that allegedly caused harm. This link is required because without it, a defendant with no connection to the events at issue might still be held liable - a sort of negligent "warning in the air" that was never consulted and that caused no harm.

Under Massachusetts law, once a plaintiff establishes that a drug manufacturer failed to adequately warn a physician, the heeding presumption shifts the burden to the defendant to disprove that any additional warning would have prevented a plaintiff's injury. The heeding presumption fills in the gaps in the causal chain after a plaintiff proves that the defendant gave an inadequate warning to the doctor but may be unable to prove that an adequate warning to that doctor would have prevented a plaintiff's injury. *See Osco Drug,* 976 F.2d at 81 (1st Cir. 1992) ("However ... where an inadequate warning is given, a rebuttable presumption arises, beneficial to the plaintiff, that the failure to adequately warn was a proximate cause of the plaintiff's ingestion of the drug." (quoting *Seley v. G.D. Searle & Co.,* 423 N.E.2d 831, 838 (Ohio 1981))); *Knowlton*, 930 F.2d at 123 (1st Cir. 1991) ("This [heeding] presumption, absent the production of rebutting evidence by the defendant, is sufficient to satisfy the first branch of plaintiff's proximate cause burden." (quoting *Seley v. G.D. Searle & Co.,* 423 N.E.2d 831, 838 (Ohio 1981))).

This presumption may be rebutted by evidence that the particular prescribing physician would not have changed her prescription decision even if the "adequate" warning had been given. *See Osco Drug,* 976 F.2d at 81. The specificity of this rebuttal evidence reinforces the point made here - to merit the benefits of the "heeding presumption" a plaintiff must show at

least that the specific prescribing doctor got and relied upon an "inadequate warning." Rebuttal proof that this doctor would not have been influenced by a different warning makes no sense if that doctor never saw or considered the defendant's warning in the first place.

In each of the cases cited above, there was no dispute as to whose warnings were involved. In *Osco Drug*, plaintiffs brought suit for injuries resulting from the ingestion of phenobarbital, manufactured by the McKesson Corporation. *See Osco Drug*, 976 F.2d at 78-79. In analyzing plaintiffs' failure to warn claims, the Court's inquiry focused only on the adequacy of McKesson's warnings and whether the combination of certain other medications with phenobarbital - amoxicillin and erythromycin - could have caused the claimed injuries (severe burns). In *Knowlton*, plaintiffs sued Deseret Medical, the manufacturer of a catheter and needle that were used during plaintiff's open heart surgery. *See Knowlton,* 930 F.2d at 117. In discussing the inadequate warnings allegations, the Court focused exclusively on the sufficiency of Deseret's warnings regarding "the danger inherent in the use of the catheter and needle" and the propriety of the instructions accompanying those products. *See id.* at 118-19. There was no dispute concerning the source of the warnings and product literature that the plaintiffs alleged were inadequate and caused injury. Finally, in *G.D. Searle,* the Ohio case from which the heeding presumption was subsequently applied by Massachusetts courts in *Osco Drug* and *Knowlton,* the Court was charged with examining the adequacy of G.D. Searle's warnings regarding toxemia that accompanied its medication, Ovulen. *See G.D. Searle,* 423 N.E.2d at 836. As with *Osco Drug* and *Knowlton,* the Court in *G.D. Searle* took as a given that the warnings of the defendant were the specific warnings actually viewed by the learned intermediary, and therefore the decision concerned only the adequacy of that defendant's product

literature. There was never any argument regarding the origin of the allegedly inadequate warnings, only the adequacy of those warnings.

In each of these heeding presumption cases, there was no dispute raised that the product warnings or literature originated from the defendants named in those cases. Since that company's warnings were implicated in the decision to prescribe or use, it was reasonable to invoke the "heeding presumption" that any alteration in *that specific company's* product literature would have reached that same prescribing doctor, been heeded, and prevented injury. This presumption does not carry the same logical power with generic, unpatented products because there are many sources of warnings other than the single defendant here.

Diethylstilbestrol was a generic drug and was manufactured by literally scores of companies. *See McCormack v. Abbott Labs.*, 617 F. Supp. 1521, 1525 (D. Mass. 1985) ("DES was a fungible drug produced by as many as 300 drug companies from a chemically identical formula."); *Sutowski v. Eli Lilly & Co.*, 696 N.E.2d 187, 188 (Ohio 1998) ("Because DES was not patented, some two hundred to three hundred drug companies produced DES in the years it was widely prescribed for use during pregnancy."); *Smith v. Eli Lilly & Co.*, 560 N.E.2d 324, 329 (Ill. 1990) (noting that "as many as 300 companies" manufactured DES at some point prior to 1971). For the years 1970 and 1971 alone, the *American Druggist Blue Book* ("Blue Book") and *Drug Topics Red Book* ("Red Book") entries show that at least 50 companies manufactured DES. *See* Blue Book, years 1970 and 1971 (Zuchowski Aff., Ex 4); Red Book, years 1970 and 1971 (Zuchowski Aff., Ex. 5).

By statute and by Federal Food and Drug Administration regulations, *each* company that manufactured prescription drugs was required to provide its own product literature, including warnings. Prescription medications that lacked such adequate warnings would be deemed

misbranded drugs, and would subject manufacturers to liability. *See* Federal Food, Drug, and

Cosmetic Act, §§ 502, 503, 21 U.S.C. §§ 352, 353 (1938) (Zuchowski Aff., Ex. 6); Food and

Drugs, 21 C.F.R. § 1.106 (1970) and (1971) (Zuchowski Aff., Ex. 7).

Further, the use of DES was, by the time of the prescription here, long standing and well

established. Over the quarter century from the first approval of the drug for use in pregnancy,

many articles on the subject appeared in peer review journals, texts discussed its use, and

standards of practice were established. Without proving that Lilly's warnings - as opposed to

those of one of the many other sources where information about diethylstilbestrol was available -

were used by Dr. Safon, Plaintiff cannot show that (1) Lilly failed to adequately warn Dr. Safon,

(2) that but for Lilly's warning, Dr. Safon would not have prescribed diethylstilbestrol, or (3) that

any warning by Lilly - adequate or not - would have changed Dr. Safon's prescription practices.

Lilly's warnings are not the "but for" cause - the specific, proximate cause - for the injury here

without proof that Lilly's warnings even factored into Dr. Safon's prescription and treatment

decisions. It is rhetoric - not proof - to presume that Dr. Safon must have read Lilly's warnings.

This causal element is one that Plaintiff must prove, and this is a burden she has failed to meet.[6]

---

[6] In *Hibbs v. Abbott Lab.*, 814 P.2d 1186 (1991), the Court of Appeals of Washington refused to grant summary judgment for lack of causation where the prescribing doctor relied on his own knowledge and not the drug company's literature in prescribing DES. This case is distinguishable from that at hand because Massachusetts and Washington apply different standards in product liability actions. Washington has adopted market share liability, allowing a plaintiff to hold liable any and every drug company that sold the drug in the relevant time period regardless of whether the specific defendant's drug caused the plaintiff's harm. *See Hibbs*, 814 P.2d at 1187 (citing *Martin v. Abbot Lab.*, 689 P.2d 368 (1984)). It follows that Washington, in a market share case, could not require proof that a manufacturer's warnings were read and relied upon as there is no requirement to prove that the defendant's product was involved in the case at all. Instead, the market share standard for liability relaxes traditional causation principles that require a plaintiff to prove that the defendant was the cause in fact and the proximate cause of her injuries. Unlike Washington, Massachusetts has not relaxed the causation standard in this fashion and has not adopted the market share theory of liability. *See Payton v. Abbott Labs.*, 437 N.E.2d 171, 188-190 (1982) (finding plaintiff's theory of market share liability in a DES case did not satisfy the longstanding prerequisite in a negligence action of identifying the tortfeasor. Identification serves two important purposes: "it separates wrongdoers from innocent actors, and also ensures that wrongdoers are held liable only for the harm that they have caused").

It is important to note that Lilly's product literature during the time of Plaintiff's mother's pregnancy did <u>not</u> indicate the use of diethylstilbestrol to prevent miscarriage and advised the physician to weigh the risks and benefits before using diethylstilbestrol in a known pregnancy. *See* Lilly's diethylstilbestrol product literature from September 1969 and June 1971 (Zuchowski Aff., Ex. 8); 1970 and 1971 entries for Lilly's diethylstilbestrol in the Physician's Desk Reference (Zuchowski Aff., Ex. 9). While the use of diethylstilbestrol in pregnancy was then approved by the FDA, Lilly was not suggesting its use in 1970 and 1971. While it is perfectly acceptable for a physician to write prescriptions for uses that are not listed on every manufacturers' product label, there is no indication that Dr. Safon looked at Lilly's literature and relied on it. Circumstantial evidence suggests that if Dr. Safon did follow Lilly's literature during the relevant time period, he would not have prescribed Lilly's diethylstilbestrol for Mrs. Elman's use.

**E.**     **PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM MUST BE DISMISSED BECAUSE PLAINTIFF CANNOT MEET HER BURDEN OF PROVING THAT DR. SAFON DETRIMENTALLY RELIED ON STATEMENTS MADE SPECIFICALLY BY LILLY.**

To succeed on a claim of negligent misrepresentation against a manufacturer, a plaintiff bears the burden of proving that the defendant: (1) in the course of its business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) *by their justifiable reliance upon the information*, and (6) that it failed to exercise reasonable care or competence in obtaining or communicating the information. *Cummings v. HPG Int'l Inc.*, 244 F. 3d 16, 24 (1st Cir. 2001) (emphasis added) (applying Massachusetts law).

Just as in the claim of inadequate warning, Plaintiff's claim is based on alleged faults in Lilly's writings. Those writings, directed to prescribing doctors, cannot have caused any harm

unless the prescribing doctor saw and relied on them. Plaintiff has produced no evidence that Dr. Safon ever saw, much less relied on, Lilly's product literature. Because Plaintiff cannot prove that Dr. Safon read and detrimentally relied on warnings provided by Lilly, summary judgment is warranted in Lilly's favor on Plaintiff's claim for negligent misrepresentation.

F.    **PLAINTIFF'S CLAIM FOR BREACH OF WARRANTY MUST BE DISMISSED BECAUSE PLAINTIFF CANNOT PROVE THAT ANY WARRANTY BY LILLY WAS READ OR RELIED UPON BY DR. SAFON.**

Plaintiff alleges that Lilly breached both implied and express warranties, although she does not make clear which implied warranties were breached. Although it is not entirely clear what claim is being alleged, it is irrelevant because she cannot prevail on claims of breach of express warranty, breach of the implied warranty of merchantability, or breach of the implied warranty of fitness for a particular purpose.

1.    Because There is No Evidence that Dr. Safon Relied Upon Any Express Warranties Made By Lilly, Plaintiff's Claim For Breach of Express Warranty Must Fail.

Under Massachusetts law, "an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Mass. Gen. Laws c. 106 § 2-313. This requires that a plaintiff demonstrate that the targets of the express warranty knew that the warranty existed, read the warranty, and relied on its content. *See Sprague v. Upjohn*, Civ. A. No. 91-40035-NMG, 1995 WL 376934 at *3 (D. Mass. May 10, 1994) (citing *Roth v. Ray-Stel's Hair Stylists, Inc.*, 470 N.E.2d 137, 138 (Mass. App. Ct. 1984)). Therefore, if no evidence is presented that Dr. Safon knew of and relied on the statements that Plaintiff alleges constitute an express warranty, Plaintiff's breach of express warranty claim must fail.

2.    Because Claims for Breach of Implied Warranty of Merchantability Are Analyzed In Massachusetts Coextensively With Negligent Failure to Warn Claims, Plaintiff's Claim Can Not Succeed.

- 15 -

In Massachusetts, liability for breach of an implied warranty of merchantability is "intended to be fully as comprehensive as the strict liability theory of recovery that has been adopted by a great many other jurisdictions." *Back v. Wickes*, 378 N.E.2d 964, 968-69 (Mass. 1978).[7] However, Massachusetts law also mandates that a breach of warranty inquiry focused on warnings accompanying prescription medications be analyzed in negligence. In *Payton v. Abbott Labs., et al.*, 437 N.E.2d 171 (Mass. 1982), the Supreme Judicial Court rejected the plaintiff's theories of alternative and strict liability, noting that "[p]ublic policy favors the development and marketing of new and more efficacious drugs. The Restatement (Second) of Torts recognizes this policy by rejecting strict liability in favor of negligence for drug related injuries." *Payton*, 437 N.E.2d at 89-90. Claims of negligent failure to warn and a breach of an implied warranty of merchantability are treated "as a single claim for failure to warn" purposes. *See Sprague v. Upjohn*, Civ. A. No. 91-40035-NMG, 1995 WL 376934 * 3 (D. Mass. May 10, 1994) (quoting *MacDonald v. Ortho Pharm. Corp.*, 475 N.E.2d 65, 67-68 (Mass. 1985), *cert. denied*, 474 U.S. 920). In *Hoffman v. Houghton Chemical Corporation*, 751 N.E.2d 848, 859 (Mass. 2001), the Supreme Judicial Court stated, "[W]e implicitly recognized that negligent failure to warn and failure to warn under breach of warranty are to be judged by the same standard…We expressly recognize that convergence now." *Id. (citing Vassallo v. Baxter Healthcare Corp.*, 696 N.E.2d 909 (Mass. 1998)).

As the Supreme Judicial Court explained, the Restatement (Third) of Torts: Products Liability § 2(c) (1998) reaffirms this principle by concluding that a product "is defective because

---

[7] It is unnecessary to discuss Plaintiff's strict liability claim because, in Massachusetts, breach of warranty law is a remedy "fully as comprehensive" as the strict liability theory of recovery that has been adopted by other jurisdictions. *See Hoffman v. Houghton Chem. Corp.*, 751 N.E.2d 848, 859-860 (Mass. 2001); *Back v. Wickes, ,*378 N.E.2d 964, 968-69 (Mass. 1978). Massachusetts employs breach of warranty theory "in nearly all respects" as equivalent to strict liability in the context of manufacturing and design defects. Failure to warn claims based on breach of warranty, however, are analyzed through the negligence standard. *See Correia v. Firestone Tire & Rubber Co.*, 446 N.E.2d 1033, 1039 (Mass. 1983).

of inadequate instructions or warnings when the foreseeable risks of harm posed by the product

could have been reduced or avoided by the provision of reasonable instructions or

warnings…and the omission of the instructions or warnings renders the product not reasonably

safe." *Vassallo*, 696 N.E.2d at 923; *see also* Restatement (Third) of Torts: Products Liability §

2(c)(1998) §402A, comment m, at 34.

 As discussed above in this Memorandum, § III.D, *supra*, a claim of negligent failure to

warn demands proof of reliance on "inadequate" warnings.  Plaintiff has not produced any

evidence that Dr. Safon read and relied on Lilly's warnings while treating her mother, Mrs.

Elman, hence Plaintiff cannot prove that any alleged deficiency in those warnings proximately

caused her harms.  Because breach of warranty of merchantability claims based on a failure to

warn are analyzed coextensively with negligent failure to warn claims, Plaintiff's claim for

breach of the warranty of merchantability based on a failure to warn must be dismissed.  *See*

III.F, *supra.*

  3. Because Plaintiff Cannot Prove Reliance By Dr. Safon On Lilly's Skill or
    Judgment in Treating Her Mother, Plaintiff Cannot Bring A Claim for Breach of
    Implied Warranty of Fitness for a Particular Purpose.

 If Plaintiff instead intended to assert a claim for breach of an implied warranty of fitness

for a particular purpose because of inadequate warnings, that claim also must fail.  Such a claim

requires the consumer to prove that she relied on the manufacturer's knowledge, skill and

judgment in purchasing a product tailored to that consumer's specifications, and that as a result

of such reliance the consumer was injured.  *See* Mass. Gen. Laws c. 106 s. 2-315 ("Where the

seller at the time of contracting has reason to know any particular purpose for which the goods

are required and that the buyer is relying on the *seller's skill or judgment to select or furnish*

suitable goods, there is…an implied warranty that the goods shall be fit for such purpose.")

(emphasis added); *see also Johnson v. Brown and Williamson Tobacco Corp.*, 122 F. Supp. 2d

194, 207 (D. Mass. 2000) ("Under M.G.L. c.106, § 2-315, the warranty of fitness for a particular purpose arises when 1) the seller had reason to know of the particular purpose for which the buyer required the goods, 2) the seller had reason to know of the buyer's reliance on the seller's skill or judgment in selecting or furnishing suitable goods, and 3) the buyer relied in fact."). Here, however, such a warranty was never created by Lilly, as, again, there is no proof that Dr. Safon relied on *Lilly's* warnings, judgment or skill.

Lilly most certainly did make diethylstilbestrol that was accompanied by FDA approved warnings and instructions for use directed to physicians. The indications for use of this drug, in 1970 and 1971, however, did not include prevention of miscarriage, the purposes for which the doctor in this case allegedly prescribed the drug. *See* Lilly's diethylstilbestrol product literature from September 1969 and June 1971 (Zuchowski Aff., Ex. 8); 1970 and 1971 entries for Lilly's diethylstilbestrol in the Physician's Desk Reference (Zuchowski Aff., Ex. 9).

The allegation here is that Ms. Kelley's mother was prescribed diethylstilbestrol for use during pregnancy. There is no evidence whatsoever that Dr. Safon even read Lilly's product literature, and even if he had done so, Lilly's literature did not indicate or encourage using diethylstilbestrol during pregnancy. Failure to show that Dr. Safon relied on Lilly's skill, judgment or warnings results in a failure of proof on a claim for breach of warranty for a particular purpose.

## G.    MASSACHUSETTS DOES NOT AWARD PUNITIVE DAMAGES.

Plaintiff's claim for punitive damages must be dismissed. In the absence of a statute expressly authorizing punitive damages, Massachusetts courts are not permitted to grant such an award. *See City of Lowell v. Massachusetts Bonding & Ins. Co., et al.*, 47 N.E.2d 265, 272 (Mass. 1943) ("The damages awarded under such a rule are punitive. In this Commonwealth exemplary damages are not allowed unless authorized by statute."); *see also Boott Mills v.*

*Boston & Maine R.R.*, 106 N.E. 680, 683-84 (Mass. 1914); *Ellis v. Brockton Pub. Co.*, 84 N.E. 1018, 1020 (Mass. 1908).  No such statute exists that is applicable to this case, and therefore Plaintiff is not entitled to punitive damages.

## IV.    CONCLUSION

For the foregoing reasons, Lilly respectfully requests this Court grant summary judgment in Lilly's favor.  Lilly is entitled to judgment on all claims based upon allegedly inadequate warning, and claims of misrepresentation or breach of warranty premised on such warnings, for the reasons set out in this Memorandum.

<u>**REQUEST FOR HEARING**</u>

Pursuant to LCvR 7(f), Lilly requests a hearing on its Motion for Summary Judgment.

Respectfully submitted,

ELI LILLY AND COMPANY


/s/ James. J. Dillon
James J. Dillon, D.C. Bar # 485593
Foley Hoag LLP
155 Seaport Boulevard
World Trade Center West
Boston, MA 02210-2600
(617) 832-1000

and

Lawrence H. Martin, D.C. Bar # 476639
Foley Hoag LLP
1875 K Street, NW, Suite 800
Washington, D.C. 20006-1238
(202) 223-1200


Dated: June 30, 2006

## CERTIFICATE OF SERVICE

I certify that on June 30, 2006, true copies of Defendant Eli Lilly's Motion for Summary Judgment, Memorandum of Points and Authorities in Support of its Motion for Summary Judgment, and Affidavit of Lynn M. Zuchowski and associated exhibits were served by U.S. First Class Mail, postage prepaid, upon:

Aaron M. Levine, Esq.
Aaron M. Levine and Associates, P.A.
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
**Attorneys for Plaintiffs**


Lynn M. Zuchowski