# Exhibit 6

# FEDERAL FOOD, DRUG, AND COSMETIC ACT OF 1938

¶ 25

(June 25, 1938, Chapter 675, Public Law 75-717, 52 Stat. 1040, as amended; 21 U.S.C. Sec. 301-391.)

AN ACT TO prohibit the movement in interstate commerce of adulterated and misbranded food, drugs, devices, and cosmetics, and for other purposes.

### Chapter I—Short Title

| Act Sec. | 21 USC | | Paragraph |
|---|---|---|---|
| 1 | 301 | Short Title | 26 |

### Chapter II—Definitions

| Act Sec. | 21 USC | | Paragraph |
|---|---|---|---|
| 201 | 321 | Definitions | 30 |
| 201(a)(1) | 321(a)(1) | "State" | 31 |
| 201(a)(2) | 321(a)(2) | "Territory" | 32 |
| 201(b) | 321(b) | "Interstate Commerce" | 33 |
| 201(c) | 321(c) | "Department" | 34 |
| 201(d) | 321(d) | "Secretary" | 35 |
| 201(e) | 321(e) | "Person" | 36 |
| 201(f) | 321(f) | "Food" | 37 |
| 201(g)(1) | 321(g)(1) | "Drug" | 38 |
| 201(g)(2) | 321(g)(2) | "Counterfeit Drug" | 38A |
| 201(h) | 321(h) | "Device" | 39 |
| 201(i) | 321(i) | "Cosmetic" | 40 |
| 201(j) | 321(j) | "Official Compendium" | 41 |
| 201(k) | 321(k) | "Label" | 42 |
| 201(l) | 321(l) | "Immediate Container" | 43 |
| 201(m) | 321(m) | "Labeling" | 44 |
| 201(n) | 321(n) | "Misleading Labeling" as Including Failure to Reveal Material Facts | 45 |
| 201(o) | 321(o) | "Antiseptic" | 46 |
| 201(p) | 321(p) | "New Drug" | 47 |
| 201(q) | 321(q) | "Pesticide Chemical" | 48 |
| 201(r) | 321(r) | "Raw Agricultural Commodity" | 49 |
| 201(s) | 321(s) | "Food Additive" | 50 |
| 201(t) | 321(t) | "Color Additive" | 51 |
| 201(u) | 321(u) | "Safe," in Food and Color Additive and New Animal Drug Provisions, as Referring to Health of Man or Animal | 52 |
| 201(v) | 321(v) | "New Animal Drug" | 54 |
| 201(w) | 321(w) | "Animal Feed" | 55 |
| 201(x) | 321(x) | "Informal Hearing" | 56 |
| 201(y) | 321(y) | "Saccharin" | 57 |
| 201(z) | 321(z) | "Infant Formula" | 57A |
| 201(aa) | 321(aa) | "Abbreviated Drug Application" | 57B |
| 201(bb) | 321(bb) | "Knowingly;" "Knew" | 57C |
| 201(cc) | 321(cc) | "High Managerial Agent" | 57D |
| 201(dd) | 321(dd) | "Drug Product" | 57E |
| 201(ee) | 321(ee) | "Commissioner" | 57F |
| 201(ff) | 321(ff) | "Dietary Supplement" | 57G |
| 201(gg) | 321(gg) | "Processed Food" | 57H |
| 201(hh) | 321(hh) | "Administrator" | 57I |
| 201(hh) | 321(hh) | "Compounded Positron Emission Tomography Drug" | 57J |
| 201(ii) | 321(ii) | "Antibiotic Drug" | 57K |

### Chapter III—Prohibited Acts and Penalties

| Act Sec. | 21 USC | | Paragraph |
|---|---|---|---|
| 301 | 331 | Prohibited Acts | 60 |
| 301(a) | 331(a) | Introduction into Interstate Commerce of Adulterated or Misbranded Article | 61 |
| 301(b) | 331(b) | Adulteration or Misbranding in Interstate Commerce | 62 |
| 301(c) | 331(c) | Receipt and Delivery of Adulterated or Misbranded Article | 63 |
| 301(d) | 331(d) | Food Emergency Permit or New Drug Violation | 64 |

1847  2-2-98                Federal Food, Drug, and Cosmetic Act                3529

| Act Sec. | 21 USC | | Paragraph |
|---|---|---|---|
| 412(c) | 350a(c) | Registration and Premarket Notification | 209C |
| 412(d) | 350a(d) | Notification of Compliance | 209D |
| 412(e) | 350a(e) | Notification of Noncompliance | 209E |
| 412(f) | 350a(f) | Recall Procedures | 209F |
| 412(g) | 350a(g) | Recordkeeping | 209G |
| 412(h) | 350a(h) | Exemptions for Special Formulas | 209H |
| 412(i) | 350a(i) | Nutrient Requirements | 209I |
| 413 | 350b | New Dietary Ingredients | 210 |

**Chapter V—Drugs and Devices**

**Subchapter A—Drugs and Devices**

| 501 | 351 | Adulterated Drugs and Devices | 211 |
|---|---|---|---|
| 501(a)(1) | 351(a)(1) | Filthy, Putrid, or Decomposed Substance | 212 |
| 501(a)(2) | 351(a)(2) | Insanitary Conditions; Manufacturing Methods and Controls | 213 |
| 501(a)(3) | 351(a)(3) | Poisonous Container | 215 |
| 501(a)(4) | 351(a)(4) | Color Additive Which Is Unsafe | 216 |
| 501(a)(5) | 351(a)(5) | Unsafe New Animal Drug | 216A |
| 501(a)(6) | 351(a)(6) | Animal Feed with New Drug | 216B |
| 501(b) | 351(b) | Strength, Quality, or Purity Differing from Standard in Official Compendium | 217 |
| 501(c) | 351(c) | Strength, Purity, or Quality Differing from That Represented | 218 |
| 501(d) | 351(d) | Substance Reducing Quality or Strength; Substituted Substance | 219 |
| 501(e) | 351(e) | Devices Not in Compliance with Performance Standards | 219A |
| 501(f) | 351(f) | Devices Not in Compliance with Premarket Approval Requirements | 219B |
| 501(g) | 351(g) | Banned Devices | 219C |
| 501(h) | 351(h) | Devices Not in Compliance with Good Manufacturing Practices Requirements | 219D |
| 501(i) | 351(i) | Devices Not in Compliance with Terms of Investigational Use Exemption | 219E |
| 502 | 352 | Misbranded Drugs and Devices | 221 |
| 502(a) | 352(a) | False or Misleading Labeling | 222 |
| 502(b) | 352(b) | Name and Place of Business; Quantity of Contents | 223 |
| 502(c) | 352(c) | Prominence of Required Labeling | 224 |
| 502(d) | 352(d) | Habit-Forming Drug | 225 |
| 502(e) | 352(e) | Name of Drug or Device and Names and Quantities of Drug Ingredients | 226 |
| 502(f) | 352(f) | Directions for Use and Warnings Where Use May Be Dangerous | 228 |
| 502(g) | 352(g) | Packaging and Labeling as Prescribed in Official Compendium | 229 |
| 502(h) | 352(h) | Precautions Against Deterioration | 230 |
| 502(i)(1) | 352(i)(1) | Misleading Container | 231 |
| 502(i)(2) | 352(i)(2) | Imitation of Another Drug | 232 |
| 502(i)(3) | 352(i)(3) | Sale Under Name of Another Drug | 233 |
| 502(j) | 352(j) | Dangerous When Used as Suggested in Labeling | 234 |
| 502(k) | 352(k) | [Repealed] | 235 |
| 502(l) | 352(l) | [Repealed] | 236 |
| 502(m) | 352(m) | Color Additive Packaging and Labeling | 237 |
| 502(n) | 352(n) | Prescription Drug Advertisements | 238 |
| 502(o) | 352(o) | Violations of Section 510 | 239 |
| 502(p) | 352(p) | Special Package Standards | 240 |
| 502(q) | 352(q) | Restricted Devices | 240A |
| 502(r) | 352(r) | Advertising of Restricted Devices; Name, Uses, Warnings | 240B |
| 502(s) | 352(s) | Labeling Conforming to Performance Standard | 240C |
| 502(t) | 352(t) | Failure to Notify of Defect; Failure to File Reports or Records | 240D |
| 503 | 353 | Exemptions and Consideration for Drugs, Devices, and Biological Products | 244 |
| 503(a) | 353(a) | Drugs or Devices to Be Processed, Labeled, or Repacked Elsewhere | 245 |
| 503(b) | 353(b) | Prescription Requirement | 246 |

| Act Sec. | 21 USC | | Paragraph |
|---|---|---|---|
| 503(b)(1) | 353(b)(1) | Drugs That Should Be Dispensed by Prescription Only; Contrary Dispensing as Misbranding | 246A |
| 503(b)(2) | 353(b)(2) | Drugs Dispensed by Prescription Requirement | 246B |
| 503(b)(3) | 353(b)(3) | Removal of Habit-Forming Drugs and New Drugs from Prescription Requirement | 246C |
| 503(b)(4) | 353(b)(4) | Prescription Caution Statement; Omission or Inclusion as Misbranding | 246D |
| 503(b)(5) | 353(b)(5) | Narcotics and Marihuana Law Requirements Not Affected | 246E |
| 503(c) | 353(c) | Prescription Drug Marketing | 251 |
| 503(c)(1) | 353(c)(1) | Sale of Drug Samples | 251A |
| 503(c)(2) | 353(c)(2) | Sale of Drug Coupons | 251B |
| 503(c)(3) | 353(c)(3) | Drugs Purchased by Health Care Entities | 251C |
| 503(d) | 353(d) | Distribution of Drug Samples | 251D |
| 503(e) | 353(e) | Wholesale Distribution of Drugs | 251E |
| 503(f) | 353(f) | Veterinary Prescription Drugs | 252 |
| 503(f)(1) | 353(f)(1) | Drugs that Should Be Dispensed by Prescription Only; Contrary Dispensing as Misbranding | 252A |
| 503(f)(2) | 353(f)(2) | Exemption from Certain Misbranding Provisions | 252B |
| 503(f)(3) | 353(f)(3) | Exemption from Prescription Requirement | 252C |
| 503(f)(4) | 353(f)(4) | Prescription Caution Statement; Omission or Inclusion as Misbranding | 252D |
| 503(g) | 353(g) | Combination Drug, Device, or Biological Product | 253 |
| 503A | .... | Pharmacy Compounding | 253A |
| 504 | 354 | Veterinary Feed Directives | 254 |
| 504(a) | 354(a) | Supervision by Veterinarian | 254A |
| 504(b) | 354(b) | Required Labeling | 354B |
| 504(c) | 354(c) | Not Prescription Article | 254C |
| 505 | 355 | New Drugs | 255 |
| 505(a) | 355(a) | Effective Application Required | 256 |
| 505(b) | 355(b) | Requisites of Application | 257 |
| 505(b)(2) | 355(b)(2) | Patent Certification for NDAs Relying on Studies Not Conducted by Applicant | 257A |
| 505(b)(3) | 355(b)(3) | Notice to Patent Holders | 257B |
| 505(b)(4) | 355(b)(4) | Guidance to Reviews; Testing Agreements; Delay Limits | 257C |
| 505(c) | 355(c) | Clearance Procedure | 258 |
| 505(c)(2) | 355(c)(2) | Submission of Patent Information | 258A |
| 505(c)(3) | 355(c)(3) | Effective Dates for Approval of Applications | 258B |
| 505(c)(4) | 355(c)(4) | Pilot and Small Scale Manufacture | 258C |
| 505(d) | 355(d) | Grounds for Refusing Applications | 259 |
| 505(e) | 355(e) | Withdrawal of Approval | 260 |
| 505(f) | 355(f) | Revocation of Order Refusing, Withdrawing, or Suspending Approval | 261 |
| 505(g) | 355(g) | Service of Orders | 262 |
| 505(h) | 355(h) | Appeals | 262A |
| 505(i)(1) | 355(i)(1) | Exemption of Drug for Investigational Use | 263 |
| 505(i)(2) | 355(i)(2) | Submission of Information | 263A |
| 505(i)(3) | 355(i)(3) | Clinical Holds | 263B |
| 505(i)(4) | 355(i)(4) | Informed Consent Requirement | 263C |
| 505(j)(1) | 355(j)(1) | Abbreviated New Drug Applications | 264A |
| 505(j)(2) | 355(j)(2) | Contents of ANDAs; Petitions to Submit ANDAs for Products Differing from Listed Drugs | 264B |
| 505(j)(3) | 355(j)(3) | Guidance to Application Reviewers; Agreements on Study Requirements; Limits on Review Delay | 264C |
| 505(j)(4) | 355(j)(4) | Grounds for Refusal of Approval of ANDAs | 264D |
| 505(j)(5) | 355(j)(5) | Effective Dates for Approval of ANDAs | 264E |
| 505(j)(6) | 355(j)(6) | Effect of Withdrawal or Suspension of Approval of Listed Drug on ANDAs | 264F |
| 505(j)(7) | 355(j)(7) | Listed Drugs | 264G |
| 505(j)(8) | 355(j)(8) | "Bioavailability," "Bioequivalent" | 264H |
| 505(j)(9) | 355(j)(9) | Information | 264I |
| 505(k) | 355(k) | Records and Reports as to Clinical Experience | 265 |
| 505(l) | 355(l) | Disclosure of Safety and Effectiveness Data | 265A |

(A)(i) which is required by a regulation promulgated under subsection (b) of section 515 to have an approval under such section of an application for premarket approval and which is not exempt from section 515 under section 520(g), and

(ii)(I) for which an application for premarket approval or a notice of completion of a product development protocol was not filed with the Secretary within the ninety-day period beginning on the date of the promulgation of such regulation, or

(II) for which such an application was filed and approval of the application has been denied, suspended, or withdrawn, or such a notice was filed and has been declared not completed or the approval of the device under the protocol has been withdrawn;

(B)(i) which was classified under section 513(f) into class III, which under section 515(a) is required to have in effect an approved application for premarket approval, and which is not exempt from section 515 under section 520(g), and

(ii) which has an application which has been suspended or is otherwise not in effect; or

(C) which was classified under section 520(l) into class III, which under such section is required to have in effect an approved application under section 515, and which has an application which has been suspended or is otherwise not in effect.

(2)(A) In the case of a device classified under section 513(f) into class III and intended solely for investigational use, paragraph (1)(B) shall not apply with respect to such device during the period ending on the ninetieth day after the date of the promulgation of the regulations prescribing the procedures and conditions required by section 520(g)(2).

(B) In the case of a device subject to a regulation promulgated under subsection (b) of section 515, paragraph (1) shall not apply with respect to such device during the period ending—

(i) on the last day of the thirtieth calendar month beginning after the month in which the classification of the device in class III became effective under section 513, or

(ii) on the ninetieth day after the date of the promulgation of such regulation,

whichever occurs later.

[¶ 219C] [Banned Devices]

(g) If it is a banned device.

[¶ 219D] [Devices Not in Compliance with Good Manufacturing Practice Requirements]

(h) If it is a device and the methods used in, or the facilities or controls used for its manufacture, packing, storage, or installation are not in conformity with applicable requirements under section 520(f)(1) or an applicable condition prescribed by an order under section 520(f)(2).

[¶ 219E] [Devices Not in Compliance with Terms of Investigational Use Exemption]

(i) If it is a device for which an exemption has been granted under section 520(g) for investigational use and the person who was granted such exemption or any investigator who uses such device under such exemption fails to comply with a requirement prescribed by or under such section.

[June 25, 1938, Chap. 675, Sec. 501, 52 Stat. 1049; July 12, 1960, P.L. 86-618, title I, Sec. 102(b)(1), 74 Stat. 398; October 10, 1962, P.L. 87-781, title I, Sec. 101, 76 Stat. 780; July 13, 1968, P.L. 90-399, Sec. 5101(a), 82 Stat. 343; May 28, 1976, P.L. 94-295, Sec. 3, 90 Stat. 576, Sec. 9, 90 Stat. 583; November 10, 1978, P.L. 95-633, 92 Stat. 3773; November 28, 1990, P.L. 101-629, 104 Stat. 4511; October 29, 1992, P.L. 102-571, 106 Stat. 4491; November 21, 1997, P.L. 105-115, 111 Stat. 2296; 21 U.S. Code, Sec. 351.]

[¶ 221] MISBRANDED DRUGS AND DEVICES

Sec. 502. A drug or device shall be deemed to be misbranded—

[¶ 222] [False or Misleading Labeling]

(a) If its labeling is false or misleading in any particular. Health care economic information provided to a formulary committee, or other similar entity, in the course of the committee or the entity carrying out its responsibilities for the selection of drugs for managed care or other similar organizations, shall not be considered to be false or misleading under this paragraph if the health care economic information directly relates to an indication approved under section 505 or under section 351(a) of the Public Health Service Act for such drug and is based on competent and reliable scientific evidence. The requirements

set forth in section 505(a) or in section 351(a) of the Public Health Service Act shall not apply to health care economic information provided to such a committee or entity in accordance with this paragraph. Information that is relevant to the substantiation of the health care economic information presented pursuant to this paragraph shall be made available to the Secretary upon request. In this paragraph, the term "health care economic information" means any analysis that identifies, measures, or compares the economic consequences, including the costs of the represented health outcomes, of the use of a drug to the use of another drug, to another health care intervention, or to no intervention.

For CCH Explanation, cases and rulings, see ¶ 70,113; 70,127.

**[¶ 223] [Name and Place of Business; Quantity of Contents]**

(b) If in package form unless it bears a label containing—

(1) the name and place of business of the manufacturer, packer, or distributor; and

(2) an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count: Provided, That under clause (2) of this paragraph reasonable variations shall be permitted, and exemptions as to small packages shall be established, by regulations prescribed by the Secretary.

For CCH Explanation, cases and rulings, see ¶ 70,147; 70,151.

**[¶ 224] [Prominence of Required Labeling]**

(c) If any word, statement, or other information required by or under authority of this Act to appear on the label or labeling is not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

For CCH Explanation, cases and rulings, see ¶ 70,161.

**[¶ 225] [Habit-Forming Drug]**

[Subsection 502(d) concerning habit-forming drugs was repealed effective February 19, 1998, under ¶ 126(b) of the FDA Modernization Act of 1997, P.L. 105-115, 111 Stat. 2296.—CCH.]

For CCH Explanation, cases and rulings, see ¶ 70,157.

**[¶ 226] [Name of Drug or Device and Names and Quantities of Drug Ingredients]**

(e)(1)(A) If it is a drug, unless its label bears, to the exclusion of any other nonproprietary name (except the applicable systematic chemical name or the chemical formula)—

(i) the established name (as defined in subparagraph (3)) of the drug, if there is such a name;

(ii) the established name and quantity or, if determined to be appropriate by the Secretary, the proportion of each active ingredient, including the quantity, kind, and proportion of any alcohol, and also including whether active or not, the established name and quantity or if determined to be appropriate by the Secretary, the proportion of any bromides, ether, chloroform, acetanilide, acetophenetidin, amidopyrine, antipyrine, atropine, hyoscine, hyoscyamine, arsenic, digitalis, digitalis glucosides, mercury, ouabain, strophanthin, strychnine, thyroid, or any derivative or preparation of any such substances, contained therein, except that the requirement for stating the quantity of the active ingredients, other than the quantity of those specifically named in this subclause, shall not apply to nonprescription drugs not intended for human use; and

(iii) the established name of each inactive ingredient listed in alphabetical order on the outside container of the retail package and, if determined to be appropriate by the Secretary, on the immediate container, as prescribed in regulation promulgated by the Secretary; except that nothing in this subclause shall be deemed to require that any trade secret be divulged, and except that the requirements of this subclause with respect to alphabetical order shall apply only to nonprescription drugs that are not also cosmetics and that this subclause shall not apply to nonprescription drugs not intended for human use.

(B) For any prescription drug the established name of such drug or ingredient, as the case may be, on such label (and on any labeling on which a name for such drug or ingredient is used) shall be printed prominently and in type at least half as large as that used thereon for any proprietary name or designation for such drug or ingredient, except that to the extent that compliance with the

requirements of subclause (ii) or (iii) of clause (A) or this clause is impracticable, exemptions shall be established by regulations promulgated by the Secretary.

(2) If it is a device, and it has an established name, unless its label bears, to the exclusion of any other nonproprietary name, its established name (as defined in subparagraph (4)) prominently printed in type at least half as large as that used thereon for any proprietary name or designation for such device, except that to the extent compliance with the requirements of this subparagraph is impracticable, exemptions shall be established by regulations promulgated by the Secretary.

(3) As used in subparagraph (1), the term "established name," with respect to a drug or ingredient thereof, means (A) the applicable official name designated pursuant to section 508, or (B), if there is no such name and such drug, or such ingredient, is an article recognized in an official compendium, then the official title thereof in such compendium, or (C) if neither clause (A) nor clause (B) of this subparagraph applies, then the common or usual name, if any, of such drug or of such ingredient, except that where clause (B) of this subparagraph applies to an article recognized in the United States Pharmacopeia and in the Homeopathic Pharmacopoeia under different official titles, the official title used in the United States Pharmacopeia shall apply unless it is labeled and offered for sale as a homeopathic drug, in which case the official title used in the Homeopathic Pharmacopoeia shall apply.

(4) As used in subparagraph (2), the term "established name" with respect to a device means (A) the applicable official name of the device designated pursuant to section 508, (B) if there is no such name and such device is an article recognized in an official compendium, then the official title thereof in such compendium, or (C) if neither clause (A) nor clause (B) of this subparagraph applies, then any common or usual name of such device.

For CCH Explanation, cases and rulings, see ¶ 70,149.

[¶ 228] [Directions for Use and Warnings Where Use May Be Dangerous]

(f) Unless its labeling bears

(1) adequate directions for use; and

(2) such adequate warnings against use in those pathological conditions or by children where its use may be dangerous to health, or against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users, except that where any requirement of clause (1) of this paragraph, as applied to any drug or device, is not necessary for the protection of the public health, the Secretary shall promulgate regulations exempting such drug or device from such requirement.

For CCH Explanation, cases and rulings, see ¶ 70,153; 70,155; 70,175.

[¶ 229] [Packaging and Labeling as Prescribed in Official Compendium]

(g) If it purports to be a drug the name of which is recognized in an official compendium, unless it is packaged and labeled as prescribed therein. The method of packing may be modified with the consent of the Secretary. Whenever a drug is recognized in both the United States Pharmacopeia and the Homeopathic Pharmacopoeia of the United States, it shall be subject to the requirements of the United States Pharmacopeia with respect to packaging and labeling unless it is labeled and offered for sale as a homeopathic drug, in which case it shall be subject to the provisions of the Homeopathic Pharmacopoeia of the United States, and not to those of the United States Pharmacopeia; except that, in the event of inconsistency between the requirements of this paragraph and those of paragraph (e) as to the name by which the drug or its ingredients shall be designated, the requirements of paragraph (e) shall prevail.

For CCH Explanation, cases and rulings, see ¶ 70,159; 70,211.

[¶ 230] [Precautions Against Deterioration]

(h) If it has been found by the Secretary to be a drug liable to deterioration, unless it is packaged in such form and manner, and its label bears a statement of such precautions, as the Secretary shall by regulations require as necessary for the protection of the public health. No such regulation shall be established for any drug recognized in an official compendium until the Secretary shall have informed the appropriate body charged with the revision of such compendium of the need for such packaging or labeling requirements and such body shall have failed within a reasonable time to prescribe such requirements.

For CCH Explanation, cases and rulings, see ¶ 70,120.

**[¶ 231]  [Misleading Container]**

(l)(1) If it is a drug and its container is so made, formed, or filled as to be misleading; or

For CCH Explanation, cases and rulings, see ¶ 70,213.

**[¶ 232]  [Imitation of Another Drug]**

(2) If it is an imitation of another drug; or

For CCH Explanation, cases and rulings, see ¶ 70,223.

**[¶ 233]  [Sale Under Name of Another Drug]**

(3) If it is offered for sale under the name of another drug.

For CCH Explanation, cases and rulings, see ¶ 70,227.

**[¶ 234]  [Dangerous When Used as Suggested in Labeling]**

(j) If it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof.

For CCH Explanation, cases and rulings, see ¶ 70,199.

**[¶ 235]  [Insulin; Certification or Release]**

[Section 502(k) relating to the certification or release of insulin was repealed effective February 19, 1998, under Section 125(a)(1)(B) of the FDA Modernization Act of 1997, P.L. 105-115, 111 Stat. 2296.—CCH.]

**[¶ 236]  [Antibiotics; Certification or Release]**

[Section 502(l) relating to the certification or release of antibiotic drugs was repealed effective February 19, 1998, under Section 125(b)(2)(D) of the FDA Modernization Act of 1997, P.L. 105-115, 111 Stat. 2296.—CCH.]

**[¶ 237]  [Color Additive Packaging and Labeling]**

(m) If it is a color additive the intended use of which is for the purpose of coloring only, unless its packaging and labeling are in conformity with such packaging and labeling requirements, applicable to such color additive, as may be contained in regulations issued under section 721.

For CCH Explanation, cases and rulings, see ¶ 6052.

**[¶ 238]  [Prescription Drug Advertisements]**

(n) In the case of any prescription drug distributed or offered for sale in any State, unless the manufacturer, packer, or distributor thereof includes in all advertisements and other descriptive printed matter issued or caused to be issued by the manufacturer, packer, or distributor with respect to that drug a true statement of (1) the established name as defined in section 502(e), printed prominently and in type at least half as large as that used for any trade or brand name thereof, (2) the formula showing quantitatively each ingredient of such drug to the extent required for labels under section 502(e), and (3) such other information in brief summary relating to side effects, contraindications, and effectiveness as shall be required in regulations which shall be issued by the Secretary in accordance with the procedure specified in section 701(e) of this Act, except that (A) except in extraordinary circumstances, no regulation issued under this paragraph shall require prior approval by the Secretary of the content of any advertisement, and (B) no advertisement of a prescription drug, published after the effective date of regulations issued under this paragraph applicable to advertisements of prescription drugs, shall, with respect to the matters specified in this paragraph or covered by such regulations, be subject to the provisions of sections 12 through 17 of the Federal Trade Commission Act, as amended (15 U.S.C. 52-57). This paragraph (n) shall not be applicable to any printed matter which the Secretary determines to be labeling as defined in section 201(m) of this Act. Nothing in the Convention on Psychotropic Substances, signed at Vienna, Austria, on February 21, 1971, shall be construed to prevent drug price communications to consumers.

For CCH Explanation, cases and rulings, see ¶ 70,191.

**[¶ 239]  [Violations of Section 510]**

(o) If it was manufactured, prepared, propagated, compounded, or processed in an establishment in any State not duly registered under section 510, if it was not included in a list required by section

**3614**  Federal Laws  1843 1-5-98

510(f), if a notice or other information respecting it was not provided as required by such section or section 510(k), or if it does not bear such symbols from the uniform system for identification of devices prescribed under section 510(e) as the Secretary by regulation requires.

For CCH Explanation, cases and rulings, see ¶ 70,237; 70,241.

**[¶ 240] [Special Packaging Standards]**

(p) If it is a drug and its packaging or labeling is in violation of an applicable regulation issued pursuant to section 3 or 4 of the Poison Prevention Packaging Act of 1970.

For CCH Explanation, cases and rulings, see ¶ 70,215.

**[¶ 240A] [Restricted Devices]**

(q) In the case of any restricted device distributed or offered for sale in any State, if (1) its advertising is false or misleading in any particular, or (2) it is sold, distributed, or used in violation of regulations prescribed under section 520(e).

**[¶ 240B] [Advertising of Restricted Devices; Name, Uses, Warnings]**

(r) In the case of any restricted device distributed or offered for sale in any State, unless the manufacturer, packer, or distributor thereof includes in all advertisements and other descriptive printed matter issued or caused to be issued by the manufacturer, packer, or distributor with respect to that device (1) a true statement of the device's established name as defined in section 502(e), printed prominently and in type at least half as large as that used for any trade or brand name thereof, and (2) a brief statement of the intended uses of the device and relevant warnings, precautions, side effects, and contraindications and, in the case of specific devices made subject to a finding by the Secretary after notice and opportunity for comment that such action is necessary to protect the public health, a full description of the components of such device or the formula showing quantitatively each ingredient of such device to the extent required in regulations which shall be issued by the Secretary after an opportunity for a hearing. Except in extraordinary circumstances, no regulation issued under this paragraph shall require prior approval by the Secretary of the content of any advertisement and no advertisement of a restricted device, published after the effective date of this paragraph shall, with respect to the matters specified in this paragraph or covered by regulations issued hereunder, be subject to the provisions of sections 12 through 15 of the Federal Trade Commission Act (15 U.S.C. 52-55). This paragraph shall not be applicable to any printed matter which the Secretary determines to be labeling as defined in section 201(m).

**[¶ 240C] [Labeling Conforming to Performance Standard]**

(s) If it is a device subject to a performance standard established under section 514, unless it bears such labeling as may be prescribed in such performance standard.

**[¶ 240D] [Failure to Notify of Defect; Failure to File Reports or Records]**

(t) If it is a device and there was a failure or refusal (1) to comply with any requirement prescribed under section 518 respecting the device, (2) to furnish any material or information required by or under section 519 respecting the device, or (3) to comply with a requirement under section 522.

[June 25, 1938, Chap. 675, Sec. 502, 52 Stat. 1050; June 23, 1939, Chap. 242, Sec. 3, 53 Stat. 854; December 22, 1941, Chap. 613, Sec. 2, 55 Stat. 851; July 6, 1945, Chap. 281, Sec. 2, 59 Stat. 463; March 10, 1947, Chap. 16, Sec. 2, 61 Stat. 11; July 13, 1949, Chap. 305, Sec. 1, 63 Stat. 409; August 5, 1953, Chap. 334, Sec. 1, 67 Stat. 389; July 12, 1960, P.L. 86-618, Sec. 102(b)(2), 74 Stat. 398; October 10, 1962, P.L. 87-781, Secs. 105(c), 112(a), 112(b), 112(c), 131(a), and 305, 76 Stats. 785, 790, 791, 795; July 13, 1968, P.L. 90-399, Sec. 105(a), 82 Stat. 352; December 30, 1970, P.L. 91-601, Sec. 7(d), 84 Stat. 1673; May 28, 1976, P.L. 94-295, Sec. 3, 90 Stat. 577; Sec. 5, 90 Stat. 580; Sec. 9, 90 Stat. 583; November 10, 1978, P.L. 95-633, 92 Stat. 3768; June 16, 1992, P.L. 102-300; 106 Stat. 238; October 29, 1992; P.L. 102-571, 106 Stat. 4491; August 13, 1993, P.L. 103-80, 107 Stat. 773; November 21, 1997, P.L. 105-115, 111 Stat. 2296; 21 U.S. Code, Sec. 352.]

**[¶ 244] EXEMPTIONS AND CONSIDERATION FOR DRUGS, DEVICES, AND BIOLOGICAL PRODUCTS**

**[¶ 245] [Drugs or Devices to Be Processed, Labeled, or Repacked Elsewhere]**

Sec. 503. (a) The Secretary is hereby directed to promulgate regulations exempting from any labeling or packaging requirement of this Act drugs and devices which are, in accordance with the

practice of the trade, to be processed, labeled, or repacked in substantial quantities at establishments other than those where originally processed or packed, on condition that such drugs and devices are not adulterated or misbranded under the provisions of this Act upon removal from such processing, labeling, or repacking establishment.

For CCH Explanation, cases and rulings, see ¶ 70,163.

**[¶ 246] [PRESCRIPTION REQUIREMENT]**

**[¶ 246A] [Drugs That Should Be Dispensed by Prescription Only; Contrary Dispensing as Misbranding]**

(b) (1) A drug intended for use by man which—

(A) because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or

(B) is limited by an approved application under section 505 to use under the professional supervision of a practitioner licensed by law to administer such drug;

shall be dispensed only (i) upon a written prescription of a practitioner licensed by law to administer such drug, or (ii) upon an oral prescription of such practitioner which is reduced promptly to writing and filed by the pharmacist; or (iii) by refilling any such written or oral prescription if such refilling is authorized by the prescriber either in the original prescription or by oral order which is reduced promptly to writing and filed by the pharmacist. The act of dispensing a drug contrary to the provisions of this paragraph shall be deemed to be an act which results in the drug being misbranded while held for sale.

For CCH Explanation, cases and rulings, see ¶ 70,077—70,089; 70,201.

**[¶ 246B] [Drugs Dispensed by Prescription Requirement]**

(2) Any drug dispensed by filling or refilling a written or oral prescription of a practitioner licensed by law to administer such drug shall be exempt from the requirements of section 502, except paragraphs (a), (i) (2) and (3), (k), and (l), and the packaging requirements of paragraphs (g), (h), and (p) of said section, if the drug bears a label containing the name and address of the dispenser, the serial number and date of the prescription or of its filling, the name of the prescriber, and, if stated in the prescription, the name of the patient, and the directions for use and cautionary statements, if any, contained in such prescription. This exemption shall not apply to any drug dispensed in the course of the conduct of a business of dispensing drugs pursuant to diagnosis by mail, or to a drug dispensed in violation of paragraph (1) of this subsection.

For CCH Explanation, cases and rulings, see ¶ 70,173.

**[¶ 246C] [Removal of Habit-Forming Drugs and New Drugs from Prescription Requirement]**

(3) The Secretary may by regulation remove drugs subject to section 505 from the requirements of paragraph (1) of this subsection when such requirements are not necessary for the protection of the public health.

For CCH Explanation, cases and rulings, see ¶ 70,085.

**[¶ 246D] [Prescription Caution Statement; Omission or Inclusion as Misbranding]**

(4)(A) A drug that is subject to paragraph (1) shall be deemed to be misbranded if at any time prior to dispensing the label of the drug fails to bear, at a minimum, the symbol 'Rx only'.

(B) A drug to which paragraph (1) does not apply shall be deemed to be misbranded if at any time prior to dispensing the label of the drug bears the symbol described in subparagraph (A).

For CCH Explanation, cases and rulings, see ¶ 70,171.

**[¶ 246E] [Narcotics and Marihuana Law Requirements Not Affected]**

(5) Nothing in this subsection shall be construed to relieve any person from any requirement prescribed by or under authority of law with respect to drugs now included or which may hereafter be included within the classifications stated in section 3220 of the Internal Revenue Code (26 U.S.C. 3220), or to marihuana as defined in section 3238(b) of the Internal Revenue Code (26 U.S.C. 3238(b)).

**[¶ 251] [PRESCRIPTION DRUG MARKETING]**

3616 Federal Laws 1843 1-5-98

**[¶ 251A]  [Sale of Drug Samples]**

(c)(1) No person may sell, purchase, or trade or offer to sell, purchase, or trade any drug sample. For purposes of this paragraph and subsection (d), the term "drug sample" means a unit of a drug, subject to subsection (b), which is not intended to be sold and is intended to promote the sale of the drug. Nothing in this paragraph shall subject an officer or executive of a drug manufacturer or distributor to criminal liability solely because of a sale, purchase, trade, or offer to sell, purchase, or trade in violation of this paragraph by other employees of the manufacturer or distributor.

For CCH Explanation, cases and rulings, see ¶ 70,244.

**[¶ 251B]  [Sale of Drug Coupons]**

(2) No person may sell, purchase, or trade, offer to sell, purchase, or trade, or counterfeit any coupon. For purposes of this paragraph, the term "coupon" means a form which may be redeemed, at no cost or at a reduced cost, for a drug which is prescribed in accordance with subsection (b).

For CCH Explanation, cases and rulings, see ¶ 70,244.

**[¶ 251C]  [Drugs Purchased by Health Care Entities]**

(3)(A) No person may sell, purchase, or trade, or offer to sell, purchase, or trade, any drug—

(i) which is subject to subsection (b), and

(ii) (I) which was purchased by a public or private hospital or other health care entity, or

(II) which was donated or supplied at a reduced price to a charitable organization described in section 501(c)(3) of the Internal Revenue Code of 1954.

(B) Subparagraph (A) does not apply to—

(i) the purchase or other acquisition by a hospital or other health care entity which is a member of a group purchasing organization of a drug for its own use from the group purchasing organization or from other hospitals or health care entities which are members of such organization,

(ii) the sale, purchase, or trade of a drug or an offer to sell, purchase, or trade a drug by an organization described in subparagraph (A)(ii)(II) to a nonprofit affiliate of the organization to the extent otherwise permitted by law,

(iii) a sale, purchase, or trade of a drug or an offer to sell, purchase, or trade a drug among hospitals or other health care entities which are under common control,

(iv) a sale, purchase, or trade of a drug or an offer to sell, purchase, or trade a drug for emergency medical reasons, or

(v) a sale, purchase, or trade of a drug, an offer to sell, purchase, or trade a drug, or the dispensing of a drug pursuant to a prescription executed in accordance with subsection (b).

For purposes of this paragraph, the term "entity" does not include a wholesale distributor of drugs or a retail pharmacy licensed under State law and the term "emergency medical reasons" includes transfers of a drug between health care entities or from a health care entity to a retail pharmacy undertaken to alleviate temporary shortages of the drug arising from delays in or interruptions of regular distribution schedules.

For CCH Explanation, cases and rulings, see ¶ 70,245.

**[¶ 251D]  [Distribution of Drug Samples]**

(d)(1) Except as provided in paragraphs (2) and (3), no person may distribute any drug sample. For purposes of this subsection, the term "distribute" does not include the providing of a drug sample to a patient by a—

(A) practitioner licensed to prescribe such drug,

(B) health care professional acting at the direction and under the supervision of such a practitioner, or

(C) pharmacy of a hospital or of another health care entity that is acting at the direction of such a practitioner and that received such sample pursuant to paragraph (2) or (3).

(2)(A) The manufacturer or authorized distributor of record of a drug subject to subsection (b) may, in accordance with this paragraph, distribute drug samples by mail or common carrier to practitioners licensed to prescribe such drugs or, at the request of a licensed practitioner, to pharmacies of hospitals or other health care entities. Such a distribution of drug samples may only be made—

¶ 251A   Act § 503   ©1998, CCH INCORPORATED

(I) in response to a written request for drug samples made on a form which meets the requirements of subparagraph (B), and

(II) under a system which requires the recipient of the drug sample to execute a written receipt for the drug sample upon its delivery and the return of the receipt to the manufacturer or authorized distributor of record.

(B) A written request for a drug sample required by subparagraph (A)(i) shall contain—

(I) the name, address, professional designation, and signature of the practitioner making the request,

(II) the identity of the drug sample requested and the quantity requested,

(III) the name of the manufacturer of the drug sample requested, and

(iv) the date of the request.

(C) Each drug manufacturer or authorized distributor of record which makes distributions by mail or common carrier under this paragraph shall maintain, for a period of 3 years, the request forms submitted for such distributions and the receipts submitted for such distributions and shall maintain a record of distributions of drug samples which identifies the drugs distributed and the recipients of the distributions. Forms, receipts, and records required to be maintained under this subparagraph shall be made available by the drug manufacturer or authorized distributor of record to Federal and State officials engaged in the regulation of drugs and in the enforcement of laws applicable to drugs.

(3) The manufacturer or authorized distributor of record of a drug subject to subsection (b) may, by means other than mail or common carrier, distribute drug samples only if the manufacturer or authorized distributor of record makes the distributions in accordance with subparagraph (A) and carries out the activities described in subparagraphs (B) through (F) as follows:

(A) Drug samples may only be distributed—

(I) to practitioners licensed to prescribe such drugs if they make a written request for the drug samples, or

(II) at the written request of such a licensed practitioner, to pharmacies of hospitals or other health care entities.

A written request for drug samples shall be made on a form which contains the practitioner's name, address, and professional designation, the identity of the drug sample requested, the quantity of drug samples requested, the name of the manufacturer or authorized distributor of record of the drug sample, the date of the request and signature of the practitioner making the request.

(B) Drug manufacturers or authorized distributors of record shall store drug samples under conditions that will maintain their stability, integrity, and effectiveness and will assure that the drug samples will be free of contamination, deterioration, and adulteration.

(C) Drug manufacturers or authorized distributors of record shall conduct, at least annually, a complete and accurate inventory of all drug samples in the possession of representatives of the manufacturer or authorized distributor of record. Drug manufacturers or authorized distributors of record shall maintain lists of the names and address of each of their representatives who distribute drug samples and of the sites where drug samples are stored. Drug manufacturers or authorized distributors of record shall maintain records for at least 3 years of all drug samples distributed, destroyed, or returned to the manufacturer or authorized distributor of record, of all inventories maintained under this subparagraph, of all thefts or significant losses of drug samples, and of all requests made under subparagraph (A) for drug samples. Records and lists maintained under this subparagraph shall be made available by the drug manufacturer or authorized distributor of record to the Secretary upon request.

(D) Drug manufacturers or authorized distributors of record shall notify the Secretary of any significant loss of drug samples and any known theft of drug samples.

(E) Drug manufacturers or authorized distributors of record shall report to the Secretary any conviction of their representatives for violations of subsection (c)(1) or a State law because of the sale, purchase, or trade of a drug sample or the offer to sell, purchase, or trade a drug sample.

(F) Drug manufacturers or authorized distributors of record shall provide to the Secretary the name and telephone number of the individual responsible for responding to a request for information respecting drug samples.

For CCH Explanation, cases and rulings, see ¶ 70,244.

3618            Federal Laws            1843 1-5-98

**[¶ 251E]** **[Wholesale Distribution of Drugs]**

(e)(1)(A) Each person who is engaged in the wholesale distribution of a drug subject to subsection (b) of this section and who is not the manufacturer or an authorized distributor of record of such drug shall, before each wholesale distribution of such drug (including each distribution to an authorized distributor of record or to a retail pharmacy), provide to the person who receives the drug a statement (in such form and containing such information as the Secretary may require) identifying each prior sale, purchase, or trade of such drug (including the date of the transaction and the names and addresses of all parties to the transaction).

(B) Each manufacturer of a drug subject to subsection (b) of this section shall maintain at its corporate offices a current list of the authorized distributors of record of such drug.

(2)(A) No person may engage in the wholesale distribution in interstate commerce of drugs subject to subsection (b) of this section in a State unless such person is licensed by the State in accordance with the guidelines issued under subparagraph (B).

(B) The Secretary shall by regulation issue guidelines establishing minimum standards, terms, and conditions for the licensing of persons to make wholesale distributions in interstate commerce of drugs subject to subsection (b) of this section. Such guidelines shall prescribe requirements for the storage and handling of such drugs and for the establishment and maintenance of records of the distributions of such drugs.

(3) For the purposes of this subsection and subsection (d) of this section—

(A) the term "authorized distributors of record" means those distributors with whom a manufacturer has established an ongoing relationship to distribute such manufacturer's products, and

(B) the term "wholesale distribution" means distribution of drugs subject to subsection (b) of this section to other than the consumer or patient but does not include intracompany sales and does not include distributions of drugs described in subsection (c)(3)(B) of this section.

For CCH Explanation, cases and rulings, see ¶ 70,246.

**[¶ 252]** **[VETERINARY PRESCRIPTION DRUGS]**

**[¶ 252A]** **[Drugs That Should Be Dispensed by Prescription Only; Contrary Dispensing as Misbranding]**

(f)(1)(A) A drug intended for use by animals other than man other than a veterinary feed directive drug intended for use in animal feed or an animal feed bearing or containing a veterinary feed directive drug, which—

(i) because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary for its use, is not safe for animal use except under the professional supervision of a licensed veterinarian, or

(ii) is limited by an approved application under subsection (b) of section 512 to use under the professional supervision of a licensed veterinarian,

shall be dispensed only by or upon the lawful written or oral order of a licensed veterinarian in the course of the veterinarian's professional practice.

(B) For purposes of subparagraph (A), an order is lawful if the order—

(i) is a prescription or other order authorized by law,

(ii) is, if an oral order, promptly reduced to writing by the person lawfully filling the order, and filed by that person, and

(iii) is refilled only if authorized in the original order or in a subsequent oral order promptly reduced to writing by the person lawfully filling the order, and filed by that person.

(C) The act of dispensing a drug contrary to the provisions of this paragraph shall be deemed to be an act which results in the drug being misbranded while held for sale.

For CCH Explanation, cases and rulings, see ¶ 74,506.

**[¶ 252B]** **[Exemption from Certain Misbranding Provisions]**

(2) Any drug when dispensed in accordance with paragraph (1) of this subsection—

(A) shall be exempt from the requirements of section 502, except subsections (a), (g), (h), (i)(2), (i)(3), and (p) of such section, and

¶ 251E    Act § 503                                ©1998, CCH INCORPORATED

(B) shall be exempt from the packaging requirements of subsections (g), (h), and (p) of such section, if—

(i) when dispensed by a licensed veterinarian, the drug bears a label containing the name and address of the practitioner and any directions for use and cautionary statements specified by the practitioner, or

(ii) when dispensed by filling the lawful order of a licensed veterinarian, the drug bears a label containing the name and address of the dispenser, the serial number and date of the order or of its filling, the name of the licensed veterinarian, and the directions for use and cautionary statements, if any, contained in such order.

The preceding sentence shall not apply to any drug dispensed in the course of the conduct of a business of dispensing drugs pursuant to diagnosis by mail.

For CCH Explanation, cases and rulings, see ¶ 74,506.

[¶ 252C]  [Exemption from Prescription Requirement]

The Secretary may by regulation exempt drugs for animals other than man subject to section 512 from the requirements of paragraph (1) when such requirements are not necessary for the protection of the public health.

For CCH Explanation, cases and rulings, see ¶ 74,506.

[¶ 252D]  [Prescription Caution Statement; Omission or Inclusion as Misbranding]

(4) A drug which is subject to paragraph (1) shall be deemed to be misbranded if at any time prior to dispensing its label fails to bear the statement "Caution: Federal law restricts this drug to use by or on the order of a licensed veterinarian.". A drug to which paragraph (1) does not apply shall be deemed to be misbranded if at any time prior to dispensing its label bears the statement specified in the preceding sentence.

For CCH Explanation, cases and rulings, see ¶ 74,506.

[¶ 253]  [Combination Drug, Device, or Biological Product]

(g)(1) The Secretary shall designate a component of the Food and Drug Administration to regulate products that constitute a combination of a drug, device, or biological product. The Secretary shall determine the primary mode of action of the combination product. If the Secretary determines that the primary mode of action is that of—

(A) a drug (other than a biological product), the persons charged with premarket review of drugs shall have primary jurisdiction,

(B) a device, the persons charged with premarket review of devices shall have primary jurisdiction, or

(C) a biological product, the persons charged with premarket review of biological products shall have primary jurisdiction.

(2) Nothing in this subsection shall prevent the Secretary from using any agency resources of the Food and Drug Administration necessary to ensure adequate review of the safety, effectiveness, or substantial equivalence of an article.

(3) The Secretary shall promulgate regulations to implement market clearance procedures in accordance with paragraphs (1) and (2) not later than 1 year after the date of enactment of this subsection.

(4) As used in this subsection:

(A) The term "biological product" has the meaning given the term in section 351(i) of the Public Health Service Act (42 U.S.C. 262(i)).

(B) The term "market clearance" includes—

(i) approval of an application under section 505, 507, 515, or 520(g),

(ii) a finding of substantial equivalence under this subchapter, and

(iii) approval of a biologics license application under subsection (a) of section 351 of the Public Health Service Act (42 U.S.C. 262).

For CCH Explanation, cases and rulings, see ¶ 2161; 70,071.

[June 25, 1938, Chap. 675, Sec. 503, 52 Stat. 1051; October 26, 1951, Chap. 578, Sec. 1, 65 Stat. 648; October 10, 1962, P.L. 87-781, Sec. 104(e)(2), 76 Stat. 785; December 30, 1970, P.L. 91-601, Sec. 7, 84 Stat. 1673; April 22, 1988, P.L. 100-293, 102 Stat. 95; November 16, 1988, P.L. 100-670, 102 Stat. 3971; November 28, 1990, P.L. 101-629, 104 Stat. 4511; August 17, 1991, P.L. 102-108, 105 Stat. 549; June 16, 1992, P.L. 102-300, 106 Stat. 238; August 26, 1992, P.L. 102-353, 106 Stat. 941; October 9, 1996, P.L. 104-250, 110 Stat. 3151; November 21, 1997, P.L. 105-115, 111 Stat. 2296; 21 U.S. Code, Sec. 353.]

[¶ 253A] PHARMACY COMPOUNDING

➤➤CAUTION: Sec. 503A takes effect on November 21, 1998 (see Sec. 127(b) of the FDA Modernization Act, ¶ 1193M).—CCH.

Sec. 503A. (a) IN GENERAL.—Sections 501(a)(2)(B), 502(f)(1), and 505 shall not apply to a drug product if the drug product is compounded for an identified individual patient based on the unsolicited receipt of a valid prescription order or a notation, approved by the prescribing practitioner, on the prescription order that a compounded product is necessary for the identified patient, if the drug product meets the requirements of this section, and if the compounding—

(1) is by—

(A) a licensed pharmacist in a State licensed pharmacy or a Federal facility, or

(B) a licensed physician,

on the prescription order for such individual patient made by a licensed physician or other licensed practitioner authorized by State law to prescribe drugs; or

(2)(A) is by a licensed pharmacist or licensed physician in limited quantities before the receipt of a valid prescription order for such individual patient; and

(B) is based on a history of the licensed pharmacist or licensed physician receiving valid prescription orders for the compounding of the drug product, which orders have been generated solely within an established relationship between—

(i) the licensed pharmacist or licensed physician; and

(ii)(I) such individual patient for whom the prescription order will be provided; or

(II) the physician or other licensed practitioner who will write such prescription order.

For CCH Explanation, cases and rulings, see ¶ 70,091.

[¶ 253B] [Requisites of Compounded Drug]

(b) COMPOUNDED DRUG.—

(1) LICENSED PHARMACIST AND LICENSED PHYSICIAN.—A drug product may be compounded under subsection (a) if the licensed pharmacist or licensed physician—

(A) compounds the drug product using bulk drug substances, as defined in regulations of the Secretary published at section 207.3(a)(4) of title 21 of the Code of Federal Regulations—

(i) that—

(I) comply with the standards of an applicable United States Pharmacopoeia or National Formulary monograph, if a monograph exists, and the United States Pharmacopoeia chapter on pharmacy compounding;

(II) if such a monograph does not exist, are drug substances that are components of drugs approved by the Secretary; or

(III) if such a monograph does not exist and the drug substance is not a component of a drug approved by the Secretary, that appear on a list developed by the Secretary through regulations issued under subsection (d);

(ii) that are manufactured by an establishment that is registered under section 510 (including a foreign establishment that is registered under section 510(i)); and

(iii) that are accompanied by valid certificates of analysis for each bulk drug substance;

(B) compounds the drug product using ingredients (other than bulk drug substances) that comply with the standards of an applicable United States Pharmacopoeia or National Formulary monograph, if a monograph exists, and the United States Pharmacopoeia chapter on pharmacy compounding;