UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MELISSA KELLEY

              Plaintiff,

          v.

ELI LILLY AND COMPANY

              Defendant.

Civil Action No. 05-CV-1882 (RCL)

Next Event:

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff and opposes Defendant Eli Lilly and Company's Motion for Summary Judgment and as grounds therefore states that <u>four previous courts</u> have considered this exact motion and denied summary judgment based on the heeding presumption and that there are genuine issues of material facts in dispute upon which a reasonable juror could find it more likely than not that the prescribing physician would have read and heeded a warning as to the risks of Diethylstilbestrol had one been issued.  Plaintiff is entitled to all favorable inferences from the proof she submits that:

A)     Plaintiff has established that she was exposed to a Lilly product.

B)     The drug would never have been sold or promoted had the Defendant done adequate pre-market testing.

C)     Obstetrics/Gynecology experts have testified that Lilly should have tested and warned of the dangers of Diethylstilbestrol for pregnancy use, and that had a warning been issued, it would have been in general circulation and heeded.

D)    Dr. Safon, the prescriber of the DES, is presumed to have complied with the standard of care and kept current with the warning and would have seen and heeded a warning that DES carried risks to the exposed fetus, had Lilly provided one.

E)    Had there been a proper warning, that warning would have been conveyed to the mother by Pharmacist Baker, and she would have refused to expose her baby to a teratogen.

F)    Plaintiff is entitled to the heeding presumption consistent with Massachusetts' rights of recovery.

G)    Lilly was the leader in promoting DES and its labeling ruled the market.

H)    Lilly was the only Diethylstilbestrol manufacturer listed in the Physician's Desk Reference in the relevant years and was the prime purveyor of information regarding DES and the only DES advertised in the PDR.

And for such other and further reasons as set forth in Plaintiff's memorandum and appendices attached.

**WHEREFORE** Plaintiff prays the Court to deny the Defendant's Motion for Summary Judgment.

**Request for Hearing**

The Plaintiff requests the court to grant oral argument on this motion.

Respectfully submitted,

Aaron M. Levine, #7864
Aaron M. Levine & Associates, P.C.
1320 19th Street, N.W., Suite 500
Washington, D.C.  20036
202-833-8040
ATTORNEY FOR PLAINTIFF

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MELISSA KELLEY

          Plaintiff,

    v.

ELI LILLY AND COMPANY

          Defendant.

Civil Action No. 05-CV-1882 (RCL)

Next Event:

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF OPPOSITION
TO DEFENDANT ELI LILLY'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 4

II.  PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL
     FACTS .......................................................................................................... 6

III. DEFENDANT HAS NOT MET ITS BURDEN FOR SUMMARY JUDGMENT ............. 8

     A.   Defendant's Burden for Summary Judgment ............................................. 8

IV.  THE HEEDING PRESUMPTION PROTECTS PLAINTIFF'S RIGHT TO RECOVER
     ON FAILURE TO WARN, BREACH OF WARRANTY, AND NEGLIGENT
     MISREPRENSENTATION CLAIMS .................................................................. 9

     A.   If Lilly had tested and warned, DES would have never been used
          in pregnant women ................................................................................ 11

     B.   Defendant has not met its burden to rebut the heeding presumption ....... 12

     C.   Defendant's authorities support Plaintiff ................................................ 15

     D.   The multiplicity of manufacturers does not make any difference to the heeding
          presumption ......................................................................................... 16

     E.   Even if the heeding presumption did not apply, Plaintiff has presented evidence
          that, if a warning had been given, it would have been passed along to Plaintiff's
          mother .................................................................................................. 19

V.   CONCLUSION ............................................................................................... 20

## TABLE OF AUTHORITIES

**CASES:**

Baughn v. Eli Lilly and Co., 356 F.Supp.2d 1177 (D. Kan. 2005)................................................ 10

Belanger, et al. v.  Safeskin Corp., et al., 20 Mass. L. Rep. 51  (Mass. Dist. Ct. 2005)............. 5

Brochu v. Ortho Pharmaceutical Corp, 642 F.2d 652 (1st Cir. 1981) ........................................ 16

Casale, et al. v. Eli Lilly & Co., C.A. 1:03-cv-11833-DPW,
(D.C. Mass. March 23, 2004) ............................................................................................... 10, 13

Catrett v. Johns-Manville Sales Corp., 826 F.2d 33 (D.C. Cir. 1987). ....................................... 8

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)............................................................................ 8

Curtis v. Porter, 784 A.2d 18 (Me. 2001) .................................................................................. 8

Dalke v. The Upjohn Co., et al., 555 F.2d 245 (9th Cir. 1977) .................................................. 18

Garside v. Osco Drug, 976 F.2d 77 (1st Cir. 1992) ........................................................ 11, 13, 14

Guevara v. Dorsey Laboratories, Div. of Sandoz, Inc., 845 F.2d 364 (1st Cir. 1988)................ 19

Hansch v. Eli Lilly & Co., No. 04-00122, mem. op. (N.D. Cal. 2005) ...................................... 10

Hibbs, et al. v. Abbott Labs, et al., 814 P.2d 1186 (Wash. Ct. App. 1991) ................................ 13

Knowlton v. Deseret, 930 F.2d 116 (1st Cir. 1991)................................................................... 9, 13

MacDonald v. Ortho Pharmaceutical Corp., 475 N.E.2d 65 (Mass. 1985) ................................ 12

McCue v. Norwich Pharmacal Co., 453 F.2d 1033 (1st Cir. 1972)............................................ 16

McEwen v. Ortho Pharmaceutical Corp., 270 Ore. 375 (Or. 1974)........................................... 19

Medics Pharm. Corp. v. Newman, 378 S.E.2d 487 (Ga. Ct. App. 1989)................................... 18

Miskulin v. Eli Lilly, No. 418517 (Cal. Super. Oct. 25, 2005) ................................................. 10

Motus v. Pfizer Inc., 358 F.3d 659 (9th Cir. 2004)................................................................... 15

Pierluisi v. E. R. Squibb & Sons, Inc., 440 F. Supp. 691 (D.P.R. 1977) .................................... 19

Seley v. G.D. Searle & Co., 423 N.E.2d 831(1981)............................................................ 9, 11, 13

2

Shields v. Eli Lilly & Co., 895 F.2d 1463 (D.C. Cir. 1990) ........................................................ 9

Sterling Drug, Inc. v. Cornish, 370 F.2d 82 (8th Circ. 1966) ................................................... 16

Sterling Drug, Inc. v. Yarrow, 408 F.2d 978 (8th Cir. 1969) .................................................... 16

United States v. Project on Gov't Oversight, 2006 U.S. App. LEXIS 17721
(D.C. Cir. 2006)........................................................................................................................... 8

Wolfe v. Ford Motor Co., 6 Mass. App. Ct. 364, 376 N.E.2d 143 (Mass. 1978) ...................... passim

**OTHER AUTHORITIES:**

Gordon Rosenblum & Eugene Melinkoff. Preservation of the Threatened
Pregnancy with Particular Reference to the Use of Diethylstilbestrol,
55 West J. Sur. Obst. & Gyn. 597 (1947) .................................................................................. 12

Hearing Before the H. Comm. on Interstate & Foreign Commerce, 86th Cong.,
Second Session, 277, 283 (1960) (testimony of Thomas Carney,
Vice President for Eli Lilly & Co.) ............................................................................................. 8

The Physician's Desk Reference to Pharmaceutical Specialties and Biologicals 111
(Henrietta Bull & Barbara Huff eds., Medical Economics, Inc. 20th ed. 1966) ......................... passim

The Physician's Desk Reference to Pharmaceutical Specialties and Biologicals 111
(Barbara Huff & Anne Marie Carey eds., Medical Economics, Inc. 24th ed. 1970) .................. passim

The Physician's Desk Reference to Pharmaceutical Specialties and Biologicals 111
(Barbara Huff ed., Medical Economics, Inc. 25th ed. 1971) ...................................................... passim

Regulation of Diethylstilbestrol (DES) (Its Use As a Drug for Humans and in
Animal Feed): Hearing Before the Subcomm. of the H. Comm. on Gov't Operations,
92nd Congress 77 (1971) (statement of Thomas Carney. V.P. of Eli Lilly & Co.)` ................... 4

Robert K. Enders & William L. Merritts, Mink Production in Relation to
Stilbestrol, 16:7 The Fur Journal 4 (1950) ................................................................................. 5

R. R. Greene, M. W. Burrill & A. C. Ivy, Experimental Intersexuality: the
Paradoxical Effects of Estrogens on the Sexual Development of the Female
Rat, 74 The Anatomical Record 4 (1939) ................................................................................ 5, 7, 11

Section 402 A, Restatement (Second) of Torts (1965) ............................................................... passim

W. J. Dieckmann et al., Does the Administration of Diethylstilbestrol During
Pregnancy Have Therapeutic Value?, 66 Amer. J. of Ob. and Gyn. 1062, 1074
(1953) ...................................................................................................................................... 4, 12

## I.  INTRODUCTION

Lilly refuses to get the message sent by courts across the nation.  After four previously failed attempts to obtain summary judgment on the heeding argument,[1] where the prescribing physician is dead, Lilly weighs in for a fifth time with the same argument against the same (if not even more overwhelmingly unfavorable) law.

Diethylstilbestrol ("DES"), a mid-20th century fertility nostrum, has been banned by the Food and Drug Administration, recalled by manufacturers and branded a carcinogen and teratogen by the World Health Organization, the National Institutes of Health (NIH), the American College of Obstetrics and Gynecology, and every health organization devoted to reproductive medicine.  See App. 1, 2 & 3.  It is a recognized carcinogen and teratogen.  Even Defendant Lilly admits marketing the drug was a mistake.  See App. 2; see also CDC Resource Focuses on DES Exposure, 289 J. Amer. Med. Assn. 1624 (2003); DES: The Complete Story, Orenberg, St. Martin Press 1981, The Greatest Experiment Ever Performed On Women, Seaman, Hyperion Press, (2003); Daughters At Risk: A Personal DES Story, Doubleday (1981). Diethylstilbestrol was sold to five to ten million women as a universal remedy to produce plump and healthy babies even though it never worked.[2]  See W.J. Dieckmann, M.D., et al., Does the Administration of Diethylstilbestrol During Pregnancy Have Therapeutic Value?, 66 Amer. J. of Ob. and Gyn. 1062, 1074 (1953) attached at App. 5.  The Defendant failed to conduct a single test to investigate the effects of DES on the forming female daughter even though it knew from

---

1 For a more detailed discussion of these cases see pages 9 to 10.

2 In 1968 the National Academy of Sciences in its review of the effectiveness of DES for the purpose of preventing threatened or habitual abortion found that effectiveness cannot be demonstrated by the literature or its own experience.  See Regulation of Diethylstilbestrol (DES) (Its Use As a Drug for Humans and in Animal Feed): Hearing Before the Subcomm. of the H. Comm. on Gov't Operations, 92nd Congress 77 (1971) (statement of Thomas Carney, V.P. of Eli Lilly & Co.).  At this time Lilly was asked by the F.D.A. to provide evidence that DES was effective and failed to provide any such information.

4

the 1940's of reports in the literature that estrogen and DES in high doses stunted the reproductive organs of the exposed daughter in animals.  See Defendant Eli Lilly & Co.'s Responses to Pl.'s First Set of Int., #17, App. 15; Enders, App. 3 & Greene, App. 4.

Plaintiff has identified and defendant does not contest, that Lilly was the manufacturer of DES in this case.  As such, Plaintiff is entitled to the favorable inference that a Lilly product was dispensed to the Plaintiff's mother.  All of Lilly's multiple manufacturers arguments should be ignored.

Applying Massachusetts law, Plaintiff is entitled to proceed under the common law rights of negligence, namely failure to warn, breach of warranty and negligent misrepresentation.  At summary judgment, Plaintiff is entitled to favorable inferences that 1) Lilly failed to adequately test DES for safety or efficacy, 2) DES was a terotogen and a defective or unreasonably dangerous drug, 3) Lilly failed to warn of any risks of injury to the exposed daughter, and 4) that Lilly went to the market ignoring and suppressing information about suck risks and injuries.  For the purpose this motion, Lilly must concede that the following warning should have accompanied its DES.  See Exhibit 5 to the Statement of Julius Piver, M.D., App. 23.

Courts in Massachusetts, just as those around the country, have recognized the validity of the heeding presumption, i.e. that a warning, if given, will be heeded.  Wolfe v. Ford Motor Co., 6 Mass. App. Ct. 364, 352, 376 N.E.2d 143 (Mass. 1978) (explaining that Massachusetts has fully adopted comment j to Section 402 A, Restatement (Second) of Torts (1965), where if a warning is given, a reasonable assumption arises that it will be read and heeded); Belanger, et al. v. Safeskin Corp., et al., 20 Mass. L. Rep. 51,  (Mass. Dist. Ct. 2005).

The Defendant promoted DES for use by pregnant women, knowing it would affect the uterus of both the mother and daughter.  Lilly also knew the exposed daughter's uterus would not

5

be put to the test or called into action for thirty-plus years. During that time, records have been lost or destroyed and doctors have passed away, as in this case. This is not the fault of the Plaintiff but the fault of the Defendant in placing an untested bomb on the market with a forty-year fuse. Nonetheless, Plaintiff has, after scouring for state-of-the-art reports, standard of care experts and other witnesses, gathered sufficient evidence to warrant her day in court.

II.    PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS

Facts Relevant to Product Identification:

1 – 6.  Admitted.

7.    Denied. Most companies listed in the Red and Blue Book were not national manufacturers or distributors as the Defendant implies-- most were generic, local repackagers and bottlers. The great majority of the listings consist of local rebottlers who sold locally and regionally in limited areas of America. See Affidavit of Harold Sparr, R. Ph., attached as App. 9, ¶4-6. The Red Book and Blue Book are technical, international catalogues and not accurate representations of the Boston, Massachusetts DES market. See Sparr Affidavit, ¶4-6, App. 9. While the Defendant claims that there were 50 brands of DES listed, there were only 6-8 name brand national companies; the representation that there was a multiplicity of DES manufacturers is simply false. In addition, all of the DES manufactures followed uniform labeling and warnings as promoted by Defendant Eli Lilly. See Falk Affidavit, App. 22; Piver Statement, App. 23.

8 – 10.  Admitted.

11.    Denied as incomplete. Defendant held forth its product for almost two decades for use in preventing miscarriage. Without explicitly rejecting its use in pregnant women,

6

Defendant is not entitled to argue that it did not hold its product out as a preventive in miscarriage. Furthermore, Lilly refers, in The Physician's Desk Reference, to DES' use in pregnant women in both the 1970 and 1971 editions no less than five times without a warning of the risks or as a contraindication.

PLAINTIFF'S COUNTER STATEMENT OF GENUINE FACTS IN ISSUE

12.    Dr. Richard Falk testifies that Diethylstilbestrol was ineffective, terotogenic, carcinogenic, and that a reasonable and prudent drug manufacturer such as Eli Lilly and Company should have known and warned of its dangers by 1953 with the warning attached as Exhibit 5 to Dr. Piver's Statement, App. 23. See Falk Statement, ¶2, ¶3 & ¶6, App. 22.

13.    Dr. Julius Piver will testify that Eli Lilly should have issued warnings regarding the dangers of DES for pregnancy use, and that had Lilly issued a warning, it would have been a departure from the standard of care for an obstetrician to prescribe DES to a pregnant woman. See Piver Statement, ¶9-10 & ¶14, App. 23.

14.    Pharmacist Steven Baker, who worked at the Drug Fair Pharmacy, where Plaintiff's mother filled her DES prescription at the time, testified that, if a woman came into the pharmacy with a prescription for "DES," "stilbestrol," or "diethylstilbestrol," the Lilly brand would have been dispensed. See Statement of Steven Baker, R.Ph., App. 6.

15.    DES labeling was industry wide - the F.D.A. New Drug application was a joint industry project whereby DES manufacturers formed a Committee led by Lilly's submission for the approval of DES use in pregnant women. Lilly never warned of the DES risk of malformation to the offspring. See Letter from Dr. Hines, (Lilly) to Dr. Morrell, (Squibb), dated May 13, 1941, App. 13 & Greene, App. 4.

7

16.    The Physician's Desk Reference ("PDR") is the bible and primary reference authority on the use of prescription pharmaceuticals for physicians in all fields of medicine. Defendant Lilly was the dominant voice in promoting Diethylstilbestrol in the PDR. Lilly was the only company listed for Diethylstilbestrol in the 1970 and 1971 PDR Indices. See 1970 PDR, App. 19 and 1971 PDR, App. 20. All the other companies listed have only creams, suppositories, or other brand name products. Id. No other company was listed in 1970 PDR besides Lilly, as selling or recommending DES. See 1970 PDR, App. 19 and 1971 PDR, App. 20.

17.    Defendant Lilly admits it held the lion's share of the DES market and produced 75% of the DES sold. See Hearing Before the H. Comm. on Interstate & Foreign Commerce, 86th Cong., Second Session, 277, 283 (1960) (testimony of Thomas Carney, Vice President for Eli Lilly & Co.), App. 21.

18.    DES is a banned drug; it never would have received approval from the Food and Drug Administration if proper testing and warning had been done. See Falk Statement, App. 22.

III.    DEFENDANT HAS NOT MET ITS BURDEN FOR SUMMARY JUDGMENT

A. Summary Judgment Standard

Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). All reasonable inferences are to be made in favor of the non-moving party. United States v. Project on Gov't Oversight, 2006 U.S. App. LEXIS 17721 (D.C. Cir. 2006), Catrett v. Johns-Manville Sales Corp., 826 F.2d 33, 38 (D.C. Cir. 1987). The Heeding Presumption, as "a material point in dispute," is

8

entitled to "the full benefit of all favorable inferences that may be drawn from the facts presented".

Curtis v. Porter, 784 A.2d 18, 22 (Me. 2001). While "litigants may not offer speculations or slight possibilities in support of their claims" they are also not limited to offering only the incontrovertible. Shields v. Eli Lilly & Co., 895 F.2d 1463, 1467 (D.C. Cir. 1990). Thus, the Court must view the law in a light most favorable to the Plaintiff when deciding a motion for summary judgment.

IV.   THE HEEDING PRESUMPTION PROTECTS PLAINTIFF'S RIGHT TO RECOVER ON FAILURE TO WARN, BREACH OF WARRANTY, AND NEGLIGENT MISREPRENSENTATION CLAIMS

> Comment j to Section 402 A (2 Restatement of Torts 2d 353) establishes a presumption that an adequate warning, if given, will be read and heeded. In such a situation, the presumption established works to the benefit of the manufacturer. However, where no warning is given, or where an inadequate warning is given, a rebuttable presumption arises, beneficial to the plaintiff, that the failure to adequately warn was a proximate cause of the plaintiff's ingestion of the drug. This presumption, absent the production of rebutting evidence by the defendant, is sufficient to satisfy the first branch of the plaintiff's proximate cause burden.

Knowlton v. Deseret, 930 F.2d 116, 123 (1st Cir. 1991) (applying Massachusetts law) (citing Seley v. G.D. Searle & Co., 423 N.E.2d. 831, 838, 67 Ohio St.2d 192, 199-200 (1981) (emphasis supplied).

Defendant Lilly is asking this Court to re-adjudicate the applicability of the heeding presumption in a DES setting, a question that Defendant Lilly has lost four times in other courts, the most recent one just over a year ago. See infra 10. In those prior cases, just as in the present case, the doctor who prescribed DES to the mother more than forty years ago is deceased. Without a single evidentiary fact or law, the Defendant argues now, as they did then, that because the Plaintiff cannot ask the deceased doctor whether a proper warning would have made a difference, the Defendant manufacturer cannot be found liable for her injuries. There is no

evidence that the prescribing physician would have deviated from the applicable standard of care and ignored official labeling or proper warnings.

Lilly argues that the Plaintiff must prove that Dr. Safon read and relied on Lilly's literature in order to prove causation. If Plaintiff cannot prove causation, then, defendant argues, it is entitled to summary judgment as a matter of law. Lilly has lost summary judgment time and time again on its argument that Plaintiff cannot prove the deceased physician read the actual literature. Casale, et al. v. Eli Lilly & Co., C.A. 1:03-cv-11833-DPW, (U.S. D.C. Mass. March 23, 2004) attached as App. 16; Miskulin v. Eli Lilly, No. 418517, *order denying summary judgment* (Cal. Super. Oct. 25, 2005) attached as App. 11; Hansch v. Eli Lilly & Co., No. 04-00122, mem. op. (N.D. Cal. 2005) attached as App. 10; Baughn v. Eli Lilly and Co., 356 F.Supp.2d 1177 (D. Kan. 2005), attached as App. 8. Lilly continues to lose this argument, because it is in direct contradiction to the "heeding presumption" recognized by Massachusetts, and many other states, in product liability cases. Wolfe v. Ford Motor Co., 6 Mass. App. Ct. 364, 352, 376 N.E.2d 143 (Mass. 1978). Plaintiff is entitled to a presumption that Dr. Safon complied with the standard of care and kept up with the literature, such as Lilly's labeling, their promotional materials, The Physician's Desk Reference, or "Dear Doctor" letters. See Falk Statement, App. 22; Piver Statement, App. 23.

Defendant asks the court to find, as a matter of law, that Dr. Safon, a Board Certified OB/GYN, with a practice composed entirely of women, would have: 1) prescribed DES even if Lilly had never developed it or spearheaded the campaign to get DES approved through the Food and Drug Administration 2) ignored published warnings, 3) intentionally refused to advise plaintiff's mother of published risks, and 4) that Dr. Safon, all by himself, developed, manufactured, promoted, tested, distributed and prescribed DES without any reliance on any

existing manufacturer.  Defendant similarly asks this court to find, as a matter of law, that the relevant pharmacist would have ignored his obligation to transmit warnings, and that Plaintiff's mother would have insisted on swallowing a drug, in the face of warnings, which could harm her baby.  Lilly provides no substantiation, by way of affidavit or deposition, to support any of these assertions.  At this stage in the proceeding, Plaintiff is entitled to the Restatement 402A, comment j presumption that the conduct of Lilly in failing to test and failing to warn of the dangers of DES to the Food and Drug Administration, as well as the medical profession was negligent and below the standard of a prudent drug company.  Wolfe v. Ford Motor Co., 376 N.E.2d 143 (Mass. 1978).

### A. If Lilly Had Tested And Warned, DES Would Have Never Been Used In Pregnant Women.

Defendant argues that Plaintiff is first responsible for demonstrating that Dr. Safon read and relied upon Eli Lilly's product literature before the heeding presumption takes hold.  This is not so.  Plaintiff must first present evidence that Eli Lilly did not provide an adequate warning before the heeding presumption is available to Plaintiff.  Garside v. Osco Drug, 976 F.2d 77, 81 (1st Cir. 1992).

Lilly was negligent to put DES on the market for use in pregnant women and to do so without any warning whatsoever of the risks.  Had Lilly performed appropriate testing on DES in humans or animals, prior to marketing DES for use in pregnancy, it would have discovered that the drug caused malformation, cancer, sterility and a plethora of reproductive tract malformations to the exposed daughter.  See Greene, App. 4.  The drug should never have made it to the market or should have been accompanied by a "Dear Doctor" letter or other warning designed to catch the attention of the average OB/GYN, to disabuse them of their belief in the

11

drug's value and make them aware of the risks to the growing fetus. Lilly did neither of these. See The Physician's Desk Reference 1970 and 1971 at App. 19 and App. 20, Roberta J. Apfel, M.D., M.P.H. & Susan M. Gedaro, M.D., To Do No Harm, DES and the Dilemmas of Modern Medicine (Yale University Press 1984); Cynthia Orenberg, DES: The Complete Story (St. Martin's Press 1981); and Aaron M. Levine, Identification of Manufacturer of Diethylstilbestrol (DES), in 46 Am. Jur. Proof of Facts 2d 59 (Christian C. Bjorkland ed., 1986).

In reality, Lilly is claiming that whenever the prescribing physician is dead, a DES case is improvable. Plaintiff's OB/GYN experts, Dr. Piver and Dr. Falk, however, testify that the Defendant failed to test and warn of the dangers of DES, that the Defendant knew that DES was an unreasonably dangerous drug, and that, had an adequate warning been given, DES would not have been prescribed to pregnant women in an ordinary and customary OB/GYN practice. See Statement of Julius S. Piver, MD, ¶6-14, App. 23 & Statement of Richard J. Falk, MD, ¶2-8, App. 22. Had Defendant shared what it knew and should have known about DES, a reproductive-tract mutating poison to the developing fetus, with the medical community, no doctor would have prescribed this drug to a pregnant woman and the Food and Drug Administration would not have approved it. See Dieckmann, App. 5; Enders, App. 3; Rosenblum; App. 14.

B.    Defendant Has Failed to Meet Its Burden To Rebut the Heeding Presumption

It is generally accepted under Massachusetts law that, in prescription drug cases, warnings must be given to the prescribing physician as the "learned intermediary." MacDonald v. Ortho Pharmaceutical Corp., 394 Mass. 131, 475 N.E.2d 65, 69 (1985). Pursuant to the Restatement Second of Torts section 402A, comment j, adopted by Massachusetts, a presumption arises that, when provided with a warning, the physician would read and heed the

12

warning given. Wolfe v. Ford Motor Co., 6 Mass. App. Ct. 364, 352, 376 N.E.2d 143 (Mass. 1978) (explaining that Massachusetts has fully adopted Comment j to Section 402 A, Restatement (Second) of Torts (1965)). Often this is beneficial to pharmaceutical companies, as it insulates them from liability in negligence cases where the physician improperly uses their product. However, in failure to warn cases, it raises the presumption that, had the company provided any warning, the physician would have followed it. Knowlton v. Deseret Medical, Inc., 930 F.2d 116, 120 (1st Cir. 1991).

Plaintiff has already demonstrated that defendant in this case failed to give any warning whatsoever about the harmful effects of DES in pregnant women, therefore the heeding presumption takes effect. To rebut the heeding presumption, a defendant must present evidence that affirmatively demonstrates that a prescribing physician would have disregarded a product warning. Garside v. Osco Drug, 976 F.2d 77, 81 (1st Cir. 1992) (finding that the physician's statement that he did not ever warn his patients of the risks of drugs was sufficient to rebut the heeding presumption), Knowlton v. Deseret Medical, Inc., 930 F.2d 116, 120 (1st Cir. 1991) (finding that, where surgeon had opined that he would continue to use catheters in the manner that caused damage, defendant manufacturer could still be held liable because the jury could reasonably have found that the surgeon, if a warning had been given, would not have so used the catheter), Seley v. G.D. Searle & Co., 423 N.E.2d 831, 838 (Ohio 1981) (finding that defendants provided sufficient evidence to rebut presumption where they demonstrated that plaintiff had not disclosed her condition to physician so he could not warn her of the dangers of taking the drug in her condition).

Hibbs, et al. v. Abbott Labs, et al., 814 P.2d 1186, 62 Wash. App. 451 (Wash. Ct. App. 1991), (attached as App. 21) is the only reported appellate decision that addresses the heeding

presumption in a DES setting. In <u>Hibbs</u>, the prescribing obstetrician testified that he prescribed DES based on his own observations and did not rely on any drug manufacturer's product literature. <u>Id</u>. at 1187. Therefore, the defendants argued that any failure to warn on their part was irrelevant. <u>Id</u>. at 1188.

The <u>Hibbs</u> Court rejected the drug company's argument and reversed a summary judgment for the defendant drug manufacturer:

> Here, Dr. Rutherford's testimony was only that he did not rely on Kirkman or any other pharmaceutical company's promotions literature. He prescribed DES because of what he knew about the drug from his own vast experience and other doctors' work. Based on these statements, Kirkman would have us conclude that if the drug companies had researched DES, as Drs. Lynch and Stillman claim they should have, and warned about not only the drug's lack of efficacy in the prevention of spontaneous abortions, but also the drug's significant dangers when ingested during pregnancy, Dr. Rutherford would have nevertheless ignored these warnings.
>
> Kirkman's argument is flawed. Dr. Rutherford's reliance on his own knowledge of DES in deciding to prescribe the drug to Bernadine Raymond has no bearing on whether he would have heeded warnings, had any been given, that the drug posed serious risks to the unborn children of pregnant women. Dr. Rutherford was simply never asked this question.

<u>Id</u>.

In another DES case out of Boston, <u>Casale, et al. v. Eli Lilly & Co.</u>, C.A. 1:03-cv-11833-DPW, (U.S. D.C. Mass. March 23, 2004), Lilly filed a motion for summary judgment on the exact same issue two years ago. The court in that case made a preliminary ruling, prior to settlement, stating: "Court considers the case a failure to warn case and takes the summary judgment issues under advisement but has indicated an inclination to deny the motion." <u>See</u> Selected pages from Lilly's Memorandum & Electronic Clerk's Notes for Proceedings held March 23, 2004, attached hereto as App. 16.

14

Since Dr. Safon is deceased, Plaintiff is entitled to the presumption that he would have heeded an adequate warning if Lilly had given one. Lilly has presented *no evidence* to the contrary, much less any direct evidence that Dr. Safon did not read or rely on manufacturer warnings.

C.      Defendant's Authorities Support the Plaintiff.

1.      Garside v. Osco Drug, Inc., 976 F.2d 77 (1st Cir. 1992), is a reversal of a trial court's granting of summary judgment. The Plaintiff there, as here, submitted an affidavit, of a non-prescribing expert, which stated:

> It is my opinion, which I can state with reasonable medical certainty, that had proper warnings been given by the manufacturers of the amoxicillin and Phenobarbital, the treating physician would have been on notice not to prescribe them.

The Osco burden shifting is prescribed by the court as follows:

> (1) the plaintiff carries the initial burden of producing sufficient evidence that the defendant manufacturer failed to warn of a non-obvious risk about which the manufacturer knew or should have known, *see* MacDonald, 475N.E.2d at 68; (2) assuming the plaintiff raises a triable issue on this question, a rebuttable presumption arises that the physician would have heeded an adequate warning, see Knowlton, 930 F.2d at 123; (3) defendant must then come forward with sufficient evidence to rebut that presumption, see id.; and (4) once the presumption is rebutted, plaintiff must produce sufficient evidence to create a triable issue on the question of causation. Massachusetts law further instructs courts to be mindful that, generally, questions of causation, proximate and intervening, present issues for the jury to decide.

Id. at 81.

Lilly has not met Step 3. It has not presented any evidence that Dr. Safon would have ignored Lilly's warning had it made one. Nowhere does Lilly cite a statement from Dr. Safon or provide any evidence that he would have ignored a warning or that he would have failed to tell Plaintiff's mother of risks.

In <u>Osco</u>, the physician specifically and definitely said, "I do not tell patients of the risks". Dr. Safon has made no such statement.  Similarly, Defendant cites, <u>Motus v. Pfizer Inc.</u>, 358 F.3d 659, 661 (9th Cir. 2004) where the circumstances are clearly distinguishable.  In that case, the defendant proved that the physician refused to read the Zoloft warning label or rely on any information provided by Pfizer's detail men.  Defendant has come forth with no comparable evidence in this case.

Moreover, the First Circuit has ruled that a drug manufacturer should not be relieved of liability even if the physician, as the learned intermediary, may have been careless and thus an intervening cause when the manufacturer's failure to warn contributed to that carelessness. <u>Brochu v. Ortho Pharmaceutical Corp</u>, 642 F.2d 652, 660 (1st Cir. 1981) (holding that a physician's carelessness, even if it takes an unanticipated form, should not relieve a drug manufacturer of liability if the manufacturer's failure to warn adequately may have contributed to that carelessness); <u>McCue v. Norwich Pharmacal Co.</u>, 453 F.2d 1033, 1035 (1st Cir. 1972) (same); <u>See also Sterling Drug, Inc. v. Yarrow</u>, 408 F.2d 978, 994 (8th Cir. 1969) (trial court properly concluded any failure of plaintiff's physician to learn of warnings from source other than drug company did not relieve company of liability); <u>Sterling Drug, Inc. v. Cornish</u>, 370 F.2d 82, 85 (8th Circ. 1966) (plaintiff's physicians' claimed negligent failure to keep up with medical literature is not an intervening proximate cause).

D.   <u>The Multiplicity Of Manufacturers Does Not Make Any Difference To The Heeding Presumption.</u>

Defendant's argument - supported by no authorities on point - is that, since DES was sold and labeled by many other companies, it is insulated from the heeding presumption.  In effect, Lilly argues that, because everyone else was jumping off of the proverbial DES bridge, there

shouldn't be any consequences for it having done so.

First, Defendant erroneously bases its argument on the premise that no manufacturer has been identified in this case. Pharmacist Steven Baker testified that if a woman walked into Fair Drug Pharmacy, where Plaintiff's mother shopped, with a prescription for "DES," "stilbestrol," or "diethylstilbestrol" she would have walked out with a Lilly product. See Statement of Steven Baker, App. 6, Dep. of Steven Baker 12:9-16, 25:15-22, 26:9-13, 45:7-9, App. 7.

Defendant further argues that Dr. Safon may have looked and relied on the Squibb DES labeling or the Upjohn DES labeling, therefore, Plaintiff cannot prove that a Lilly DES warning would have changed the course of the Plaintiff's treatment. The argument is specious in three aspects:

1) DES labeling was industry wide. A Committee of manufacturers submitted DES to the F.D.A. See Letter from Dr. Hines, (Lilly) to Dr. Morrell, (Squibb), dated May 13, 1941, App. 13. The F.D.A New Drug Application was a joint industry project whereby all other manufacturers followed Lilly's lead. If Lilly had warned of the risk of cancer or malformation to the offspring, other companies making DES would have followed suit. No one warned of the dangers of DES, making the warnings, or the lack thereof, "fungible."

2) Lilly was the largest supplier, the foremost promoter, the leading advocate, the primary source of information, and had the most detailmen promoting DES. For example, in the 1970 PDR, Lilly is the only manufacturer to appear with the text of their labeling. See relevant pages from 1970 PDR attached hereto as App. 19 and the affidavit of Lilly's own employee Philip Cafferty attached at App. 12. For two decades starting in the early 1950's, Lilly recommended diethylstilbestrol to the medical community to treat conditions in pregnant women without

17

warnings of serious and permanent injury to the fetus or contraindications for pregnancy. <u>See</u> 1966 <u>PDR</u>, App. 18; Piver Statement, ¶7 & ¶9-10, App. 23.

There was actual reliance of the OB/GYN community upon Lilly's expertise as a prudent drug manufacturer to test its products; physicians prescribed according to Lilly's representations in the <u>PDR</u> and other marketing publications that DES was safe and effective to use in accidents of pregnancy. <u>Medics Pharm. Corp. v. Newman</u>, 378 S.E.2d 487, 190 Ga. App. 197 (Ga. Ct. App. 1989) (explaining in a DES case that "plaintiff was not precluded from recovering for breach of the general duty of a manufacturer to use reasonable care to provide a product which is reasonably safe for those purposes for which it could foreseeably be used"), attached as App. 17; Piver Statement, ¶7 & ¶9-10, App. 23; 1970 PDR, App. 19.

3) The Ninth Circuit court addressed the heeding presumption in multi-defendant cases. <u>Dalke v. The Upjohn Co., et al.</u>, 555 F.2d 245 (9th Cir. 1977). In <u>Dalke</u>, the plaintiff filed suit against three manufacturers of tetracycline for tooth discoloration because she could not determine the brand of tetracycline she ingested. <u>Id</u>. at 247. The Court of Appeals addressed the issue of proximate cause in a multi-defendant case. <u>Id</u>. at 248-49. Defendants argued that even if their warnings were inadequate, plaintiff's doctor could not recall which manufacturer's warnings he may have read. <u>Id</u>. at 249. The Court held:

> In our case, although Dr. Corlett could not recall which <u>PDR</u> entry or label he read, he indicated that he had read and relied on one of them. In light of the similarity between the three companies' warnings we do not believe that his failure to identify the one specific entry he read should break the chain of causation.

<u>Id</u>.

As stated above, there is a presumption - absent evidence to the contrary - that Dr. Safon would have read one of the manufacturers' warnings, whether through product literature or the

18

PDR. A reasonable juror could find that Dr. Safon would have received a Lilly warning, the industry followed the Lilly's warning lead, or that he would have been made aware of one or another of Lilly's warnings. Therefore, having a multiplicity of manufacturers is irrelevant to the present case.

      E.      <u>Even if the heeding presumption did not apply, Plaintiff has presented evidence that, if a warning had been given, it would have been passed along to Plaintiff's mother.</u>

Even if, as defendant contends, the heeding presumption does not apply and plaintiff must prove reliance by the prescribing physician, Plaintiff is still able to prove Lilly's negligent failure to warn. Manufacturers have a duty to warn all persons in the medical profession who have any sort of decision-making capacity. <u>Guevara v. Dorsey Laboratories, Div. of Sandoz, Inc.</u>, 845 F.2d 364, 367 (1st Cir. 1988) (finding that the warning should be sufficient to appraise a general practitioner as well as the 'unusually sophisticated medical man' of the dangerous propensities of the drug), <u>McEwen v. Ortho Pharmaceutical Corp.</u>, 270 Ore. 375, 388 (Or. 1974) (finding that the duty of the ethical drug manufacturer to warn extends, to all members of the medical profession who come into contact with the patient in a decision-making capacity), <u>Pierluisi v. E. R. Squibb & Sons, Inc.</u>, 440 F. Supp. 691 (D.P.R. 1977) (finding that the warning should be sufficient to make a general practitioner aware, as well as the sophisticated medical man, of the dangerous propensities of the drug).

While the prescribing physician is deceased in this case, the pharmacist at the drug store where Plaintiff's mother filled her prescriptions is not. Pharmacists are medical professionals and the last line of defense against any unwise prescriptions. They are tasked with a general duty to warn patients of the risks of their medication. Pharmacist Steven Baker, from plaintiff's mother's drug store at the relevant time, has testified, under oath, that, had any warning been

19

available for Lilly DES, he would have passed it along to the patient. Dep. of Steven Baker 8:20-24, 9:1-2 at App. 7.   Defendant has presented no evidence to suggest that the pharmacist would not have read and heeded the warning.  Therefore, since Plaintiff has demonstrated that the pharmacist at the relevant pharmacy would have read and heeded the warning, and that evidence is uncontested, Plaintiff is entitled to the beneficial inference that, had a warning been given, it would have been heeded.

V.    CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant Eli Lilly and Company's Motion for Summary Judgment.

Respectfully submitted,

Aaron M. Levine, #7864
Aaron Levine & Associates
Suite 500
1320 19th Street, N.W.
Washington, D.C.  20036
202-833-8040
ATTORNEY FOR PLAINTIFF

Dated: August 7, 2006

20