*356 F. Supp. 2d 1177, \*; 2005 U.S. Dist. LEXIS 2379, \*\**

BARBARA BAUGHN, Plaintiff, v. ELI LILLY AND COMPANY, Defendant.

CIVIL ACTION No. 03-2626-KHV

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

356 F. Supp. 2d 1177; 2005 U.S. Dist. LEXIS 2379

February 17, 2005, Decided

**PRIOR HISTORY:** [\*\*1] Baughn v. Eli Lilly & Co., 356 F. Supp. 2d 1166, 2005 U.S. Dist. LEXIS 1650 (D. Kan., Feb. 4, 2005)

**DISPOSITION:** Defendant's second motion for summary judgment overruled. Plaintiff's motion to strike affidavit and supporting memorandum of law overruled. Plaintiff's motion to strike second affidavit and supporting memorandum of law overruled. Plaintiff's motion to limit or exclude Defendant's expert testimony and memorandum of law overruled.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Pursuant to the Kansas Product Liability Act, Kan. Stat. Ann. § 60-3301 et seq., plaintiff consumer's daughter filed suit against defendant drug company alleging that she was injured as the result of the consumer's ingestion of diethylstilbestrol (DES), manufactured by the company, during the consumer's pregnancy. The company moved for summary judgment. The daughter filed two motions to strike and moved to exclude the testimony of three experts.

**OVERVIEW:** The company moved for summary judgment, contending that many other companies produced DES and that the daughter could not prove that it had manufactured the pills that the consumer ingested. The daughter moved to strike two affidavits, which supported the company's claims concerning the other manufacturers that sold DES when the consumer was pregnant. The court overruled the motions, noting that the relevant issue in the case was not whether other manufacturers produced DES but whether any other manufacturer supped DES to the consumer. With regard to the motion to exclude, copies of the relevant testimony had not been presented to the court, and the daughter had failed to advance specific grounds for excluding the testimony. The daughter asserted three separate product liability theories in her suit. Sufficient evidence was presented to raise an issue of fact with regard to whether the company had supplied the pills to the consumer and to raise the state law presumption that the consumer's doctor would have heeded warnings, if adequate warnings had been given. The daughter could assert a loss of consortium claim under Kan. Stat. Ann. § 23-205 arising from her latent injuries.

**OUTCOME:** The court overruled all of the motions filed by the parties and set a date for the trial of the suit.

**CORE TERMS:** pharmacy, manufactured, summary judgment, warning, marriage, overrule, loss of consortium claim, deposition, product liability, dosage, tablet, prescribed, milligram, red, pregnancy, prescription, deposition testimony, married, motion to exclude, strict liability, manufacturer, heeded, loss of consortium, moving party, infertility, impairment, patient, doctor, spouse, negligent misrepresentation

**LexisNexis(R) Headnotes** ♦ Hide Headnotes

Civil Procedure > Discovery > General Overview



Civil Procedure > Summary Judgment > Standards > General Overview

Civil Procedure > Summary Judgment > Supporting Materials > Affidavits

**HN1** Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A factual dispute is "material" only if it might affect the outcome of the suit under the governing law. A "genuine" factual dispute requires more than a mere scintilla of evidence. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants

Civil Procedure > Summary Judgment > Supporting Materials > General Overview

**HN2** The party moving for summary judgment bears the initial burden of showing the absence of any genuine issue of material fact. Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which it carries the burden of proof. The nonmoving party may not rest on its pleadings but must set forth specific facts. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof > Scintilla Rule

Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview

Civil Procedure > Summary Judgment > Standards > General Overview

**HN3** The court must view the record in a light most favorable to the parties opposing the motion for summary judgment. Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Essentially, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. More Like This Headnote

Civil Procedure > Summary Judgment > Evidence

Evidence > Inferences & Presumptions > Rebuttal of Presumptions

Healthcare Law > Treatment > General Overview

**HN4** In a product liability suit, in order to survive summary judgment, the plaintiff must provide evidence that a failure to warn proximately caused her injuries. Kansas law allows a rebuttable presumption of causation once the plaintiff establishes that a warning is inadequate. With regard to a drug product, if the plaintiff proves that the defendant manufacturer failed to provide a proper warning, Kansas law presumes that a doctor using that product would have heeded a proper warning. Essentially, the law presumes that but for the inadequate warning, the patient would not have been harmed, since the doctor would have given the patient an adequate warning if the doctor had ever received it, and that the inadequate warning is therefore the cause of the patient's injury. The defendant may rebut this presumption by establishing that although the prescribing physician would have read and heeded the warning or additional information, the warning would not have changed the course of treatment. If the defendant provides credible evidence to rebut the presumption, the presumption disappears and the burden shifts back to the plaintiff to affirmatively prove causation. More Like This Headnote

Family Law > Marital Duties & Rights > Causes of Action > Loss of Consortium

Torts > Damages > Consortium Damages > General Overview

**HN5** Kansas law permits individuals to assert loss of consortium claims on behalf of their spouses. Kan. Stat. Ann. § 23-205. More Like This Headnote

Torts > Damages > Consortium Damages > General Overview

**HN6** See Kan. Stat. Ann. § 23-205.

Family Law > Marital Duties & Rights > Causes of Action > Loss of Consortium

Family Law > Marriage > General Overview

Torts > Damages > Consortium Damages > Spouses

**HN7** Based solely on the language of Kan. Stat. Ann. § 23-205, the United States District Court for the District of Kansas cannot conclude that a loss of consortium claim is precluded with regard to latent injuries that are discovered after an individual is married but caused by the defendant's acts before the individual married. Several courts in other states have permitted loss of consortium claims in the latent injury context. No explanation has been offered as to why the court should bar a plaintiff's loss of consortium claim where, at the time of marriage, the plaintiff's own claim had not accrued because she had not suffered ascertainable injuries. More Like This Headnote

Torts > Business Torts > Fraud & Misrepresentation > Negligent Misrepresentation > General Overview

Torts > Products Liability > General Overview

**HN8** The underlying purpose of the Kansas Product Liability Act (KPLA), Kan. Stat. Ann. § 60-3301 et seq., is to consolidate all product liability actions, regardless of theory, into one theory of legal liability. The KPLA applies to actions based on strict liability in tort as well as negligence, breach of express or implied warranty, and breach of or failure to discharge a duty to warn or instruct. Kansas law, however, recognizes that a product can be defective in one of three ways: (1) a manufacturing defect, i.e. a flaw in the manufacturing of the product; (2) a warning defect, i.e. a failure to adequately warn of a risk or hazard related to the product design; or (3) a design defect, i.e. a product which although perfectly manufactured contains a defect that makes it unsafe. More Like This Headnote

Contracts Law > Sales of Goods > Damages & Remedies > General Overview 

Torts > Business Torts > Fraud & Misrepresentation > Negligent Misrepresentation > Elements

Torts > Products Liability > General Overview

**HN9** Under the Kansas Product Liability Act (KPLA), Kan. Stat. Ann. § 60-3301 et seq., a plaintiff can only assert a single product liability claim based on a warning defect theory. Under the KPLA, different theories of recovery (negligence, strict liability, breach of warranty, and negligent misrepresentation) merge into one legal theory called a product liability claim, and the plaintiff may allege multiple defects in a single product. More Like This Headnote

**COUNSEL:** For Barbara Baughn, Derek Baughn, Plaintiffs: Patricia M. Stanford, Jacksonville, FL; Peter S.

Obetz, Bartimus, Frickleton, Robertson, & Obetz, P.C., Leawood, KS; Stephen M. Gorny, Bartimus, Frickleton, Robertson, & Obetz, P.C., Leawood, KS.

For Eli Lilly and Company, an Indiana Corporation, Defendant: David W. Brooks, Mark C. Hegarty, John F. Kuckelman, Shook, Hardy & Bacon L.L.P., Kansas City, MO.

**JUDGES:** KATHRYN H. VRATIL, United States District Judge.

**OPINIONBY:** Kathryn H. Vratil

**OPINION: [*1178] ORDER**

Barbara Baughn filed this product liability action against Eli Lilly and Company ("Lilly"). Plaintiff alleges that she suffered injuries because her mother took diethylstilbestrol [**2] ("DES"), a prescription drug, during her pregnancy with Barbara in 1964 and 1965. This matter is before the Court on Defendant Eli Lilly And Company's Second Motion For Summary Judgment (Doc. #42) filed October 1, 2004; Plaintiff's Motion To Strike Affidavit Of John F. Kuckelman And Supporting Memorandum Of Law (Doc. #44) filed October 11, 2004; Plaintiff's Motion To Strike Second Affidavit Of John F. Kuckelman And Supporting Memorandum Of Law (Doc. #61) filed December 10, 2004; and Plaintiff's Motion To Limit Or Exclude Defendant's Expert Testimony And Memorandum Of Law In Support Thereof (Doc. #41) filed October 1, 2004. For reasons stated below, the Court overrules all of the motions.**Summary Judgment Standards**

HN1 Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord [**3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

HN2 The moving party bears the initial burden of showing the absence of any genuine [*1179] issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also [**4] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10thCir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

HN3 "We must view the record in a light most favorable to the parties opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one [**5] party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

**Factual Background**

The following facts are uncontroverted, deemed admitted or, where disputed, viewed in the light most favorable to plaintiffs.



Barbara Baughn was born on August 19, 1965 in Chanute, Kansas, and has lived in Kansas her entire life. Plaintiff's mother, who was pregnant with Barbara in 1964 and 1965, testified that plaintiff was born one week before her due date. From the second month of pregnancy until plaintiff was born, plaintiff's mother took DES prescribed by Dr. Reuben Burkman. Plaintiff's mother purchased DES at Baker & Burkman Pharmacy in Chanute, Kansas. Dr. Burkman owned Baker & Burkman Pharmacy and the pharmacy was attached to his clinic. Plaintiff's mother took DES four times a day in small round red tablets.

In 1964 and 1965, Lilly made and sold DES in a 25 milligram dosage in round red enteric coated tablets. n1 Lilly's product information recommended a dosage of 25 to 100 milligrams per day for prevention of "accidents of pregnancy."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Lilly has submitted various documents which purport to show that in 1965, more than 95 companies manufactured DES. Plaintiff seeks to exclude these documents as hearsay. See Plaintiff's Motion To Strike Affidavit Of John F. Kuckelman And Supporting Memorandum Of Law (Doc. # 44) filed October 11, 2004. For purposes of defendant's summary judgment motion, however, the Court need not consider whether other companies manufactured DES. The relevant issue is whether any manufacturer beside Lilly supplied DES to the Baker & Burkman Pharmacy. Accordingly, the Court overrules as moot plaintiff's motion to strike (Doc. # 44).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**6]

In 1965, Dr. Burkman prescribed DES on a fairly common basis to prevent miscarriage. Joan Augustine, a nurse, began working for Dr. Burkman in the spring of 1965. Augustine testified that on occasion, she went into the pharmacy to "fix up" a prescription when the pharmacist was gone. Augustine does not recall when she [*1180] began helping with prescriptions, but she probably did so for some prescriptions in 1965. Augustine cannot recall preparing a prescription for plaintiff's mother -- or any other DES prescription -- in 1965.

Augustine testified that the pharmacy stocked Lilly DES in little red enteric-coated tablets in 1965, that she recalls only DES from Lilly on the pharmacy shelf, that she believes that the pharmacy carried only DES from Lilly, and that the pharmacy carried a lot of Lilly products. Augustine testified that she cannot recall specifically what dosage the Lilly red DES tablet came in, but that she believed it was one milligram.

Dr. Burkman always had a Physicians' Desk Reference ("PDR") in each examining room. In the PDRs for 1964 and 1965, Lilly's DES advertisements do not mention any risk related to DES during pregnancy, either to the mother or the fetus. [**7] n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 In the 1964 and 1965 editions of the PDR, the brand name index lists only Lilly as a manufacturer of "Diethylstilbestrol." Lilly has submitted various documents which purport to show that in the 1964 and 1965 PDRs, other companies are listed as manufacturers of "DES" and that in 1964 and 1965 other companies manufactured DES in red enteric coated tablets in a 25 milligram dosage. Plaintiff seeks to exclude these documents as hearsay. Plaintiff's Motion To Strike Second Affidavit Of John F. Kuckelman And Supporting Memorandum Of Law (Doc. # 61) filed December 10, 2004. As explained above, for purposes of this motion, the Court need not consider whether other companies manufactured DES. Accordingly, the Court overrules as moot plaintiff's motion to strike (Doc. # 61).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Plaintiff claims that as a result of her exposure to DES *in utero*, she suffered pregnancy complications, pregnancy losses and infertility for which she sought medical treatment in Kansas. Barbara did not learn of her claim against defendant [**8] until late 2001. On May 8, 2003, Barbara Baughn filed suit against Lilly in the United States District Court for the District of Columbia. On November 7, 2003, pursuant to 28 U.S.C. § 1404(a), the court transferred its case to this Court.

Plaintiff asserts four theories of recovery in this product liability action: negligence, strict liability, breach of warranty and negligent misrepresentation. The parties and the Court agree that Kansas substantive law applies in this case.

In its motion for summary judgment, Lilly argues that (1) plaintiff cannot prove that it manufactured the DES to which she was allegedly exposed and (2) absent proof that Dr. Burkman prescribed only DES manufactured by Lilly, plaintiff cannot rely on the presumption that he would have heeded a different warning by Lilly.

**Analysis**

**I. Lilly As Manufacturer Of The DES Which Plaintiff's Mother Ingested**

Defendant argues that plaintiff cannot prove that it manufactured the DES to which she was allegedly exposed. The Court disagrees. Augustine testified that Dr. Burkman commonly prescribed DES in 1965, that the pharmacy stocked Lilly DES in 1965, and that the pharmacy [**9] carried a lot of Lilly products. See Augustine Depo. at 41-42, 50-56. Lilly argues that plaintiff cannot establish that in 1965, the pharmacy carried Lilly DES in a 25 milligram tablet. Augustine testified that she cannot recall specifically what dosage the Lilly red DES tablet came in, but that she believes it was one milligram. See Augustine Depo. at 52. Augustine did not exclude the possibility that Lilly's DES was available at the pharmacy in other dosages. Despite Augustine's uncertainty about the precise dosages of DES which the pharmacy dispensed, she recalls only Lilly DES on the pharmacy shelf and she [*1181] believes that the pharmacy only carried DES from Lilly. Augustine Depo. at 50-56. Combined with plaintiff's mother's testimony that she took a red DES tablet in a 25 milligram dosage which she obtained from the Baker & Burkman Pharmacy, a reasonable jury could conclude that Lilly manufactured the DES which plaintiff's mother ingested in 1965. The Court therefore overrules this portion of defendant's motion for summary judgment.

**II. Proximate Cause**

In a closely related argument, Lilly argues that absent proof that Dr. Burkman prescribed only Lilly's [**10] DES, plaintiff cannot rely on the presumption that Dr. Burkman would have heeded a different warning by Lilly. HN4 In order to survive summary judgment, plaintiff must provide evidence that a failure to warn proximately caused her injuries. See Wooderson v. Ortho Pharm. Corp., 235 Kan. 387, 409, 681 P.2d 1038, 1057 (1984); see also Eck v. Parke, Davis & Co., 256 F.3d 1013, 1018 (10th Cir. 2001). Kansas law allows a rebuttable presumption of causation once plaintiff establishes that a warning is inadequate. If plaintiff proves that Lilly failed to provide a proper warning, Kansas law presumes that a doctor using that product would have heeded a proper warning. See Wooderson, 235 Kan. at 407, 681 P.2d at 1057. Essentially, the law presumes that but for the inadequate warning, the patient would not have been harmed, since the doctor would have given the patient an adequate warning if the doctor had ever received it, and that the inadequate warning is therefore the cause of the patient's injury. See [**11] id at 409, 681 P.2d at 1057. Defendant may rebut this presumption by establishing that although the prescribing physician would have read and heeded the warning or additional information, the warning would not have changed the course of treatment. See Eck, 256 F.3d at 1019. If Lilly provides credible evidence to rebut the presumption, the presumption disappears and the burden shifts back to plaintiff to affirmatively prove causation. See id.; Woulfe v. Eli Lilly & Co., 965 F. Supp. 1478, 1483 (E.D. Okla. 1997).

For purposes of this motion, Lilly does not dispute that its warning was inadequate. Lilly argues, however, that plaintiff is not entitled to a heeding presumption because she cannot establish that in 1965, Dr. Burkman prescribed only DES manufactured by Lilly. As explained above, plaintiff has presented evidence which raises a genuine issue of material fact whether Lilly manufactured the DES which her mother ingested

in 1965. In particular, Augustine testified that she recalls only Lilly's DES on the pharmacy shelf and that she believed that the pharmacy only carried DES from Lilly. See Augustine Depo. at 50-56. Based [**12] on such testimony, a reasonable jury could also conclude that in 1965, Dr. Burkman prescribed DES manufactured only by Lilly. The Court therefore overrules this portion of defendant's motion for summary judgment.

### III. Claim On Behalf Of Derek Baughn

*HN5* Kansas law permits individuals to assert loss of consortium claims on behalf of their spouses. *HN6* K.S.A. § 23-205 provides in part as follows:

> Where, through the wrong of another, a married person shall sustain personal injuries causing the loss or impairment of his or her ability to perform services, the right of action to recover damages for such loss or impairment shall vest solely in such person, and any recovery therefor, so far as it is based upon the loss or impairment of his or her ability to perform services in the household and in the discharge of his or her domestic duties, shall be for the benefit of such [*1182] person's spouse so far as he or she shall be entitled thereto.

K.S.A. § 23-205. Defendant argues that plaintiff cannot assert a loss of consortium claim because at the time of her injuries, she was not married. Defendant relies solely on [**13] Dixon v. CertainTeed Corp., 915 F. Supp. 1158 (D. Kan. 1996). Dixon noted that for a plaintiff to recover for loss of consortium, "he first must demonstrate the existence of a valid marriage contract at the time of his accident pursuant to K.S.A. § 23-205." Id. at 1159. Dixon involved a slip and fall at defendant's plant where plaintiff asserted that he satisfied K.S.A. § 23-205 through a common-law marriage. Dixon did not address when an injury must be suffered by a spouse to permit a claim under K.S.A. § 23-205, and plaintiff in Dixon did not assert latent injuries first discovered after the marriage.

Neither party has briefed whether the statutory language of K.S.A. § 23-205 permits a loss of consortium claim for latent injuries discovered after an individual is married but caused by defendant's acts before the individual married. *HN7* Based solely on the language of K.S.A. § 23-205, the Court cannot conclude that such a claim is precluded. Several courts have permitted loss of consortium claims in the latent injury context. See [**14] Green v. A.P.C. (Am. Pharm. Co.), 136 Wn.2d 87, 960 P.2d 912, 918-19 (Wash. 1998) (loss of consortium claim based on wife's exposure *in utero* to DES; injuries did not manifest themselves until after marriage); Aldredge v. Whitney, 591 So.2d 1201, 1205 (La. Ct. App. 1991) (loss of consortium claim based on back injuries caused by pre-marriage tortious act that manifested themselves during marriage); Kociemba v. G.D. Searle & Co., 683 F. Supp. 1577, 1578 (D. Minn. 1988) (loss of consortium claim based on wife's infertility caused by IUD implanted before marriage; infertility did not manifest itself until after marriage); Furby v. Raymark Indus., Inc., 154 Mich. App. 339, 397 N.W.2d 303, 306-07 (Mich. Ct. App. 1986) (loss of consortium claim based on asbestos exposure before marriage); Stager v. Schneider, 494 A.2d 1307, 1316 (D.C. 1985) (loss of consortium claim based on radiologist's negligence before marriage). But see Zwicker v. Altamont Emergency Room Physicians Med. Group, 98 Cal. App. 4th 26, 118 Cal. Rptr.2d 912 (Cal. Ct. App. 2002) [**15] ; Fullerton v. Hosp. Corp. of Am., 660 So.2d 389, 390-91 (Fla. Dist. Ct. App. 1995); Anderson v. Eli Lilly & Co., 79 N.Y.2d 797, 588 N.E.2d 66, 68, 580 N.Y.S.2d 168 (N.Y. 1991). Defendant does not explain why the Court should bar plaintiff's loss of consortium claim where, at the time of marriage, plaintiff's own claim had not accrued because she had not suffered ascertainable injuries. Moreover, although plaintiff apparently suffered "substantial injury" in 1965 when she was exposed to DES, she may be able to show that she suffered additional injuries when she attempted to become pregnant after she married. For these reasons, the Court overrules defendant's motion for summary judgment on plaintiff's claim under K.S.A. § 23-205.

### IV. Consolidated Product Liability Claim

Plaintiff asserts four theories of recovery: negligence, strict liability, breach of warranty and negligent misrepresentation. *HN8* The underlying purpose of the Kansas Product Liability Act ("KPLA"), K.S. A § 60-3301 et seq., is "to consolidate all product liability actions, regardless of theory, into one theory of legal liability." [**16] Patton v. Hutchinson Wil-Rich Mfg. Co., 253 Kan. 741, 756, 861 P.2d 1299, 1311 (1993); see Savina v. Sterling Drug. Inc., 247 Kan. 105, 126, 795 P.2d 915, 931 (1990) (KPLA applies to actions based on strict liability in tort as well as negligence, breach of express or implied warranty, and breach of or failure to discharge a duty to warn or instruct); Fennesy v. LBI Mgmt., [*1183] Inc., 18 Kan. App.2d 61, 66, 847 P.2d 1350, 1355 (1993) (purpose of KPLA to merge all legal theories of product liability into single product liability claim). Kansas law, however, recognizes that a product can be defective in one of three ways: (1) a manufacturing defect, i.e. a flaw in the manufacturing of the product; (2) a warning defect, i.e. a failure to adequately warn of a risk or hazard related to the product design; or (3) a design defect, i.e. a product which although perfectly manufactured contains a defect that makes it unsafe. Savina v. Sterling Drug. Inc., 247 Kan. 105, 114, 795 P.2d 915, 923 (1990); [**17] Hiner v. Deere & Co., 161 F. Supp.2d 1279, 1282-83 (D. Kan. 2001), rev'd in part on other grounds, 340 F.3d 1190 (10th Cir. 2003).

Each of plaintiff's four theories appears to rely primarily on a warning defect. *HN9* Under the KPLA, plaintiff can only assert a single product liability claim based on that theory. Liberally construing the pretrial order, however, plaintiff also asserts negligence and strict liability claims based on manufacturing and design defects. Neither party has addressed the issue, but it appears that plaintiff is asserting three separate theories of product liability: manufacturing, warning and design defects. Defendant correctly notes that all theories of recovery (negligence, strict liability, breach of warranty and negligent misrepresentation) merge into one legal theory called a "product liability claim, "but defendant ignores the fact that plaintiff may allege multiple defects in a single product. The pretrial order does not precisely assert a single claim based on multiple defects, but the Court finds that it is unnecessary to modify the pretrial order at this stage. The parties can submit proposed jury instructions which reflect [**18] the legal limitation on multiple claims based on the same product defect. Accordingly, the Court overrules defendant's motion for summary judgment on this issue.

## V. Plaintiff's Motion To Exclude Expert Testimony

Plaintiff seeks to exclude the deposition testimony of three defense experts who are deceased, Don Carlos Hines, M.D., Theodore G. Klumpp, M.D., and Edith L. Potter, M.D. The deposition testimony of these experts was taken in connection with various lawsuits in the late 1970s and early 1980s. Plaintiff argues that the deposition testimony likely will not satisfy the standards under Rules 702 through 705, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993), and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999). Plaintiff maintains that because defendant did not provide transcripts of the depositions before the deadline to file her Daubert motion, she could not more fully challenge the expert opinions. Plaintiff seeks leave to supplement her motion after defendant provides copies of the expert depositions.

Plaintiff apparently did not seek copies [**19] of the deposition transcripts until shortly before the motion to exclude expert testimony was due. Moreover, until the day that the Daubert motion was due, plaintiff did not notify defense counsel that the transcripts were necessary to prepare that motion. Defendant provided copies of the expert depositions on October 4, 2004 (the business day after plaintiff filed her motion to exclude). Plaintiff's reply brief on her motion to exclude was due October 26, 2004, see D. Kan. Rule 6.1(d)(1), but she did not file a reply. The Court therefore has no record of the relevant deposition testimony, and plaintiff has not advanced specific grounds for excluding the expert testimony of Drs. Hines, Klumpp and Potter. Based solely on plaintiff's conclusory [*1184] motion and absent copies of the deposition transcripts, the Court must overrule plaintiff's motion. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Because plaintiff did not file a reply some 22 days after receiving copies of the deposition transcripts, the Court overrules plaintiff's request to supplement her motion to exclude based on the deposition transcripts.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**20]

**IT IS THEREFORE ORDERED** that Defendant Eli Lilly And Company's Second Motion For Summary Judgment (Doc. # 42) filed October 1, 2004 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion To Strike Affidavit Of John F. Kuckelman And Supporting Memorandum Of Law (Doc. # 44) filed October 11, 2004 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion To Strike Second Affidavit Of John F. Kuckelman And Supporting Memorandum Of Law (Doc. # 61) filed December 10, 2004 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion To Limit Or Exclude Defendant's Expert Testimony And Memorandum Of Law In Support Thereof (Doc. # 41) filed October 1, 2004 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that trial is set for **July 5, 2005 at 9:30 a.m.**

Dated this 17th day of February, 2005 at Kansas City, Kansas.

KATHRYN H. VRATIL