UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MELISSA KELLEY<br><br>        Plaintiff,<br><br>v.<br><br>ELI LILLY AND COMPANY<br><br>        Defendant. | Civil Action No. 05-CV-1882 (RCL) |

**DEFENDANT ELI LILLY AND COMPANY'S RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES AND FIRST
REQUEST FOR PRODUCTION OF DOCUMENTS AND/OR TANGIBLE THINGS**

COMES NOW defendant Eli Lilly and Company (hereinafter "Lilly"), by and through its attorneys, Foley Hoag, LLP, pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, and provides the following responses to Plaintiff's First Set of Interrogatories and First Request for Production of Documents and/or Tangible Things to Defendant Eli Lilly and Company.

**PRELIMINARY STATEMENT**

As a preface to each and every response to Plaintiff's interrogatories and requests, Lilly qualifies its response by stating that Lilly has not completed its investigation of the facts relating to this case, has not completed its discovery in this action and has not completed its preparation for trial. Lilly reserves the right to amend or supplement these responses as discovery in the case progresses, as new facts are developed and as new information is obtained. Therefore, the following responses are given without prejudice to Lilly's right to produce any additional evidence at trial or in connection with any pretrial proceeding.

1914920v1

16.     White Cross Score

Do you contend that in the year of exposure as set forth in the Complaint, any manufacturer other than you, bottled or distributed DES in the dosage sizes indicated for use in prevention of accidents of pregnancy, as a round, white cross-scored, non-imprinted tablet? If your answer is yes, identify the product or the manufacturer and any documents (by date, description or custodian), upon which you rely in making this statement. For your information, it appears that the Squibb 100mg was imprinted with their name and that the Amfre-Grant was hexagonal.

RESPONSE: Lilly incorporates herein its Objection E. Lilly further objects to this interrogatory on the grounds that it is irrelevant because there is no evidence that the product allegedly ingested by Plaintiff's mother was a "round, white cross-scored, non-imprinted tablet." Lilly further objects to this interrogatory to the extent it assumes that all of Lilly's diethylstilbestrol in dosage sizes indicated for use in the prevention of certain accidents of pregnancy was round, white, non-imprinted and cross-scored.

17.     Studies Supported by The Defendant

Identify a single controlled study, conducted or supported by you, prior to the marketing of DES to pregnant women, which investigated the effect of DES on the fertility or fecundity of the exposed daughter. Do not obfuscate the record with supposed FDA compliance, state of the art, or what anyone else did, nor refer to irrelevant recipient studies. We want controlled daughter offspring studies only.

RESPONSE: Lilly incorporates herein its Objections B, C, and D. Lilly further objects to Plaintiff's definitions and instructions to the extent they exceed the scope of the Federal Rules of Civil Procedure and seek to prevent Lilly from providing a full and accurate

- 12 -

response. Lilly further objects to this interrogatory to the extent it assumes as true particular statements or allegations, the truth of which Lilly denies. Lilly further objects to this interrogatory to the extent it assumes that Lilly was required to do studies of a type unanticipated by the medical community, or required by government regulations, at the time diethylstilbestrol was approved for use and generally recognized by experts in the field to be safe and which, based on experiments in animals and experience in humans, were neither suggested nor required. Lilly further objects to this interrogatory to the extent it requires Lilly, or any expert retained by Lilly, to collect, organize or analyze such studies, tests or investigations as may exist in the public domain.

Without waiving and subject to its objections, Lilly states that the approval of Lilly's New Drug Applications (NDAs) for diethylstilbestrol was subject to all pertinent regulatory and reporting requirements. Lilly complied at all times with all relevant FDA guidelines as set forth in Title 21 of the Federal Food, Drug and Cosmetic Act. The regulations, which exist in the public domain, speak for themselves.

Lilly further states that, although it did not perform the testing which is the subject of this interrogatory, and was not required to do so, it relied upon the research of experts in the field who had evaluated the safe and effective use of diethylstilbestrol over a period of many years. Diethylstilbestrol was synthesized in 1938, over sixty (60) years ago. Since that time, Lilly and independent investigators have conducted a variety of studies involving substantial testing and research which have contributed to making diethylstilbestrol one of the most studied substances in history. Lilly's studies involved several related methods of investigation: (1) animal tests conducted by Lilly scientists; (2) clinical use of diethylstilbestrol by Lilly physicians; (3) grants of financial support to leading independent scientists and

- 13 -

physicians to enable them to study this pharmaceutical; (4) grants of the pharmaceutical itself to independent physicians to enable them to conduct clinical studies; and (5) personal communications with scientists and physicians. In addition, articles on diethylstilbestrol and related subjects which were published in the reputable scientific and medical journals were reviewed and evaluated shortly after the time of publication by the physicians at Lilly who were assigned to monitor diethylstilbestrol.

Lilly was aware that independent physicians and scientific investigators tested, observed and reported upon the effects of the administration of diethylstilbestrol on the offspring of mothers who had taken the drug during pregnancy. At the time of publication, Lilly's medical monitors for diethylstilbestrol reviewed and evaluated the reports published in the scientific and medical literature by these investigators to determine if the use of diethylstilbestrol produced undesirable or adverse effects in the offspring. Some of these articles, while not designed specifically to meet the criteria in Interrogatory No. 17, nevertheless reported on the follow-up studies of human offspring exposed to diethylstilbestrol *in utero*:

Abarbanel, A. R.: Surg. Gynecol. Obstet., 73:257, 1941.

Canerio, E.M.; Houston, G.; Smith, C.A.: Am.J. Obstet. Gynecol., 65:1298, (June), 1953.

Gitman, L.; Kaplowitz, A.: New York J. Med., 50:2823 (December 1), 1950.

Karnaky, K. J.: South. Med. J., 35:838 (September), 1942.

Karnaky, K. J.: J. Clin. Endocrinol., 5:279 (July-August), 1945.

Karnaky, K. J.: Am. J. Obstet. Gynecol., 53:312 (February), 1947.

Karnaky, K. J.: Am. J. Obstet. Gynecol., 58:622 (September), 1949.

Karnaky, K. J.: Arizona Med., 8:36 (January), 1951.

Karnaky, K. J.: Med. Times, 81:315 (May), 1953.

Karnaky, K. J.: J. Ariz. Med. Assoc., 11:247 (July), 1954.

1914920v1

Nelson, H. B.; Gillespie, L.; White, P.: Obstet. Gynecol., 1:219 (February), 1953.

Palmer, L. J.: West J. Surg. Obstet. Gynecol., 56:175 (March), 1948.

Paolone, C. J.: J. Am. Med. Wom. Assoc., 4:240 (June), 1949.

Plate, W. P.: Int. Congr. Obstet. Gynec., p. 751, 1954.

Rosenblum, G: Transactions of the Conference on Sterility and Infertility of the American Society for the Study of Sterility, Vol. III, p. 131, 1947.

Rosenblum, G.; Melinkoff, E.: West. J. Surg. Obstet. Gynecol., 55:597 (November), 1947.

Smith, O. W.: Am. J. Obstet. Gynecol., 56:821 (November), 1948.

Smith, O. W.; Smith, G. V. S.: New Eng. J. Med., 214:562 (October 13), 1949.

Smith, O. W.; Smith, G. V. S.: Am. J. Obstet. Gynecol., 58:994 (November), 1949.

Smith, G. V. S.; Smith, O. W.: Obstet. Gynecol., 4(2):129 (August), 1954.

White, P.; Hunt, H.: J.A.M.A., 115:2039 (December 14), 1940.

White, P.; Hunt, H.: J. Clin. Endocrinol., 3:500 (September), 1943.

White, P.: J.A.M.A., 128:181 (May 19), 1945.

White, P.: Am. J. Med., 7:609 (November), 1949.

White, P.: The Treatment of Diabetes Mellitus, 9th Edition, Chapter 27, p. 676, Lea and Febiger (Philadelphia), 1952.

White, P.: Trans. New Eng. Obstet. Gynecol. Soc., 7:145, 1953.

White, P.; Kosky, P.; Duckers, J.: Med. Clin. North Am., 37:1481 (September), 1953.

White, P.; Gillespie, L.; Sexton, L.: Am. J. Obstet. Gynecol., 71(1):57 (January), 1956.

In addition to these studies, Lilly's product literature for diethylstilbestrol, which was also submitted and available to the Food and Drug Administration (FDA), referenced other articles regarding the use of diethylstilbestrol as an aid in the prevention of certain accidents of pregnancy.

During the period in which Lilly indicated diethylstilbestrol for use in pregnancy, neither Lilly nor, to the best of Lilly's knowledge, anyone else had received information that a serious or long term adverse effect on the human fetus was considered to be causally related to the use of diethylstilbestrol during pregnancy by the mother.

18.  <u>Statute of Limitations</u>

Identify by date, publication or program, the particular newspaper article or program appearing in any newspaper, magazine, television show, internet, or media event from any other source, which you contend came to the plaintiff's attention and could have or should have alerted her, to the suggestion or suspicion of wrongful conduct on part in the promotion, sales or distribution of DES, and/or which could have put her on notice of the existence of a claim, lawsuits or litigation involving DES daughters, more than three (3) years prior to the filing of this suit. Do not generalize but provide the specific media event that you claim the plaintiff saw, read, or heard.

<u>RESPONSE</u>: Lilly objects to this interrogatory to the extent it assumes as true particular statements or allegations, the truth of which Lilly denies. Lilly further objects to Plaintiff's definitions and instructions to the extent they exceed the scope of the Federal Rules of Civil Procedure and seek to prevent Lilly from providing a full and accurate response. Without waiving and subject to its objections, Lilly states that since the litigation involving diethylstilbestrol began in 1972, there have been numerous articles in legal publications, newspapers, magazines and medical publications which have discussed the injuries alleged to have been caused by diethylstilbestrol and legal remedies sought for those injuries. In addition to such articles, there have been countless advertisements by lawyers alerting DES-exposed

1914920v1