MEDICS PHARMACEUTICAL CORP. v. NEWMAN   Ga.  487
Cite as 378 S.E.2d 487 (Ga.App. 1989)

be found in the jurisdiction. Appellant then requested that service by second original be made at a DeKalb County address. On September 21, 1987, the sheriff's office served William Tate, the appellee here, at the address provided by appellant. This address was and had been appellee's home, and the intended defendant, William T. Tate, Jr., had never lived there. The next day, appellee contacted appellant's attorney and two days later appellant's attorney wrote a letter to appellee advising him that he was not the man intended to be served and that he did not need to file an answer to the complaint. However, appellant took no other action to dismiss appellee from the suit. On October 8, 1987, appellee filed his answer and counterclaim for malicious abuse of process. Appellant then filed its "Motion to Dismiss and Strike the Non-Party's Answer and Counterclaim." After a hearing, the trial court denied the motion. *Held:*

The key factor in resolving the issue on appeal is whether appellee can be considered a party to *this* action. While the court makes no judgment on the merits of appellee's claim against appellant, there can be no doubt that appellee has the right to bring such a claim. The question is whether that claim can be maintained in the present case.

"... Georgia law broadly defines a 'party' to include one who is directly interested in the subject matter of the litigation, has the right to adduce testimony, to cross-examine witnesses, to control the proceedings, and to appeal from the judgment. [Cits.]" *Wilkins v. Dept. of Human Resources,* 255 Ga. 230, 235, 337 S.E.2d 20 (1985). Appellant argues that this precludes appellee from this action because he is not the person appellant intended to sue. However, this misses the point that appellee became involuntarily interested in this litigation the moment he was served. Even though appellant told appellee he need not answer because he was not the party intended, appellant took no other action to have the court remove the command to appear and answer inherent in the summons served by the sheriff. This left appellee in an ambiguous position.

One served with legal process ignores the summons at his own risk. *Miller v. U.S. Shelter Corp.,* 179 Ga.App. 469(3), 347 S.E.2d 251 (1986); *W.T. Rawleigh Co. v. Watts,* 68 Ga.App. 786, 789, 24 S.E.2d 213 (1943). Had appellee not answered, he risked a change of heart by appellant and the possibility of a default judgment being entered against him. Thus, appellee took the only prudent action available and answered. We hold that appellee became a party to the suit upon service, although an unintended party by the plaintiff-appellant. Appellant could have moved the court to quash the service immediately upon learning of the error, or it could have dismissed the action pursuant to OCGA § 9-11-41. Appellant also could have moved the court to drop the unintended party pursuant to OCGA § 9-11-15. However, it did none of these, and appellee is a party and thus has the right to assert his counterclaim. The trial court can easily avoid any confusion between the counterclaim and the main action by ordering a separate trial of the counterclaim pursuant to OCGA § 9-11-42(b).

*Judgment affirmed.*

McMURRAY, P.J., and BENHAM, J., concur.



190 Ga.App. 197
MEDICS PHARMACEUTICAL CORPORATION
v.
NEWMAN.
No. 77462.

Court of Appeals of Georgia.

Jan. 24, 1989.

Rehearing Denied Feb. 7, 1989.

Certiorari Denied March 8, 1989.

Supplier of drug DES appealed from judgment entered in the DeKalb Superior

488 Ga.    378 SOUTH EASTERN REPORTER, 2d SERIES

Court, Peters, J., on jury verdict awarding plaintiff whose mother had used drug during pregnancy over $800,000 in damages. The Court of Appeals, Pope, J., held that question of foreseeability of drug's use to prevent miscarriages, and thus question of whether supplier used reasonable care in determining whether drug was safe for that use, was for jury, and supplier's motion for directed verdict was properly denied.

Affirmed.

**Drugs and Narcotics ⚖︎22**

Question of foreseeability of physician's use of drug DES to prevent miscarriages, and thus question of whether supplier of drug to physicians used reasonable care in determining whether drug was safe for that use, was for jury in negligence action brought against supplier by plaintiff who claimed that she developed genital cancer as result of her mother's use of drug during pregnancy.

---

B.J. Roberts, Jack Dorsey, Peter J. Krebs, Decatur, for appellant.

Gary E. Jackson, A. Russell Blank, Atlanta, for appellee.

POPE, Judge.

Plaintiff Carol Lynn Newman was born June 28, 1964. During her pregnancy, Mrs. Newman's mother took a drug commonly known as DES. The drug was prescribed by Dr. Arthur A. Smith, an obstetrician, to prevent miscarriage. Dr. Smith testified he specifically prescribed Diastyl, a brand of DES marketed in the Atlanta area by defendant Medics Pharmaceutical Corporation. Defendant Medics did not manufacture the drug but purchased it from a manufacturer with the brand name and Medics' corporate name on the label of each stock bottle. Medics marketed Diastyl to Dr. Smith and other physicians. Medics denied it ever promoted the drug for use in preventing miscarriage. The printed information included with each stock bottle, known as the "product insert," listed several indicated uses for Diastyl but did not mention use for prevention of miscarriage. Nevertheless, evidence was presented that DES was commonly prescribed by physicians for preventing miscarriage at the time plaintiff was born.

In the early 1970's a correlation was discovered between use of DES during pregnancy and subsequent development of genital cancer in the female offspring of mothers treated with DES. In 1980, at the age of sixteen, defendant was diagnosed as having clear cell adenocarcinoma and underwent surgery for the removal of her uterus, cervix and vagina. Plaintiff brought an action against defendant to recover for her injuries. Although the original complaint alleged causes of action for negligence, strict liability and breach of warranty, the sole issue presented at trial was defendant's alleged negligence. Judgment was entered on the jury verdict awarding plaintiff $811,692.50 in damages. Defendant appeals.

1. Defendant contends the court erred in denying its motion for directed verdict because no evidence was presented by which defendant could be held liable to plaintiff in negligence. Defendant argues it cannot be held liable for injuries arising out of the use of Diastyl to prevent miscarriages because it did not recommend or market its product for that purpose. However, evidence was presented from which the jury could conclude that defendant knew or should have known that physicians were regularly prescribing DES to prevent miscarriages. Whether a manufacturer or distributor of DES should have foreseen it would be used for preventing miscarriages is a question of fact for the jury. *Burel v. Berlex Labs.*, No. C84-1624A, slip op. at 7 (N.D.Ga.1986). "The maker of an article for sale or use by others must use reasonable care and skill in designing it ... so that it is reasonably safe for the purposes for which it is intended, *and for other uses which are foreseeably probable* .... (Emphasis supplied)" (Punctuation and citations omitted.) *Ford Motor Co. v. Stubblefield*, 171 Ga.App. 331, 335, 319 S.E.2d 470 (1984). Because a jury issue was presented as to the foreseeability of the drug's use to

HABERSHAM v. STATE  Ga. **489**
Cite as 378 S.E.2d 489 (Ga.App. 1989)

prevent miscarriages, a jury issue was also presented as to whether defendant used reasonable care in determining whether the drug was safe for that use.

During closing argument, plaintiff's attorney stated to the jury that plaintiff does not claim defendant "did anything wrong in failing to tell the doctors that it could cause cancer." Instead, plaintiff's attorney based his closing argument on the theory that defendant was negligent in failing to inform the medical profession that the drug was not effective in preventing miscarriages. Dr. Smith testified that he was aware of studies questioning the efficacy of DES for preventing miscarriages but nevertheless prescribed the drug for that purpose because he had found it to be effective in his practice. Thus, defendant argues that its failure to warn the physician about the ineffectiveness of the drug was not the proximate cause of plaintiff's cancer. Defendant further argues that the statement by plaintiff's attorney in closing argument was an admission in judicio which would preclude plaintiff from recovering for defendant's failure to warn of the danger of cancer. Even if plaintiff were precluded from recovering for defendant's failure to warn of the specific, unknown danger of cancer, plaintiff was not precluded from recovering for breach of the general duty of a manufacturer to use reasonable care to provide a product which is reasonably safe for those purposes for which it could foreseeably be used.

"Negligence has no precise legal meaning. Among the best has been declared to be 'the failure to observe, for the protection of the interests of another person, that degree of care, precaution, and vigilance which the circumstances justly demand, whereby such other person suffers injury.' [Cit.]" *Ford Motor Co. v. Carter*, 239 Ga. 657, 662, 238 S.E.2d 361 (1977). The issue raised by the evidence in this case was not whether defendant should have warned of a yet unknown danger but whether defendant used reasonable care and vigilance to discover *whether* any dangers were posed by using the drug to prevent miscarriages. Regardless of the theories argued by the attorneys to the jury, sufficient evidence was presented to submit the issue of defendant's negligence to the jury. Thus, the trial court did not err in denying defendant's motion for directed verdict.

2. We have considered defendant's remaining eleven enumerations of error and find them to be meritless.

*Judgment affirmed.*

McMURRAY, P.J., and BENHAM, J., concur.



190 Ga.App. 211
HABERSHAM
v.
The STATE.
No. 77792.

Court of Appeals of Georgia.

Jan. 24, 1989.

Rehearing Denied Feb. 8, 1989.

Certiorari Denied March 8, 1989.

Defendant was convicted in the Cobb Superior Court, Robinson, J., of trafficking in cocaine, and he appealed. The Court of Appeals, Pope, J., held that: (1) trial court did not abuse its discretion in denying defendant's motion to sever, and (2) evidence established proper chain of custody of cocaine.

Affirmed.

1. **Criminal Law** ⚖︎622.2(10)

Trial court did not abuse its discretion in denying defendant's motion to sever despite his contention that codefendant would have testified that neither he nor defendant possessed cocaine.

2. **Criminal Law** ⚖︎404.60

Evidence established proper chain of custody of cocaine seized at crime scene,

4. **Federal Civil Procedure ⇐2515**

Genuine issue of material fact as to whether physician prescribed only prescription drug diethylstilbestrol (DES) manufactured by pharmaceutical company precluded summary judgment for failure to establish proximate cause in products liability action based on company's failure to give adequate warnings.

5. **Husband and Wife ⇐209(3)**

Under Kansas law, as predicted by the district court, woman who allegedly suffered pregnancy complications, pregnancy losses and infertility as a result of her exposure to diethylstilbestrol (DES) *in utero* could assert loss of consortium claim on behalf of her husband, in her products liability action against pharmaceutical company, for latent injuries discovered after she was married but caused by company's acts before she married. K.S.A. 23-205.

6. **Action ⇐38(3)**

Under Kansas Product Liability Act (KPLA), claims of woman, who allegedly suffered pregnancy complications, pregnancy losses and infertility as a result of her exposure to diethylstilbestrol (DES) *in utero*, for negligence, strict liability, breach of warranty, and negligent misrepresentation merged into single products liability claim, to extent that claims were based on failure to warn theory. K.S.A. 60-3301 et seq.

---

Patricia M. Stanford, Jacksonville, FL, Peter S. Obetz, Bartimus, Frickleton, Robertson, & Obetz, P.C., Stephen M. Gorny, Bartimus, Frickleton, Robertson, & Obetz, P.C., Leawood, KS, for Plaintiff.

David W. Brooks, Mark C. Hegarty, John F. Kuckelman, Shook, Hardy & Bacon L.L.P., Kansas City, MO, for Defendant.

## ORDER

VRATIL, District Judge.

Barbara Baughn filed this product liability action against Eli Lilly and Company ("Lilly"). Plaintiff alleges that she suffered injuries because her mother took diethylstilbestrol ("DES"), a prescription drug, during her pregnancy with Barbara in 1964 and 1965. This matter is before the Court on *Defendant Eli Lilly And Company's Second Motion For Summary Judgment* (Doc. # 42) filed October 1, 2004; *Plaintiff's Motion To Strike Affidavit Of John F. Kuckelman And Supporting Memorandum Of Law* (Doc. # 44) filed October 11, 2004; *Plaintiff's Motion To Strike Second Affidavit Of John F. Kuckelman And Supporting Memorandum Of Law* (Doc. # 61) filed December 10, 2004; and *Plaintiff's Motion To Limit Or Exclude Defendant's Expert Testimony And Memorandum Of Law In Support Thereof* (Doc. # 41) filed October 1, 2004. For reasons stated below, the Court overrules all of the motions.

### *Summary Judgment Standards*

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genu-