Service: Get by LEXSEE®
Citation: 814 p2d 1186

62 Wn. App. 451, *; 814 P.2d 1186, **;
1991 Wash. App. LEXIS 309, ***

Robert Hibbs, et al, Appellants, v. Abbott Laboratories, et al, Defendants, Kirkman Laboratories, Inc., Respondent

No. 26319-6-I

COURT OF APPEALS OF WASHINGTON, Division One

62 Wn. App. 451; 814 P.2d 1186; 1991 Wash. App. LEXIS 309

July 22, 1991, Decided

NOTICE: [***1]

Released for Publication August 21, 1991.

SUBSEQUENT HISTORY: As Amended by Order of the Court of Appeals January 15, 1992. Reconsideration Denied January 15, 1992. Review Denied at 118 Wn.2d 1011 (1992). Review Denied January 8, 1992, Reported at 1992 Wash. LEXIS 19.

PRIOR HISTORY:
Superior Court: After some defendants settled and others were dismissed, the Superior Court for King County, No. 88-2-07249-3, Norman W. Quinn, J., on May 10, 1990, granted a summary judgment in favor of a defendant which made DES into tablets and distributed them.

DISPOSITION: Holding that the testimony of the prescribing physician did not provide a basis for dismissing any of the plaintiff's theories of recovery, the court *reverses* the judgment and *remands* the case for further proceedings.

CASE SUMMARY

PROCEDURAL POSTURE: Plaintiff woman whose mother took the drug diethylstilbestrol (DES) during her pregnancy and her husband (individuals) sought review of the decision of the Superior Court for King County (Washington), which granted summary judgment in favor of defendant pharmaceutical company (company) in the individuals' product liability action.

OVERVIEW: The trial court had determined that, given a doctor's testimony about his reasons for having prescribed DES, the individuals could not have, as a matter of law, established proximate cause. The doctor, the obstetrician that had prescribed the DES, testified that his decision to have prescribed DES was based on his own observation of its beneficial effects on patients and his ongoing review of scholarly literature, and not on drug company promotional literature. The individuals argued that the doctor's testimony was insufficient to have established that his decision to have prescribed the DES made any failure to warn by the company irrelevant as a matter of law. The court reversed the summary judgment and remanded the matter for trial. The court held that the doctor's testimony did not provide a basis for summary judgment on any of the individuals' theories of recovery. The doctor's testimony was only that he had not relied upon the company's pharmaceutical literature. The doctor never stated that he did not or would

not have read the labeling.

OUTCOME: The court reversed the summary judgment granted in favor of the company in the individuals' product liability action and remanded the matter back to the trial court for trial.

CORE TERMS: pregnancy, summary judgment, pharmaceutical, prescribe, warnings, moving party, promotional, manufacturer, miscarriage, prescribing, failure to warn, matter of law, own knowledge, spontaneous, deposition, marketing, abortion, birth, distinguishable, labeling, products liability, genuine issue of material fact, unreasonably dangerous, deposition testimony, proximate cause, initial burden, manufacturing, complications, obstetrician, preventative

LexisNexis (TM) HEADNOTES - Core Concepts - ◆ Hide Concepts

Civil Procedure > Summary Judgment > Supporting Papers & Affidavits
Civil Procedure > Summary Judgment > Burdens of Production & Proof
Civil Procedure > Summary Judgment > Summary Judgment Standard

HN1 ± Summary judgment is proper only when the pleadings, depositions, and admissions in the record, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Wash. Super Ct. Civ. R. 56(c). Only after the moving party has met its burden is the nonmoving party required to set forth facts showing that there is a genuine issue of material fact. More Like This Headnote

◆ Show Headnotes / Syllabus

COUNSEL: *Stephen L. Bulzomi* and *Messina Duffy*, for appellants.

*Nancy T. McKinley* and *Fallon & McKinley*, for respondent.

JUDGES: Pekelis, J. Webster, [***2] A.C.J., and Scholfield, J., concur.

OPINIONBY: PEKELIS

OPINION: [*452] [**1186] Joan and Robert Hibbs appeal from the summary judgment dismissal of their products liability suit against Kirkman Laboratories, Inc.

I

Joan Hibbs was born on November 7, 1950. Prior to her birth, Joan's mother, Bernadine Raymond, was prescribed diethylstilbestrol (DES), a synthetic estrogen, by Dr. Robert N. Rutherford to prevent miscarriage during her pregnancy with Joan.

Joan Hibbs has been diagnosed as having anatomical changes of the genital tract and reproductive system, including a "T" shaped uterus, and a cervical ridge. She is unable to successfully carry a child to term. In July 1987, Hibbs underwent surgery for an ectopic pregnancy which resulted in the partial removal of her right fallopian tube. Currently, she must follow a rigorous schedule of frequent vaginal and colposcopic examinations.

[*453] [**1187] On April 20, 1988, the Hibbses sued Eli Lilly & Company, the G.W. Carnrick Company, and other manufacturers of DES claiming that Joan Hibbs' injuries were caused by her in utero exposure to the drug. n1 In their complaint, the Hibbses alleged, *inter alia*, that the [***3] manufacturers were liable for marketing an unsafe product and for

failing to provide adequate warnings.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 Other companies named in the complaint were Abbott Laboratories; American Pharmaceutical Company; Horton & Converse; Kremers-Urban Company; McNeil Laboratories, Inc.; Person & Covey, Inc.; E.R. Squibb & Sons, Inc.; Stayner Corporation; and West-Ward.

- - - - - - - - - - - End Footnotes - - - - - - - - - - - - -

In April 1989, Lilly brought a third party action against Kirkman Laboratories, Inc. Lilly alleged that Kirkman manufactured and distributed DES in Washington prior to Joan Hibbs' birth and thus should be included in determining the defendant manufacturers' market share liability, citing *Martin v. Abbott Laboratories*. n2 On July 27, 1989, the Hibbses amended their complaint to include Kirkman as a defendant.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n2 102 Wn.2d 581, 689 P.2d 368 (1984).

- - - - - - - - - - - End Footnotes - - - - - - - - - - - - -

On April 4, 1990, Lilly [***4] moved for summary judgment and dismissal, contending that the Hibbses could not demonstrate that Lilly's alleged failure to issue adequate warnings was the proximate cause of Joan Hibbs' injuries.

In support of the motion, Lilly submitted excerpts from the deposition of Dr. Rutherford, Bernadine Raymond's obstetrician. Dr. Rutherford testified that he first learned about the use of DES in treating pregnancy complications in 1939 while a resident at the Free Hospital for Women in Brookline, Massachusetts. It was there that he worked closely with Drs. Olive and George Smith, two respected pioneers in the study of using DES to prevent miscarriages. Dr. Rutherford agreed with the Smiths' conclusion that DES was a safe and efficacious drug for use as a miscarriage preventative. He also testified that his decision to prescribe DES was based on his own observation of its beneficial effects on patients and his ongoing review [*454] of scholarly literature, not on drug company promotional literature. n3

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n3 Dr. Rutherford testified:

> "Q: Through 1951 when you would decide to prescribe stilbestrol to a woman who was either a habitual aborter or threatened aborter or having other complications of pregnancy, was your decision to order stilbestrol based upon the work of Smith and Smith, the work of Priscilla White, your residency in Boston, and your experience with the pharmaceutical here in Washington?
> "A: Yes.
> "Q: Was it also based on your ongoing review of the medical literature as editor of the [*Western Journal of Surgery, Obstetrics and Gynecology*]?
> "A: Yes.
> "Q: Was it also based upon your contacts and experiences with obstetricians in

the area?
"A: Yes.
"Q: Was it based in any way at all upon the promotional literature of any pharmaceutical company?
"A: No. These were based on my observations personally, plus continuing reports in reputable medical journals . . .".

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [***5]

In response to the motion for summary judgment, the Hibbses submitted the affidavits of two experts: Henry T. Lynch, M.D., and Robert J. Stillman, M.D.

Dr. Lynch testified that he was familiar with the state of scientific knowledge regarding DES in 1950. He related that drug companies selling DES for use during pregnancy did no research into whether the drug was safe for use during pregnancy. n4 This failure to independently test DES occurred despite the existence of animal studies in the 1940's showing that DES caused abnormalities in the reproductive organs of rodent offspring exposed in utero. Dr. Lynch added that valid studies in the 1950's conclusively demonstrated that DES did not reduce the risk of spontaneous abortion. In summary, Dr. Lynch opined that DES should not have been marketed for use during pregnancy in 1950 because there was valid evidence available to DES manufacturers disproving the safety and efficacy of the drug.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n4 For a thorough accounting of the history of the development and marketing of DES, see Martin, 102 Wn.2d at 587-90.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [***6]

[*455] [**1188] Dr. Stillman testified that scientifically valid studies in the 1950's showed that women who used DES during pregnancy had no greater rate of pregnancy-salvaged births than control groups. The studies demonstrated that DES did not reduce the risk of spontaneous abortion. In Dr. Stillman's opinion, had drug companies conducted such studies before they began selling DES for use during pregnancy, they would have arrived at the same results which could have been conveyed to the medical community.

On April 10, 1990, Kirkman and Carnrick joined in Lilly's motion for summary judgment. Kirkman submitted excerpts from the depositions of its founders, Lyle Wellman and William Graham, taken in another case. According to Wellman and Graham, Kirkman's involvement with DES consisted of purchasing the drug from other pharmaceutical companies, tabletizing it, and then reselling the drug generically.

Prior to oral argument on the motion for summary judgment, Lilly settled with the Hibbses and was dismissed from the case. n5 On May 10, 1990, the trial court granted summary judgment in favor of Kirkman and Carnrick. Given Dr. Rutherford's testimony about his reasons for [***7] prescribing DES, the trial court determined that the Hibbses could not, as a matter of law, establish proximate cause. Carnrick has since been dismissed, leaving Kirkman as the only remaining respondent on appeal.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n5 Apparently, the remaining defendants apart from Kirkman and Carnrick were dismissed from the suit prior to summary judgment.

- - - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - - -

II

The Hibbses contend that Dr. Rutherford's deposition testimony is insufficient to establish that his decision to prescribe DES to Bernadine Raymond made any failure to warn by Kirkman irrelevant as a matter of law. The Hibbses also assign error to the dismissal of all their claims, arguing that, at best, the deposition testimony of Dr. Rutherford was relevant to their failure to warn theory, not their other claims based on marketing an unsafe product.

[*456] HN1[1] Summary judgment is proper only when the pleadings, depositions, and admissions in the record, together with any affidavits, show that there is no genuine issue as to any material fact and that the [***8] moving party is entitled to judgment as a matter of law. CR 56(c); *Hash v. Children's Orthopedic Hosp. & Med. Ctr.*, 110 Wn.2d 912, 915, 757 P.2d 507 (1988). The moving party has the initial burden of showing that no genuine factual issue exists. *Hash*, 110 Wn.2d at 915. Only after the moving party has met its burden is the nonmoving party required to set forth facts showing that there is a genuine issue of material fact. *Hash*, 110 Wn.2d at 915.

Here, Dr. Rutherford's testimony was only that he did not rely on Kirkman or any other pharmaceutical company's promotional literature. He prescribed DES because of what he knew about the drug from his own vast experience and other doctors' work. Based on these statements, Kirkman would have us conclude that if the drug companies had researched DES, as Drs. Lynch and Stillman claim they should have, and warned about not only the drug's lack of efficacy in the prevention of spontaneous abortions, but also the drug's significant dangers when ingested during pregnancy, Dr. Rutherford would have nevertheless ignored these warnings.

[2] Kirkman's argument is flawed. Dr. Rutherford's [***9] reliance on his own knowledge of DES in deciding to prescribe the drug to Bernadine Raymond has no bearing on whether he would have heeded warnings, had any been given, that the drug posed serious risks to the unborn children of pregnant women. Dr. Rutherford was simply never asked this question.

In its memorandum in support of summary judgment, Kirkman relied heavily on *Douglas v. Bussabarger*, 73 Wn.2d 476, 438 P.2d 829 (1968). The facts in *Douglas*, however, are distinguishable from those in this case. There, the prescribing physician testified that he relied on his own knowledge of anesthetics "and, in fact, *did not read the labeling which was on the container.*" (Italics ours.) *Douglas*, 73 Wn.2d at 478. From [**1189] this the court in *Douglas* was able to conclusively determine that had [*457] warnings existed, the physician would clearly not have seen them anyway. However, here Dr. Rutherford never said that he did not or would not have read the labeling. He simply explained that it was his own knowledge of the drug that persuaded him to prescribe it for the prevention of miscarriages, not the drug company's *promotional* [***10] *literature*. n6

- - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n6 "Q: Doctor, you've testified in extensive form about your experience working with the Smiths and your experience working in the DES clinic. At any time did you receive any information regarding the use of DES in pregnancy from any of the pharmaceutical company

detail men?

"A: It's the other way around. They usually would present material that had been written in the literature, and they would either give us reprints of articles that we already read in the literature or would -- how shall we say -- most of us tried to duck the detail men as much as we could because they were constantly suggesting new routines that were untried."

- - - - - - - - - - - End Footnotes - - - - - - - - - - - - - -

Moreover, *Douglas* is distinguishable for the reason that there the alleged failure to provide adequate warnings was the plaintiffs only claim. Here the Hibbses also alleged that Kirkman was strictly liable for manufacturing an unreasonably dangerous product. Under this theory, had the pharmaceutical companies properly tested DES, they would have discovered [\*\*\*11] both its inefficacy as a miscarriage preventative and the health risks resulting from prenatal exposure. Based on these facts, the companies would not have marketed the drug for use during pregnancy. Thus, regardless of Dr. Rutherford's views on DES, he would have been unable to prescribe the drug to Bernadine Raymond for the particular purpose intended.

Accordingly, we hold that Dr. Rutherford's testimony does not provide a basis for summary judgment on any of the Hibbses' theories of recovery. The order of the trial court is reversed and the matter remanded for trial.

Service: Get by LEXSEE®
Citation: 814 p2d 1186
View: Full
Date/Time: Thursday, November 6, 2003 - 10:17 AM EST

* Signal Legend:
- Warning: Negative treatment is indicated
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.