UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MELISSA KELLEY<br><br>        Plaintiff,<br><br>    v.<br><br>ELI LILLY AND COMPANY<br><br>        Defendant. | Civil Action No. 05-CV-1882 (RCL) |

**DEFENDANT ELI LILLY AND COMPANY'S REPLY BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Eli Lilly and Company ("Lilly") moved for summary judgment in this case because Plaintiff cannot show that the product literature and warnings that Plaintiff alleges to be inadequate, and the cause of the prescription in this case, were Lilly's. The alleged inadequacy of that literature is central to all of Plaintiff's claims -- negligence, strict liability, breach of warranty, negligent misrepresentation -- as each of them rests on the alleged wrong of inadequate disclosure. Each claim requires Plaintiff to prove that Lilly's written materials were read and relied upon by the prescribing doctor, and that the doctor would not have prescribed the drug had different warnings been provided. Plaintiff, however, admits that she "has provided no evidence demonstrating that [the prescribing physician] ever read or consulted Lilly's product warnings and literature in determining whether or not to prescribe a medication to Ms. Kelley's mother." Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition") at 6 ¶ 10; Defendant Eli Lilly and Company's Motion for Summary Judgment as to the Claims of Plaintiff Melissa Kelley ("Lilly's Motion") at 4 ¶ 10. Without such evidence, no reasonable

juror could find that any alleged deficiency in Lilly's product literature, as opposed to deficiencies in any other source of information about the drug from the 50 other companies who made it or the prescribing doctor's own education and training, caused Plaintiff's injuries.

## II. ARGUMENT

### A. Plaintiff Has Offered No Evidence to Show that Dr. Safon Relied On Lilly's Product Literature.

Despite admitting that there is no evidence demonstrating that the prescribing doctor, Dr. Safon, consulted Lilly's product literature, Plaintiff's Opposition at 6 ¶ 10; Lilly's Motion at 4 ¶ 10, Plaintiff attempts to obscure the facts at issue and implicate Lilly's warnings through several sources: (1) the statement of pharmacist Steven Baker; (2) a 1941 letter from Lilly to Squibb regarding the New Drug Application for diethylstilbestrol; (3) the 1970 and 1971 PDR indices; and (4) the testimony of Dr. Thomas Carney.  None of these sources assist Plaintiff in meeting her burden.

#### 1. The Statement of Steven Baker Is Irrelevant.

Plaintiff submits the Statement of Steven Baker, a pharmacist, for the proposition that the pharmacy allegedly used by Plaintiff's mother stocked Lilly's DES.  Mr. Baker's statement does nothing more than indicate that *if* the identified pharmacy received a generic prescription for DES, the Lilly brand would have been dispensed.  Statement of Steven Baker ¶ 6.  Plaintiff admits, however, that she "has provided no medical records or prescription records demonstrating that Dr. Safon prescribed Lilly's diethylstilbestrol, as opposed to a generic prescription or a specific prescription for another drug company's brand of diethylstilbestrol to Plaintiff's mother during her pregnancy with Ms. Kelley."  Plaintiff's Opposition at 6 ¶ 6; Lilly's

Motion at 4 ¶ 6.[1]  Without any knowledge of Dr. Safon's prescribing practices, any statement regarding the stocking practices of the pharmacy allegedly used by Plaintiff's mother is irrelevant.

Moreover, the issue is not what brand of DES, of the more than 50 available at the time, the pharmacist allegedly *dispensed* to Mrs. Elman, but *what manufacturer's literature was relied upon by her prescribing physician* in deciding to prescribe DES.  It is Dr. Safon who decided what medication to prescribe and wrote the prescription.  Mr. Baker played no part in this decision.  A doctor, rightfully, and not a pharmacist, is the party upon whom a patient relies to determine what medication is necessary for treatment.  It is the doctor who knows the patient, her medical history, and the specifics of her medical condition, and is able to weigh this history and the benefits and risks of treating with a prescription drug.  The doctor ultimately chooses to write a prescription for a particular medication.  Whether the pharmacist would have read a manufacturer's product warnings is irrelevant to the question of whether a drug would have been prescribed.  Indeed, the Lilly literature in 1970 and 1971 reflects that central role of the physician in balancing the risks and benefits of drug use by noting that should the drug be prescribed in known pregnancies, the risks and benefits must be carefully weighed.  The doctor's actions then, and not the pharmacist's, are central to Plaintiff's proof on causation.

Thus, Plaintiff must prove that *Dr. Safon* relied on *Lilly's* warnings when deciding to prescribe DES to Mrs. Elman.[2]  Plaintiff cannot prove that Dr. Safon relied on Lilly's warnings

---

[1] Plaintiff further admits that there are "no medical records or prescription records demonstrating that Dr. Safon prescribed Mrs. Elman diethylstilbestrol at all." Plaintiff's Opposition at 6 ¶ 6; Lilly's Motion at 4 ¶ 6.

[2] Plaintiff repeatedly asserts that it is *Defendant's* burden to prove that Dr. Safon did not rely on Lilly's warnings. *See, e.g.*, Plaintiff's Opposition at 10-11.  Plaintiff attempts to confuse Lilly's burden to rebut causation evidence provided by the heeding presumption (which is inapplicable here as discussed *infra*) with Plaintiff's initial burden to specifically identify who caused her harm.  It is Plaintiff who must identify what Dr. Safon relied upon in deciding to prescribe medication to Mrs. Elman, not Lilly's.

rather than the many other sources of information available including, Dr. Safon's own medical training and experience, medical conferences, medical journals, information from colleagues, literature from one of the other 50 manufacturers of DES in 1970, etc. In fact, any argument that Dr. Safon relied upon Lilly's product literature, as opposed to numerous other potential sources, would strain credulity because Lilly's product literature in 1970 and 1971 did not indicate DES for use to prevent accidents of pregnancy. The logical assumption, then, is that Dr. Safon did not rely on Lilly's literature because this prescription was for use to prevent accidents of pregnancy.

### 2. Dr. Hine's Letter to Squibb Has No Bearing on What If Any Warnings Dr. Safon Relied Upon.

Plaintiff relies on a 1941 letter from Dr. Hines (Lilly) to Dr. Morrell (Squibb) for the proposition that there is no need to identify whose warnings Dr. Safon relied upon because Lilly would be responsible for the content regardless. This letter addresses several companies' applications for FDA approval for Diethylstilbestrol *in 1941 for uses not including the prevention of certain accidents in pregnancy*. It has no bearing on what Lilly's or any other manufacturer's product literature looked like in 1970/1971, nor does it shed light on what Dr. Safon relied upon in allegedly prescribing DES. The 1941 letter from Dr. Hines was written years before DES was approved by the FDA for use in pregnancy in 1947. After 1947, Lilly's (and other manufacturers') warnings changed several times, and each updated version, for each company, was approved by the FDA. These changes included, for Lilly, the deletion of the accidents in pregnancy indication as reflected in Lilly's product literature in 1970/1971.

### 3. Lilly's Listing in the PDR Index is Irrelevant.

Plaintiff's attempt to show that Dr. Safon must have consulted Lilly's literature because Lilly is listed in the 1970/1971 PDR index is equally deceptive. The index is not a comprehensive listing of all of the suppliers of DES, but simply a list of products in a privately

published reference. Plaintiff's own witness admits that it is the Red and Blue Books that list the drugs that were available in the national supply chain to be purchased. See Transcript of Deposition of Harold Sparr in *Bohlin v. Eli Lilly and Company*, 03-CV-11577 (MEL) ("Sparr Tr.") at 101-107 (Attached as Exhibit 1 to the Affidavit of Lauren Dwyer in Support of Lilly's Reply Brief ("Dwyer Aff.") Ex. 1). According to the Red and Blue Books, over 50 companies manufactured DES in 1970 and 1971. In *Galvin v. Eli Lilly and Company*, the court ruled that the Red and Blue Books were competent to show which manufacturers were in the national DES market during the relevant time period. See Galvin II, Civ. Action No. 03-1797 at 7, n.3 & 4; see also Galvin I, Civ. Action No. 03-1797 (CCK) (appeal pending) (attached as Exhibits 2 and 3 to Dwyer Aff.). Thus, the Red and Blue Books, and not the PDR, illustrate the manufacturers on the market during the relevant time period. The fact that Lilly is listed in the PDR does not help Plaintiff establish which, of many potential sources of information, Dr. Safon relied upon in deciding to prescribe DES to Mrs. Elman. Moreover, Lilly's listing in the PDR did not indicate use for prevention of accidents of pregnancy. It is impermissible speculation to assume that Dr. Safon consulted the Lilly entry in the PDR and then prescribed a drug for a use not indicated in that entry.

    4.   Plaintiff's Use of Dr. Thomas Carney's Testimony is Misleading.

Plaintiff mischaracterizes Lilly's share of the DES market and attempts to argue it is relevant to whether Dr. Safon relied on Lilly's literature in deciding to prescribe DES to Mrs. Elman. Plaintiff cites the testimony of Dr. Thomas Carney ("Dr. Carney"), a former Lilly employee testifying on the subject of growth supplements in animal feed, to say that Lilly "produced 75% of the DES sold." Plaintiff's Opposition at 8 ¶ 17. Dr. Carney's testimony, however, described the percentage of the *raw chemical material* diethylstilbestrol produced by Lilly. This raw material was used by a multitude of different manufacturers for purposes ranging

from pharmaceutical products to use in livestock feed. Dr. Carney, in his testimony, made plain that the bulk of the raw material that Lilly produced went to animal feed:

> Mr. Moss: What percentage of stilbestrol consumed in the country is produced by Eli Lilly? . . .
>
> Dr. Carney: Maybe as high as 75 percent.
>
> Mr. Dingell: *And the bulk of it goes into animals?*
>
> Dr. Carney: *The bulk of it goes into animals.*
>
> Mr. Dingell: *Principally cattle?*
>
> Dr. Carney: *Principally cattle, and sheep have been approved for use.*

Hearing on H.R. 7624 and S. 2497 at p. 283 (statement of Thomas Carney)(Plaintiff's Appendix 21)(emphasis added).

Thus, this testimony in no way represents Lilly's share in the relevant market of pharmaceutical pills for human use. Each company that placed DES on the pharmaceutical market, with its own FDA approved product literature, is responsible for the product it made. Furthermore, as discussed above, Lilly's place in the market is irrelevant to Plaintiff's burden to show what specific information Dr. Safon relied upon in prescribing medication to Mrs. Elman.

### B. Plaintiff Cannot Rely On the Heeding Presumption to Identify the Allegedly Defective Warning At Issue.

To gain the benefit of a rebuttable "heeding presumption" that an adequate warning would have been considered by the prescribing doctor, would have altered the doctor's prescription decision, and, therefore, would have prevented the injury, Plaintiff *first must show that the particular defendant failed to warn the specific physician who wrote the prescription.* This predicate proof establishes the nexus between the defendant's act -- the warning -- and the prescription that allegedly caused the harm. Plaintiff has not supplied this proof. Without this link, Lilly and its product literature simply have no connection to the events at issue.

Plaintiff attempts to hurdle her burden to identify the specific manufacturer's warning at issue and proceed directly to the heeding presumption.  In every case Plaintiff relies upon, however, including those citing the heeding presumption, the manufacturer was specifically identified.  *See Garside v. Osco Drug, Inc.*, 976 F.2d 77, 78-79 (1st Cir. 1992) (McKesson's Phenobarbital prescribed); *Knowlton v. Deseret Medical, Inc.* 930 F.2d 116, 118 (1st Cir. 1991) (Deseret Medical's catheter and needle used during surgery); *Brochu v. Ortho Pharmaceutical Corp.*, 642 F.2d 652, 653-54 (1st Cir. 1981) (Ortho's Ortho-Novum 2 mg. oral contraceptive prescribed); *McCue v. Norwich Pharmacal Co.*, 453 F.2d 1033 (1st Cir. 1972) (Norwich's Furadantin drug prescribed); *Wolfe v. Ford Motor Co.*, 376 N.E.2d 143 (Mass. App. Ct. 1978) (Ford's truck in accident); *Belanger v. Safeskin Corp.*, 20 Mass. L. Rep. 51, 2005 Mass. Super. LEXIS 456, *6-7 (Mass. Super. Ct. September 6, 2005) (examining Safeskin's warnings after finding testimony sufficient to identify Safeskin as manufacturer of latex gloves, and dismissing other named manufacturer for insufficient identification); *see also Motus v. Pfizer, Inc.*, 358 F.3d 659, 660 (9th Cir. 2004) (Pfizer's Zoloft pill prescribed); *Sterling Drug, Inc. v. Yarrow*, 408 F.2d 978, 982 (8th Cir. 1969) (Sterling's detail man introduced prescribing doctor to accused drug); *Sterling Drug, Inc. v. Cornish*, 370 F.2d 82, 83 (8th Cir. 1966) (Sterling's trade name drug identified); *Seley v. G.D. Searle & Co.*, 423 N.E. 2d 831 (Ohio 1981) (G.D. Searle' s Ovulen oral contraceptive prescribed); *Medics Pharmaceutical Corp. v. Newman*, 378 S.E.2d 487, 488 (Ga. Ct. App. 1989) (prescribing physician testified he specifically prescribed Diastyl, a brand of DES marketed by Medics Pharmaceutical Corporation).  Plaintiff cannot gain the benefit of the heeding presumption based on these cases because she has not shown which manufacturer's warnings Dr. Safon read and relied upon, if any.

Plaintiff's only citation to cases in which the heeding presumption applied to an unspecified manufacturer (among several named defendants) are inapplicable because both cases were decided under Washington State law, which, unlike Massachusetts, allows market share liability, which must ignore reliance as an element of the claim. *See Hibbs v. Abbott Lab.*, 814 P.2d 1186 (Wash. Ct. App. 1991) (reversing summary judgment for defendant for lack of causation where prescribing doctor relied on his own knowledge and not the drug company's literature in prescribing DES); *Dalke v. Upjohn Co.*, 555 F.2d 245 (9th Cir. 1977) (reversing summary judgment based on factual dispute regarding adequacy of warning where prescribing doctor testified that he read the PDR and consulted various package inserts, and a different warning could have altered his decision).

Washington's market share liability allows a plaintiff to hold liable any and every drug company that sold the drug in the relevant time period regardless of whether the specific defendant's drug caused the plaintiff's harm. *See Hibbs*, 814 P.2d at 1187 (citing *Martin v. Abbot Lab.*, 689 P.2d 368 (1984)). It follows that Washington, in a market share case, could not require proof that a manufacturer's warnings were read and relied upon, as there is no requirement to prove that the defendant's product was involved in the case at all. Instead, the market share standard for liability relaxes traditional causation principles that require a plaintiff to prove that the defendant was the cause in fact and the proximate cause of her injuries. Unlike Washington, Massachusetts has not relaxed the causation standard in this fashion and has not adopted the market share theory of liability. *See Payton v. Abbott Labs.*, 437 N.E.2d 171, 188-90 (1982). Thus, Plaintiff's burden in Massachusetts cannot be met without proof that Dr. Safon read and relied upon *Lilly's* warnings.

Finally, Plaintiff cites to four courts outside this jurisdiction that have "rejected" Lilly's reliance argument. The courts in three of these cases did not engage in any substantive discussion of the issues raised in this motion. The *Casale* case settled before the judge even issued a decision. In *Hansch* and *Miskulin*, two California courts denied Lilly's motion for summary judgment based on several issues without any opinion or explanation. The *Hansch* court denied summary judgment in part based on disputed facts related to the statute of limitations and also on causation. In *Miskulin*, the Superior Court of California issued a two sentence decision denying the motion related to reliance and product exposure. Furthermore, *Hansch* is inapplicable here because it involved California market share liability. As discussed above, market share liability by definition allows a plaintiff to proceed without meeting the traditional causation burden to identify a specific tortfeasor. No such exception exists in Massachusetts.

In the only published decision cited by Plaintiff to reject Lilly's reliance argument, the United States District Court for the District of Kansas denied Lilly's motion for summary judgment because it found Lilly's 1964/1965 warnings clearly implicated. The court relied upon the testimony of the prescribing physician's nurse that there was a copy of the PDR in each examining room (with Lilly's warning), and the pharmacy *owned by the doctor and attached to his medical office* likely stocked only Lilly's DES. Plaintiff here has not introduced such evidence to link Dr. Safon's prescription to Lilly's warnings.

### III. CONCLUSION

For the foregoing reasons, Lilly respectfully requests this Court grant summary judgment in Lilly's favor. Lilly is entitled to judgment on all claims based upon allegedly inadequate warning, and claims of misrepresentation or breach of warranty premised on such warnings, for the reasons set out in this Memorandum.

## REQUEST FOR HEARING

Pursuant to LCvR 7(f), Lilly requests a hearing on its Motion for Summary Judgment.

          Respectfully submitted,

          ELI LILLY AND COMPANY

          /s/ James. J. Dillon
          James J. Dillon, D.C. Bar # 485593
          Foley Hoag LLP
          155 Seaport Boulevard
          World Trade Center West
          Boston, MA 02210-2600
          (617) 832-1000

          and

          Lawrence H. Martin, D.C. Bar # 476639
          Foley Hoag LLP
          1875 K Street, NW, Suite 800
          Washington, D.C. 20006-1238
          (202) 223-1200

Dated: August 25, 2006

Certificate of Service

      I hereby certify that on August 25, 2006, a copy of the foregoing Reply Brief in Support of Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

      /s/ Lauren Dwyer
Lauren E. Dwyer, Esq.
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000