**Exhibit 2**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAULA J. GALVIN,

    Plaintiff,

v.

ELI LILLY AND CO.,

    Defendant.

Civil Action No. 03-1797 (CKK)

**MEMORANDUM OPINION**
(June 10, 2005)

Plaintiff Paula Galvin has filed suit against Defendant Eli Lilly and Company ("Lilly"), alleging that her mother ingested diethylstilbestrol ("DES") manufactured by Lilly while pregnant with Plaintiff, resulting in injuries to Plaintiff, including infertility. Defendant has now filed its Motion for Summary Judgment, arguing that Plaintiff cannot present evidence sufficient to show that she was exposed to Lilly's product, and that Plaintiff's suit is barred by the Kansas Statute of Repose, Kan. Stat. Ann. § 60-513(b).[1]

After careful consideration of Defendant's motion, the parties' briefs and exhibits, and the relevant law, the Court determines that Defendant's Motion for Summary Judgment shall be granted.

---

[1] Defendant has also filed a motion requesting that this Court certify the question of whether the Kansas Statute of Repose or the Kansas Products Liability Act, Kan. Stat. Ann. § 60-3303 *et seq.*, in fact governs cases involving prescription drugs. Because the Court is able to resolve this suit on the insufficiency of Plaintiff's evidence, the Court finds that this request is moot.

I.  **BACKGROUND**[2]

Plaintiff brought this suit against Lilly, a pharmaceutical company that has engaged in the manufacture, distribution and sale of DES. From November 1964 through August 1965, Elizabeth Keller was pregnant with Plaintiff. Def.'s Stmt. of Mat. Facts ("Def.'s Stmt.") ¶ 1. Mrs. Keller lived in Kansas at the time of her pregnancy. *Id.* Although Plaintiff was diagnosed as infertile in Oklahoma, Def.'s Mot. Ex. 1 (Galvin Interrog.) ¶ 13(a)-(b), Plaintiff and Mrs. Keller both currently live in Kansas, Def.'s Stmt. ¶ 1. During Mrs. Keller's pregnancy, her doctor prescribed DES to prevent miscarriage, which Mrs. Keller bought and ingested. *Id.* ¶¶ 1-2; Compl. ¶ 3; Pl.'s Resp. to Def.'s Stmt. ¶ 16, Ex. 1 (Labor and Delivery Records), 1A (Letter from doctor to Mrs. Keller, indicating that she had been exposed to DES while pregnant with Plaintiff and indicating possible effects of DES exposure).

Mrs. Keller testified at her deposition that the pill she was prescribed was a "round," "little white pill with a cross." Def.'s Reply Ex. 13 (Keller Dep.) at 57:4, 7:9-10; *see also* Def.'s Stmt. ¶ 2.[3] When asked whether she "remember[ed] any other marking on the pill," Mrs. Keller answered "no," and further indicated that she did not remember whether the pill had a coating, any details about the packaging or labeling, or the dosage she was prescribed. Def.'s Reply Ex. 13 (Keller Dep.) at 57:5-23; *see also* Def.'s Stmt. ¶ 2. Plaintiff has attempted to introduce an additional statement by Mrs. Keller addressing her prescription, that was signed on October 28, 2004, after Defendant's Motion for Summary Judgment was filed on October 1, 2004. *See* Pl.'s

---

[2]The following facts are undisputed, unless otherwise noted.

[3]Defendant relies on this testimony in its Statement of Material Facts, *see* Def.'s Stmt. ¶ 2, but appears to have mistakenly omitted these pages of testimony from its attached Exhibit 2 (Keller Dep.). Although Defendant included these pages with its Reply. Def.'s Reply Ex. 13 (Keller Dep.).

2

Opp. to Def.'s Mot. ("Pl.'s Opp.") Ex. 4. Defendant objects to this supplemental evidence. *See* Def.'s Reply at 7-10. The Court will not consider Mrs. Keller's statement, because it was not included in the discovery made available to Defendant. Plaintiff is not entitled to recharacterize and modify to her advantage statements made in the course of depositions after Defendant has relied on those depositions in drafting a dispositive motion. Plaintiff also attempts to introduce a statement by Bill Waltrip, a pharmacist at the Crowell Ash Drug Store "[d]uring the 1960's," in which Waltrip recalls that the pharmacy dispensed Lilly DES instead of other brands. Def.'s Mot. Ex. 3 (Waltrip Stmt.). However, Waltrip did not graduate from pharmacy school until 1967, *see id.*, and consequently would not have been a pharmacist at the time Mrs. Keller filled her prescription. As with Mrs. Keller, Plaintiff attempts to bolster Waltrip's statement in response to Defendant's Motion for Summary Judgment by supplying a supplemental statement from Waltrip along with Plaintiff's Opposition. *See* Pl.'s Opp. Ex. 6 (Supp. Waltrip Stmt.). For the same reasons applied to the belated attempts to supplement Mrs. Keller's testimony, the Court finds that Plaintiff's post hoc recalibration of its evidence is inappropriate and shall not be considered.

Before the instant suit was filed, Mrs. Keller did not know the manufacturer of the drug she was prescribed to prevent miscarriage. Def.'s Stmt. ¶ 3. It is unclear precisely which pharmacy filled Mrs. Keller's prescription, but Mrs. Keller indicated that it was either the "Crowell-Ash Drug Store" on 4th and Broadway in Pittsburg, Kansas, or the "Ash Drug Store" at 605 North Broadway, also in Pittsburg. *Id.* ¶ 4. The owner of these two pharmacies during the relevant time period worked as a pharmacist in the pharmacy on 4th and Broadway, and only recalls dispensing red DES. *Id.* ¶ 7. He stated that "I simply do not remember what brand or

3

brands of diethylstilbestrol I carried at Crowell Drug Company in the 1960s." *Id.* Ex. 5 (Crowell Aff.) ¶ 5. Plaintiff has also attempted to introduce evidence from a pharmacist at the "Crowell Ash Drug Store" at 605 North Broadway discussing his recollection of the brand of DES dispensed at that pharmacy. *See* Pl.'s Resp. to Def.'s Stmt. ¶ 18; Pl.'s Opp. Ex. 6 (Waltrip Aff.); Def.'s Mot. at 10. However, that pharmacist was not licensed and did not work in that pharmacy until 1967, several years after Mrs. Keller was pregnant with Plaintiff. *See* Pl.'s Opp. Ex. 6 (Waltrip Aff.) ¶ 2. Consequently, the Court does not rely on his statement in making its determination.

The parties dispute whether Plaintiff can sufficiently demonstrate that Mrs. Keller ingested Lilly DES, rather than DES produced by another manufacturer. The Court finds that the following facts are material to this inquiry, and are undisputed. In 1964 and 1965, a number of companies manufactured DES in various dosages. *See* Def.'s Stmt. ¶ 8; Def.'s Mot. Ex. 6 ("Blue Book" listing 32 manufacturers in 1964-65); *id.* Ex. 7 ("Red Book" listing 104 manufacturers in 1964 and 97 manufacturers in 1965). However, Plaintiff states, and Defendant does not dispute, that only the 5 milligram and 25 milligram pills were used to prevent miscarriage. Pl.'s Resp. to Def.'s Stmt. ¶ 8. Furthermore, the 1965 Physicians' Desk Reference ("PDR") lists only Lilly as a manufacturer of DES. *Id.*; *see also* Pl.'s Opp. Ex. 3 (1965 PDR).

Defendant states that two other manufacturers produced DES fitting Mrs. Keller's description. Def.'s Stmt. ¶ 9. Specifically, Defendant indicates that "Bristol-Myers Squibb Company made and sold diethylstilbestrol as a white, cross-scored pill under the brand name Stilbetin," and that "Marsh-Parker sold a diethylstilbestrol pill of the same description in a 25 mg. dose." *Id.* Plaintiff states that "Lilly's 25 mg. DES pill was small, round, white, cross-

4

scored, with no other markings." Pl.'s Resp. to Def.'s Stmt. ¶ 17, Ex. 5 (Photograph of Lilly DES). Lilly DES was sold in the Pittsburg, Kansas area during the time of Mrs. Keller's pregnancy with Plaintiff. *Id.* ¶ 18, Ex. 7 (Lilly Resp. to Interrog.). Plaintiff states that the Bristol-Myers Squibb pill was white, round, and cross-scored, but that it also bore the imprint "Squibb" on the pill. Pl.'s Resp. to Def.'s Stmt. ¶ 2, Ex. 12 (Photograph of Squibb DES). Plaintiff also states that Squibb's white, cross scored pill was a 100 mg. strength pill, but that Mrs. Keller's prescription was for a 25 mg. dosage. *Id.* Ex. 12 (Photograph of Squibb DES), Ex. 1 (Labor and Delivery Records). Defendant does not dispute Plaintiff's statement that the Squibb pill was marked with the company name. However, Defendant reiterates that when asked if she "remember[ed] any other markings on the pill," Mrs. Keller stated that she did not remember. Def.'s Reply at 8-9, Ex. 13 (Keller Dep.) at 57:5-7; *see also* Def.'s Stmt. ¶ 2.

With respect to the Marsh-Parker DES pill, Defendant supplies sworn testimony from another lawsuit indicating that the Marsh-Parker pill matches the description given by Mrs. Keller. Def.'s Mot. Ex. 9 (Anderson Dep.) at 15:7-16, 19:10-18 (indicating that the Marsh-Parker generic 25 mg. DES pill was a white tablet scored in quarters). Plaintiff does not dispute that the Marsh-Parker DES pill in the dosage prescribed to Mrs. Keller fit Mrs. Keller's description. Rather, Plaintiff states that the Marsh-Parker pill was not on the market in 1965.[4] Pl.'s Resp. to Def.'s Stmt. ¶ 22. Plaintiff attempts to substantiate the suggestion that Marsh-

---

[4]In this portion of Plaintiff's briefing, Plaintiff's counsel apparently confuses the time frame in which Plaintiff was exposed to DES, suggesting that Plaintiff was exposed in 1969 rather than 1964-65. *See* Pl.'s Resp. to Def.'s Stmt. ¶ 22 ("DES markets have been analyzed and the Marsh Company was no longer in the market as of 1965, four years prior to the Plaintiff's exposure."). Counsel makes similar errors of timing elsewhere in the brief. However, the Court recognizes that there is no dispute of the fact that Plaintiff was exposed to DES in 1964-65, and these errors do not substantively affect the Court's analysis.

5

Parker's pill was not on the market by 1965 by providing two documents indicating the market shares of various DES producers for years including 1965 in New York and California. *See* Pl.'s Opp. Ex. 13 (NY and CA Market Share documentation).

The Court finds, however, that the evidence does not support this statement. Plaintiff rests her assertion that Marsh-Parker was out of the DES market by 1965 on the fact that neither of these two market share "matrices" lists Marsh-Parker as a DES producer in New York or California. Pl.'s Resp. to Def.'s Stmt. ¶ 22. As a general matter these two documents do not address Kansas, where Mrs. Keller lived when pregnant with Plaintiff. More importantly, however, Defendant has provided two undisputed exhibits that clearly indicate that Marsh-Parker was indeed in the DES market in 1964-65. *See* Def.'s Mot. Ex. 7 (1964 and 1865 "Red Book"). These two excerpts from the 1964 and 1965 Drug Topics Red Book list the numerous manufacturers of DES, and include Marsh-Parker as a manufacturer of DES in both 5 milligram and 25 milligram dosages during the relevant time frame. *Id.*

## II.  LEGAL STANDARD

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the summary judgment standard, Defendant, as the moving party, bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiff, in

response to Defendant's motion, must "go beyond the pleadings and by [her] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted). "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

7

## III. DISCUSSION

Applying Kansas state law to Plaintiff's claims, the Court finds that Plaintiff cannot demonstrate that her injuries were caused by DES manufactured by Lilly. As a result, the Court finds that Defendant is entitled to summary judgment.

In considering which jurisdiction's law applies to Plaintiff's claims, "the District of Columbia follows the "substantial interest" position of the Restatement (Second) of Conflict of Laws (1971) § 145." *Jaffe v. Pallotta TeamWorks*, 374 F.3d 1223, 1227 (D.C. Cir. 2004). The four relevant factors are: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business if the parties; and the place where the relationship is centered." *District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995). In determining the jurisdiction whose policy would be most advanced, the Court considers "which jurisdiction has the most significant relationship to the dispute." *Id.* Indeed, "[w]hen the policy of one [jurisdiction] would be advanced by the application of its law, and [the policy of the other jurisdiction] would not be advanced by application of its law, a false conflict appears and the law of the interested [jurisdiction] prevails." *Id.* (quoting *Kaiser-Georgetown Comty. v. Stutsman*, 491 A.2d 502, 509 (D.C. 1985). "When both jurisdictions have an interest in applying their own laws to the facts of the case, the forum law will be applied unless the foreign [jurisdiction] has a greater interest in the controversy." *Id.* (citation omitted); *see also Jaffe*, 374 F.3d at 1227 (finding that, where an individual's death and preceding medical care occurred in Virginia, the United States District Court for the District of Columbia should apply Virginia tort law).

It is clear from the undisputed facts of this case that Kansas has the far greater interest in

8

the instant controversy. Mrs. Keller was prescribed DES by her Kansas doctor, she purchased and consumed the prescribed DES in Kansas, and she lived in Kansas during the entire time she took DES while pregnant with Plaintiff. Although Plaintiff's infertility was diagnosed in Oklahoma, Plaintiff was born in Kansas, and presently lives in Kansas. Indeed, the only connection between this case and the District of Columbia is the fact that Defendant does business in the District of Columbia. Compl. ¶ 2. As a result, it is clear that Kansas has the more substantial interest in the application of its laws to the facts of Plaintiff's case.[5]

Accepting that Kansas law governs, the Court looks to that law to determine what standard of proof Plaintiff must meet if she is to defeat Defendant's Motion for Summary Judgment. The United States District Court for the District of Kansas has found that "[c]ausation is an essential element of a products liability case under Kansas law. Traditionally, that means a plaintiff must prove that a particular defendant's product caused his injuries." *Lyons v. Garlock*, 12 F. Supp.2d 1226, 1228 (D. Kan. 1998) (citations omitted). After consideration of two Tenth Circuit decision, the district court in *Lyons* found that neither altered the standard of causation required of a plaintiff, which that court found was defined as an "obligation to show that [plaintiff was] exposed to the products of a particular defendant in order to recover from that

---

[5]Plaintiff makes only the most cursory, and ultimately inapplicable, argument that Oklahoma law should apply. In discussing the Kansas Statute of Repose, which the Court does not reach because this case can be resolved on the facts, Plaintiff merely states that Plaintiff was a resident of Oklahoma when she was diagnosed as infertile, and that "Under the District of Columbia Conflicts Law, Oklahoma has the most contacts and their Tort Law has no Statute of Repose." Pl.'s Opp. at 5. Plaintiff's counsel makes the same argument again later, mistakenly stating that Plaintiff does not presently live in Kansas, *see* Def.'s Mot. Ex. 1 (Galvin Interrog.) ¶ 2(a). Plaintiff does not cite to any relevant caselaw addressing the District of Columbia choice of law standards, or make any substantive argument in support of the contention that Oklahoma law might apply to this case.

9

defendant." *Id.* at 1128-29 (citation omitted); *see also Burton v. R.J. Reynolds Tobacco Co*, 181 F. Supp. 2d 1256, 1270 (D. Kan 2002) (explaining that in order to prevail in a products liability suit, "a plaintiff must prove that the product is the actual and proximate cause of the plaintiff's injury. According to Kansas case law, [a] product is the actual cause of the plaintiff's injury if the act or product is a substantial factor in bringing about the harm . . . ." (citations omitted)).

Applying these principles to the undisputed facts of this case, it is clear that Plaintiff cannot demonstrate that Lilly's DES product caused Plaintiff's injuries. Although Mrs. Keller's deposition testimony that she did not recall the markings on the pill at issue certainly leaves open the possibility that the pill marked with the Squibb name could have been dispensed, the fact that the Squibb pill came in 100 milligram size suggests that it was not the pill dispensed to Mrs. Keller.

However, Plaintiff has made no such persuasive showing with respect to the Marsh-Parker pill. Even if the Court considers Plaintiff's post hoc statement by Mrs. Keller that the pill she took had *no* additional markings other than a cross-score, Plaintiff has not disputed that the Marsh-Parker pill fits the description of the pill taken by Mrs. Keller during her pregnancy with Plaintiff. The Court also finds, crucially, that although Plaintiff claims that the Marsh-Parker company was no longer in the DES market at the time of Plaintiff's exposure, Defendant's Drug Topics Red Book exhibits clearly indicate that Marsh-Parker was making the dosage prescribed to Mrs. Keller in 1964-65. As a result, the evidence indicates no dispute that there was a 25 milligram pill on the market during the relevant years that matched the description given by Plaintiff's mother and yet was made by a company other than Lilly. In the absence of a factual

10

dispute on this matter, the Court finds that Defendant is entitled to summary judgment.[6]

## IV. CONCLUSION

After careful consideration of the parties' arguments, the evidence, and the relevant law, the Court has determined that Plaintiff cannot demonstrate that she was injured by Lilly DES rather than DES produced by a different company. Accordingly, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claims.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[6]The Court notes that the parties briefed the question of whether the Kansas Statute of Repose, Kan. Stat. Ann. § 60-513, barred Plaintiff's claims. Leaving aside the issue of whether this Court is in the best position to decide complex matters of statutory interpretation with respect to Kansas state law, the Court finds that this case can be resolved on the facts. In light of the fact that Plaintiff cannot meet her burden of demonstrating that Mrs. Keller took Lilly DES, as opposed to another company's product, the Court need not reach these additional legal questions.

11