**Exhibit 3**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAULA J. GALVIN,<br><br>Plaintiff,<br><br>v.<br><br>ELI LILLY AND CO.,<br><br>Defendant. | Civil Action No. 03-1797 (CKK) |

**MEMORANDUM OPINION**
(September 12, 2005)

On June 10, 2005, the Court granted Defendant Eli Lilly's Motion for Summary Judgment in this case. Subsequently, Plaintiff Paula Galvin filed a Motion to Alter or Amend Judgment, in accordance with Federal Rule of Civil Procedure 59(e). After careful consideration of Plaintiff's motion, the parties' briefs and supporting documentation, as well as the relevant law, the Court finds that its original ruling shall remain unchanged. Accordingly, the Court shall deny Plaintiff's motion.

**I.    BACKGROUND**

Plaintiff alleges that she was exposed to diethylstilbestrol while in utero in 1964 and 1965, which resulted in injuries to Plaintiff, including infertility. Defendant originally moved for summary judgment in this case, arguing that Plaintiff could not demonstrate that Defendant's DES product caused her injuries. *See generally Galvin v. Eli Lilly*, No. 03-1797 (D.D.C. June 10, 2005). Plaintiff has filed the instant Motion to Alter or Amend Judgment, disputing several of the Court's findings with respect to Plaintiff's evidence. Specifically, Plaintiff asserts that the Court should have credited Plaintiff's affidavits of Plaintiff's mother, Elizabeth Keller, and the

pharmacist, Bill Waltrip. *See* Pl.'s Mot. at 1-3. Plaintiff further argues that the Court was mistaken in its finding that a generic Marsh-Parker version of DES matching Mrs. Keller's description of a white cross-scored pill could have been dispensed to Plaintiff's mother. *See id.* at 3-8.

## II.  LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, a party may petition a district court to alter or amend a judgment no later than ten days after the entry thereof. Fed. R. Civ. P. 59(e). Motions brought pursuant to Rule 59(e) "are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Office of Max Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 1991). Such motions will be denied unless the district court finds "that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.2d 1205, 1208 (D.C. Cir. 1996) (internal quotations omitted); *see also Mekuria v. Washington Metropolitan Area Transit Authority*, 45 F. Supp. 2d 19, 31 n.10 (D.D.C. 1999). A motion to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e) "is not simply an opportunity to reargue facts and theories upon which a court has already ruled." *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995) (three-judge panel) (per curiam); *see also Harvey v. District of Columbia*, 949 F. Supp. 878, 879 (D.D.C. 1996) (holding that a motion to reconsider pursuant to Rule 59(e) "is not routinely granted").

Even more so, a motion to reconsider is not "a means to bring the Court theories or arguments that could have been advanced earlier." *W.C. & A.N. Miller Cos. v. United States*, 173 F.R.D. 1, 3 (D.D.C. 1997); *see also Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir.

2

1993) ("[T]his Court has recognized that a losing party may not use a Rule 59 motion to raise new issues that could have been raised previously."); *Savers Fed. Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1508–09 (5th Cir. 1989) (finding no abuse of discretion in denying a Rule 59(e) motion that sought to raise new theories where facts were known to the movant in advance of summary judgment); *Natural Resources Def. Council, Inc. v. United States Envt'l Protection Agency*, 705 F. Supp. 698, 701 (D.D.C. 1989) ("Rule 59(e) motions are not vehicles for bringing before the court theories or arguments that were not advanced earlier."), *vacated on other grounds*, 707 F. Supp. 3 (D.D.C. 1989); *Harvey*, 949 F. Supp. at 879 (same). Instead, a district court properly exercises its discretion under Rule 59(e) to alter or amend its judgment where "the moving party presents new facts or a clear error of law which compel a change in the court's ruling." *New York*, 880 F. Supp. at 39; *see also Assassination Archives and Research Ctr. v. United States Dep't of Justice*, 828 F. Supp. 100, 102 (D.D.C. 1993). In considering the propriety of a Rule 59(e) motion, the Court possesses sufficient discretion to prevent injustice or unfairness.

### III. DISCUSSION

The Court will address each of Plaintiff's arguments in turn. Plaintiff first argues that the Court improperly failed to consider Mrs. Keller's affidavit offered to supplement her deposition testimony. The Court declined to consider this affidavit, in which Mrs. Keller altered her earlier deposition testimony, because her affidavit and the statements it contained were not provided to Defendant during discovery, but were instead supplied in response to Defendant's arguments

made in Defendant's motion for summary judgment.[1] *Galvin*, No. 03-1797 at 2-3. The Court viewed Mrs. Keller's additional affidavit as an attempt to "recharacterize and modify to her advantage statements made in the course of depositions after Defendant has relied on those depositions in drafting a dispositive motion." *Id.* at 3. Plaintiff argues that Mrs. Keller's supplemental affidavit was not contradictory, and should have been admitted. The Court finds that its decision to exclude this evidence was proper; the supplemental affidavit fundamentally changes the nature of Mrs. Keller's earlier deposition testimony. More importantly, however, Plaintiff overlooks the fact that the Court found that the ultimate result would be the same whether it considered Mrs. Keller's additional statements or not. *See Galvin*, 03-1797 at 10 ("Even if the Court considers Plaintiff's post hoc statement by Mrs. Keller that the pill she took had *no* additional markings other than a cross-score, Plaintiff has not disputed that the Marsh-Parker pill fits the description of the pill taken by Mrs. Keller during her pregnancy with Plaintiff.").

Second, Plaintiff argues that the Court should not have excluded the supplemental affidavit offered by the pharmacist Bill Waltrip.[2] Plaintiff suggests that his supplemental statements did not contradict his earlier affidavit, and that the supplemental statements were

---

[1] In her original deposition testimony, Mrs. Keller was asked whether she "remember[ed] any other markings on the pill," other than a cross, and she replied "[n]o." *Galvin*, No. 03-1797 at 2. In her supplemental affidavit she stated instead that she remembered that the pill was "cross-scored without any writing on either side of the pill." Pl.'s Opp. to Def.'s Mot. for Summ. J. Ex. 4 (Supp. Keller Aff.) ¶ 5.

[2] In his original affidavit, Waltrip did not state that he knew of his pharmacy's practices before he became a licensed pharmacist in 1967 and began working there. *See* Def.'s Mot. for Summ. J. Ex. 3 (Waltrip Aff.). In his supplemental affidavit offered by Plaintiff, he states that he was familiar with the pharmacy's stocking practices in the years before he was licensed and began working there. *See* Pl.'s Opp. to Def.'s Mot. for Summ. J. Ex. 6 (Supp. Waltrip Aff.)

4

offered in response to issues raised "for the first time" by Defendant in the motion for summary judgment. Pl.'s Mot. at 2. Plaintiff argues that Waltrip's statement is a reliable indicator of the pharmacy's prior practices because "[t]his is not a movie theater where the bill of fare changes weekly." *Id.* The Court originally rejected the supplemental affidavit as a "post hoc recalibration" of Plaintiff's evidence, noting Plaintiff had failed to present Waltrip's statements to Defendant during discovery. *Galvin*, 03-1797 at 2-3. Plaintiff's movie theater comparison notwithstanding, the Court finds that its earlier ruling was correct. Plaintiff cannot receive Defendant's motion for summary judgment and then go in search of new evidence with which to attack Defendant's arguments. This contradicts the very notion of a discovery process in which the parties marshal their evidence and disclose it to the other side before making arguments based on the available evidence. Plaintiff has attempted to deny Defendant the opportunity to inquire during discovery concerning Waltrip's familiarity with his employer's practices in the years before he was even licensed as a pharmacist.

Next Plaintiff suggests that the Court did not properly consider evidence that the pharmacy from which Mrs. Keller purchased her prescription received its drugs from a wholesaler that "was required to supply Lilly's DES exclusively in all unspecified orders." Pl.'s Mot. at 3. However, nowhere in its briefing on the motion for summary judgment does Plaintiff suggest that the pharmacy *only* ever placed "unspecified orders," and as a result, the Court does not find that this evidence counsels a different result. Furthermore, Plaintiff's proffered statement that the wholesaler would have provided Lilly DES in the years of Plaintiff's exposure is contained in Waltrip's supplemental affidavit as to the pharmacy's earlier practices, which, as explained *supra*, is not properly before the Court.

5

The bulk of Plaintiff's Motion to Alter or Amend Judgment objects to the Court's reliance on various exhibits presented by Defendant as part of its motion for summary judgment indicating that there was a DES pill made by Marsh-Parker on the market in the correct dosage, during the time period at issue, that matched the description given by Plaintiff's mother. *See* Pl.'s Mot. at 3-8. Plaintiff objects primarily to the Court's reliance on the "Red Book," a pharmaceutical reference text, and deposition testimony by Dr. Robert Anderson, originally offered in another case. *Id.* The Court finds that Plaintiff's objections to these exhibits are untimely, and have therefore been waived. Plaintiff did not move to strike these exhibits during the summary judgment briefing. As the Court of Appeals for the District of Columbia Circuit has stated, "Rule 56(e) defects are waived where, as here, no motion to strike is directed to them below." *Humane Soc'y of the United States v. Babbitt*, 46 F.3d 93, 96 n.5 (D.C. Cir. 1995) (quoting *DeCintio v, Westchester County Med. Ctr.*, 821 F.2d 111, 114 (2d Cir. 1987)). Furthermore, the Court reminds Plaintiff that a motion to alter or amend a judgment "is not simply an opportunity to reargue facts and theories upon which a court has already ruled," *see New York*, 880 F. Supp. at 38, nor is it "a means to bring the Court theories or arguments that could have been advanced earlier." *W.C. & A.N. Miller Cos.*, 173 F.R.D. at 3; *see also Kattan*, 995 F.2d at 276 ("[T]his Court has recognized that a losing party may not use a Rule 59 motion to raise new issues that could have been raised previously."); *Savers Fed. Sav. & Loan Ass'n*, 888 F.2d at 1508–09 (finding no abuse of discretion in denying a Rule 59(e) motion that sought to raise new theories where facts were known to the movant in advance of summary judgment).

However, even considering Plaintiff's objections to the Red Book and the Anderson testimony, the Court shall not alter its earlier ruling. As the Court found in its original

6

Memorandum Opinion, the Red Book demonstrates that Marsh-Parker was a DES manufacturer in 1964 and 1965, and that it manufactured the drug in the relevant dosages.[3] *Galvin*, 03-1797 at 6. Plaintiff raises a bizarre argument that the affidavit authenticating Defendant's Red Book excerpts is deficient because the attorney is too young. *See* Pl.'s Mot. at 4. As Defendant explains, the Henninger affidavit is offered only to authenticate the Red Book excerpts, not provide any sort of substantive analysis. *See* Def.'s Opp. at 4. The Court agrees that the affidavit is sufficient for this purpose, and that the Red Book clearly indicates that Marsh-Parker was a manufacturer of DES during the relevant time frame.[4]

Plaintiff's arguments with respect to the Anderson testimony are similarly unavailing. As Defendant explains, the Anderson testimony from another case was "offered not to show that Marsh Parker's DES was actually stocked in the Crowell Ash Drug Store, but rather to show that Plaintiff cannot eliminate the possibility based on her mother's unexceptional pill description."

---

[3]Plaintiff also raises again the New York DES market share matrix which does not include Marsh-Parker. *See* Pl.'s Mot. at 3. Plaintiff suggests that this matrix indicates that Marsh-Parker did not supply DES in 1965. *Id.* Plaintiff's argument fails for two reasons. First, Plaintiff fails to address the fact that the Red Book clearly indicates that Marsh Parker *did* supply DES in 1965. Second, Plaintiff's matrices do not address 1964, when Mrs. Keller's pregnancy began. It is clear to the Court that the Red Book is a pharmaceutical reference text that was available to and used by pharmacists during the time period at issue, and as such carries more weight than the New York matrix, a document developed years later for the purposes of litigation.

[4]Plaintiff's only other argument with respect to the Red Book, raised belatedly in her Reply in support of her Motion to Alter or Amend Judgment, is that the Red Book does not represent the Kansas market. Pl.'s Reply at 3-4. Even if it were appropriate to challenge Defendant's proffer of the Red Book at this late stage of the proceedings, Plaintiff presents no evidence suggesting that the Marsh-Parker DES was not available in the Kansas market. Plaintiff simply states that the Red Book does not contain this information. *Id.* at 3. Plaintiff's argument, inappropriate at this stage in any event, does not advance Plaintiff's position. Defendant offered evidence of the Marsh-Parker pill to demonstrate that other pills were available matching Plaintiff's mother's description. Plaintiff has not undermined Defendant's argument or the Court's previous holding.

Def.'s Opp. at 4. The Court relied on Anderson's testimony only for this limited purpose, finding that the testimony indicated that the Marsh-Parker 25 mg. DES pill matched Mrs. Keller's description.[5] *Galvin*, 03-1797 at 5. As Defendant points out, the use of Anderson's testimony from a separate legal proceeding was appropriate pursuant to Federal Rule of Civil Procedure 32(a)(3)(B), which permits the use of outside depositions where the deponent is located more than 100 miles from the place of the hearing. *See* Def.'s Opp. at 5 n.3.

The key reason that Plaintiff's Motion to Alter or Amend Judgment must fail, however, is that Plaintiff cannot meet her burden of proof to demonstrate that her injuries were caused by Lilly DES as opposed to DES manufactured by another company. Although Plaintiff discusses at length various legal precedents from a variety of jurisdictions, *see* Pl.'s Mot. at 6-8, the Court explained in its original Memorandum Opinion that Kansas law, applicable in this case, holds that "[c]ausation is an essential element of a products liability case under Kansas law. Traditionally, that means that a plaintiff must prove that a particular defendant's product caused his injuries." Galvin, 03-1797 at 9 (quoting *Lyons v. Garlock*, 12 F. Supp. 2d 1226, 1228 (D. Kan. 1998)). Plaintiff has failed to show the Court that she can demonstrate that her mother ingested Lilly's DES, as opposed to DES manufactured by another company such as Marsh-

---

[5]Plaintiff, in her Reply, submits another new piece of evidence, an additional statement from Anderson, in which he states that he does not recall a white, cross-scored pill made by Marsh-Parker or another generic DES manufacturer. *See* Pl.'s Reply Ex. B (Anderson Stmt.). In his earlier testimony in which he was asked whether the generic 25 mg. pill was scored in quarters he stated "I think so." Def.'s Mot. for Summ. J. Ex. 9 at 15. In Plaintiff's additional Anderson statement he states that "[w]hen I testified, 'I think so,' I meant to say that I was not sure . . . ." Pl.'s Reply Ex. B. These two statements are clearly contradictory, and Plaintiff cannot simply go in search of new, more favorable evidence at this stage of the proceedings. If Plaintiff objected to Defendant's use of Anderson's testimony, or indeed the testimony itself, Plaintiff should have raised those objections when Anderson's testimony was originally presented.

8

Parker. As a result, Defendant is entitled to summary judgment.

## IV. CONCLUSION

After careful consideration of Plaintiff's Motion to Alter or Amend Judgment, the Court finds that its original holding was correct. Accordingly, Plaintiff's motion shall be denied. An appropriate Order accompanies this Memorandum Opinion.

                                                    /s/
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge