UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)
MELISSA KELLEY,                 )
                                )
            Plaintiff,          )
                                )   Civil Action No. 1:05-CV-01882 (RCL/AK)
      v.                        )   Next Event:
                                )
ELI LILLY AND COMPANY,          )
                                )
            Defendant.          )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)

**PLAINTIFF'S MOTION FOR RECONSIDERATION OR AMENDMENT OF THE
COURT'S GRANT OF SUMMARY JUDGMENT**

COMES NOW Plaintiff Melissa Kelley, through counsel, and moves this Court under Fed. R. Civ. P. 59(e) and 60(b) to reconsider or amend its grant of Defendant Eli Lilly and Company's ("Defendant" or "Lilly") Motion for Summary Judgment, and as grounds therefore states:

1.      Plaintiff's counsel apologizes to the Court that she did not present in her Opposition to Defendant's Motion for Summary Judgment evidence that was in Plaintiff's counsel's possession which proves that Plaintiff was exposed to diethylstilbestrol ("DES") and that Lilly's brand of DES was actually dispensed to Plaintiff's mother. Plaintiff's counsel believed that Defendant's motion was solely focused on the "heeding presumption" exclusively and not other aspects of causation. Plaintiff prays that the Court not allow her counsel's over-specialization to defeat her rightful claim since Defendant's Motion for Summary Judgment appeared to be restricted to the issue of heeding and never raised the issues of exposure or product identification, as seen in Defendant's Motion for Summary Judgment, pg. 1 (e.g., "Plaintiff has not and can not come forward with any evidence that her mother's treating and prescribing physicians *read or relied* on any warnings or statements made by Lilly") (emphasis added); Def's Mem. pg. 8 (reiterating that summary judgment was appropriate because Plaintiff

"*cannot demonstrate* that Lilly's warnings *were relied upon* by Dr. Safon") (emphasis added); Def's Reply Brief at 3 ("the issue is not what brand of DES . . . the pharmacist allegedly *dispensed* to Mrs. Elman.")(emphasis in original).

2.    The Court correctly interpreted the heeding presumption and found that Plaintiff need not put forth evidence that Dr. Safon actually read and relied upon Lilly's literature and warnings if Plaintiff established that she was prescribed DES by Dr. Safon and was injured by Lilly's DES. See Order, pg. 11.  Plaintiff withheld the evidence that she was injured by DES and that the DES was Defendant's because her counsel stayed too tightly within the boundaries of Defendant's Motion for Summary Judgment, which he believed was solely and exclusively on the issue of the heeding presumption, never questioning the different issues of exposure or product identification.  Historically, Lilly's motions for summary judgment over the decades of DES litigation were specifically aimed at and contested the discrete issues of "exposure," "identification," or "heeding" separately.

3.    Because Plaintiff's counsel narrowly read Lilly's motion as only about the issue of heeding and the evidence of exposure and identification offered herein was never provided, the court concluded that Plaintiff had no such evidence.  It would be a manifest injustice for Plaintiff to be denied her day in court due to a legitimate misreading of Lilly's motion by her counsel.

4.    The Court's finding that there was no evidence linking the Plaintiff's mother to the Drug Fair pharmacy, Mem. Op. at 13-14, is directly opposite to the facts. The deposition testimony of Plaintiff's mother filed herein established that she actually purchased DES at that Drug Fair in Randolph, Massachusetts.  This is the pharmacy where pharmacist Steven Baker worked and observed that the store shelved exclusively Lilly's DES, which would have been

dispensed no matter whether the prescription read "DES," "stilbestrol," "diethylstilbestrol," or any other name, including a competing brand name, of DES. When the Court looked for evidence on the issues of exposure and identification, it found none – not because the evidence did not exist, but because Plaintiff's counsel believed it was not called for by Defendant's motion.

     5.     The Court correctly found that the heeding presumption applied, which meant that Plaintiff could go to the jury even though Dr. Safon, the prescribing physician, was unavailable. But the presumption could only be rebutted by evidence showing that Dr. Safon would have ignored, disputed, refused to follow warnings regarding DES or relied solely on his own judgment in prescribing DES. To rebut the heeding presumption, Defendant must produce information tending to show refusal by the prescriber to heed the manufacturer's literature. Lilly failed to provide this rebuttal evidence. The Court, on its own initiative, rebutted the heeding presumption by finding no proof of exposure to DES or to Lilly's DES. Doing so was a misinterpretation of the heeding presumption. The heeding presumption is rebutted by evidence of specific refusal or failure to heed, such as evidence that the doctor ignores or takes issue with the warning presented. The heeding presumption is not rebutted by a lack of evidence of exposure or product identification. Those are separate issues.

     WHEREFORE, for the grounds presented above, the further grounds presented in the attached Memorandum of Points and Authorities, and the reasons presented at oral argument, Plaintiff respectfully requests that the Court reconsider its grant of summary judgment for Defendant and deny Defendant's motion.

Respectfully submitted,

AARON M. LEVINE AND ASSOCIATES

_____/s/ Aaron M. Levine_____
Aaron M. Levine, #7864
1320 Nineteenth Street, N.W., Suite 500
Washington, D.C. 20036
(202) 833-8040
COUNSEL FOR PLAINTIFF

## LCvR 7.1(m) CERTIFICATION

Plaintiff, through counsel, asked Defendant Eli Lilly and Company's consent to this motion. Lilly's counsel refused consent.

_/s/ Aaron M. Levine_____
AARON M. LEVINE, #7864

## LCvR 7.1(f) REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(f), Plaintiff respectfully requests an oral hearing on this motion so that the Court may fully understand the intents of both Defendant and Plaintiff in drafting their briefs and the evidence supporting the issues in contention.

_/s/ Aaron M. Levine_____
AARON M. LEVINE, #7864

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)
MELISSA KELLEY,                     )
                                    )
                Plaintiff,          )
                                    )    Civil Action No. 1:05-CV-01882 (RCL/AK)
        v.                          )    Next Event:
                                    )
ELI LILLY AND COMPANY,              )
                                    )
                Defendant.          )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
HER MOTION FOR RECONSIDERATION OR AMENDMENT
OF THE COURT'S GRANT OF SUMMARY JUDGMENT**

## I.    INTRODUCTION

In a case involving injury due to a woman's *in utero* exposure to diethylstilbestrol

("DES"), legal causation is made up of three major issues:

1)    the issue of "exposure," which is whether or not the plaintiff can prove her

mother took DES while the plaintiff was in the womb;

2)    the issue of product "identification," which is whether or not the plaintiff can

prove that it was the particular defendant's DES which was the one that caused her injuries; and

3)    the issue of "heeding," which is whether a warning given by defendant would

have changed the doctor's behavior.  If the prescriber were available (which is not the case in

this action), he would be put on the stand to testify that "if only Defendant would have warned, I

would not have prescribed the drug."  The doctor's statement in DES cases is often replaced by

the heeding presumption.

In the present case, Plaintiff and her counsel possessed definitive evidence during

discovery that 1) Plaintiff was exposed to DES, and 2) the brand of DES taken by Plaintiff's

mother was Defendant Eli Lilly and Company's ("Defendant" or "Lilly") DES. This information was disclosed to Defendant and evidently satisfied Defendant that there was a question of material fact on these issues. No motion for summary judgment was filed on exposure or product identification, despite Defendant's willingness to do so in the past. When Defendant filed its motion for summary judgment, Defendant focused solely on one issue only: No.3, whether Plaintiff's mother's physician ever read or relied on a Lilly warning. <u>See</u> Defendant's Motion for Summary Judgment, pg. 1 ("Plaintiff has not and can not come forward with any evidence that her mother's treating and prescribing physicians *read or relied* on any warnings or statements made by Lilly") (emphasis added).

Defendant never mentioned the issues of exposure or identification or Plaintiff's exposure or identification evidence in their motion for summary judgment. Plaintiff's counsel believed that only the issue of "heeding," was the subject of Defendant's motion. Plaintiff's counsel therefore provided only authorities and evidence relevant to the heeding issue and ignored the evidence of exposure or identification, which were available on the reasonable if mistaken premise that the exposure and identification evidence were not raised or contested.

Defendant's Motion for Summary Judgment was restricted to the third issue of heeding. The Court, in its opinion, correctly decided the heeding issue in favor of Plaintiff and that Plaintiff need not provide further evidence of Dr. Safon's particular reading or reliance on Lilly's literature, but went on, even though it had not been asked to so find, that Plaintiff had provided insufficient evidence regarding the issues of exposure and identification.

"A lawyer's errors should not be visited upon a client when adherence to the Rules would work a manifest injustice." <u>Netherland v. Eli Lilly and Co.</u>, Civil Action No. 04-654, Mem. Op. at 6 (D.D.C. June 30, 2006), attached as App. 1 (reversing a grant of summary judgment under

Rule 59(e) where plaintiff's counsel did not fully develop its evidence until after her case had been dismissed). Here, there is enough evidence for Plaintiff to prevail at trial, but due to her counsel's narrow but correct reading of Defendant's motion, he erroneously failed to present it before the court. It would be manifest injustice for Plaintiff to be denied her day in court on the reasonable mistake of counsel.

**II.    TO THE EXTENT THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT CONTESTS EXPOSURE AND IDENTIFICATION, PLAINTIFF PRESENTS EVIDENCE RAISING A QUESTION OF FACT REGARDING THOSE ISSUES**

A.    PLAINTIFF CAN PROVE EXPOSURE

Plaintiff may establish DES exposure on evidence which, although fragmentary, together creates a significant circumstantial likelihood of exposure to Defendant's drug. <u>Shields v. Eli Lilly and Co.</u>, 895 F.2d 1463, 1466 (D.C. Cir. 1990). Plaintiff here has such a collection of evidence:

1)    Plaintiff's treating physician, Dr. Brian Berger, testified at deposition that Plaintiff's reproductive injuries were caused by DES;

2)    Plaintiff's mother testified that Dr. Safon prescribed a drug for her after two miscarriages, a recognized indication for DES, whose name sounds like "diethylstilbestrol";

3)    Plaintiff also has medical records documenting her exposure to DES long before this lawsuit.

1.    <u>Plaintiff's Treating Physician Found Plaintiff's Injuries Were Caused by DES</u>

It is well-settled law that an individual can prove exposure to DES by expert testimony that she has reproductive malformations typical of DES exposure. In <u>Shields</u>, 895 F.2d at 1467, Mrs. Shields's mother's doctors were deceased and all her prenatal records were gone. She had nothing to document her DES exposure. <u>Id</u>. at 1464. However, Mrs. Shields's mother testified

3

that she was prescribed a pill for staining, and Mrs. Shields's doctors said that Mrs. Shields's injuries were most likely a result of DES exposure. With this evidence, summary judgment was overturned.

Here, Dr. Berger testified at deposition that Plaintiff's injuries were caused by DES. See Deposition of Brian Berger ("Berger Depo."), pg. 47, as App. 2. Dr. Berger testified that Plaintiff had anomalies of her fallopian tubes consistent with DES exposure. Id. at pg. 19. Dr. Berger also testified that Plaintiff has banding in her uterus consistent with DES which causes her cervical stenosis. Id. at pg. 27-28.

In Bulthuis v. Rexall Corp., 789 F.2d 1315, 1319 (9th Cir. 1985), the drug company defendants submitted evidence that the prescribing physician generally prescribed progesterone to prevent miscarriages, not DES; testimony from the mother that she told her physician that she took progesterone; and further testimony from the mother that the drug she took when pregnant with plaintiff was the same as the drug she took with a younger son (progesterone). Id. at 1318. In opposition, the plaintiff presented evidence that, although the mother could not remember DES by name, two of plaintiff's treating physicians submitted affidavits stating that plaintiff's vaginal tissue exhibited changes caused by DES exposure and were rarely seen in the unexposed. Id. at 1316. Despite this less-than-perfect evidence, the Ninth Circuit stated:

> Dr. Townshend [one of plaintiff's treating physicians] stated that the changes he observed in plaintiff's tissue were "commonly seen in DES-exposed offspring and rarely seen in non-DES exposed individuals." This was a statement of fact, and it is a reasonable inference from this fact that plaintiff's mother had taken DES during her pregnancy with plaintiff. As the party against whom summary judgment was sought, plaintiff was entitled to have such inferences drawn in her favor.

Id. at 1317.

4

In <u>Woolfolk v. Eli Lilly and Co.</u>, No. 03-3577, 2005 U.S. Dist. LEXIS 41193 (D. Wash. Mar. 15, 2005), App. 11, plaintiff's mother was unable to recall the name of the drug she ingested, nor the color or size of the pills.  There were no records from plaintiff's pregnancy and the prescribing physician was deceased.  Yet the court found that, based upon medical testimony that her particular combination of injuries was typical of DES exposure, the plaintiff had created enough triable issues of fact to survive summary judgment.  <u>Id.</u> at *5-6.

<u>Woolfolk</u> was positively cited in <u>Brooks v. Eli Lilly and Co.</u>, No. 03-cv-01796 (D.D.C. July 28, 2005), as App. 3.  In <u>Brooks</u>, the mother could not recall the name of the drug she was prescribed.  However, plaintiff's injuries, as in the present case, were found to be consistent with DES exposure and the District Court denied summary judgment to Lilly.

Last December, the D.C. Superior Court in <u>Cook v. Eli Lilly and Co.</u>, Civil Action No. 05-0003406-B (D.C. Super. Dec. 23, 2006), App. 4, considering this same issue, held that indicia of DES exposure, even if not conditions exclusive to DES exposure, are enough to create a factual dispute with testimony from the mother.  <u>Id.</u>

Like <u>Shields</u>, <u>Bulthuis</u>, <u>Woolfolk</u>, <u>Brooks</u>, and <u>Cook</u>, Plaintiff has presented testimony from her treating physician that she has symptoms of exposure to DES.  Plaintiff also has testimony that her mother took DES, unlike <u>Woolfolk</u> or <u>Brooks</u>, but the case law shows that evidence of DES-caused injuries, alone, creates a question of fact as to DES exposure.

2.        Plaintiff's Mother Remembers Taking DES

In <u>Cook v. Eli Lilly and Co.</u>, Civil Action No. 05-0003406-B (D.C. Super. Dec. 23, 2006), App. 4, the Court found that "[p]laintiff's mother's description of what she was prescribed (and took)" was both admissible, non-hearsay evidence and created a question of fact to defeat summary judgment.  <u>Id.</u>  In the present case, as in <u>Cook</u>, Plaintiff's mother describes a drug which a jury could find was DES.

5

Here, Plaintiff's mother, Roberta Elman, testified that her doctor prescribed her a drug called "dial-stil-best-rol."  See Deposition of Roberta Elman ("Mother Depo."), pg. 15, App. 5. Ms. Elman was prescribed the "dial-stil-best-rol" for a pregnancy immediately following two miscarriages, both of which Dr. Safon was aware of as he was her treating doctor at the time. See id. pg. 12-14.

DES was the standard drug prescribed for the prevention of accidents of pregnancy.  See Statement of Julius Piver, M.D. ("Piver Statement"), ¶5, 7, as App. 23 to Plaintiff's Opposition to Summary Judgment.  For two decades, Lilly's labeling on its DES advertised it for prevention of miscarriage.  See 1954 The Physician's Desk Reference ("PDR"), page 467, 1959 PDR, page 699; 1966 PDR, page 693,  all App. 6.  In the 1950's, Lilly claimed that DES was "the most effective" drug to prevent accidents of pregnancy.  See De Re Medica, App. 7.  The provision of DES to a woman whose prior two pregnancies had ended in miscarriage would have been part of the standard of care for physicians at the time.  A jury could find that a drug prescribed to a woman for the reasons to which DES was prescribed, and one that Plaintiff's mother remembers as sounding like "diethylstilbestrol," is in fact DES.

3.    Plaintiff's Medical Records Show Exposure to DES Long Before the Present Suit

Plaintiff also has medical records dating back to 1991 which catalog her DES exposure. See Pathological Examination dated August 27, 1991, App. 8.  These statements are not self-serving and provide evidence that Plaintiff was exposed to DES.  When Plaintiff's mother was told that her daughter was DES-exposed, that information was given for cancer prevention.  Like a diagnosis of HIV infection or of diabetes, a doctor's statement of DES exposure added extra responsibilities to Plaintiff.  Plaintiff needed annual examinations because she was at risk for a deadly disease, and, in fact, Plaintiff's records show that she made such regular trips to the

doctor.  No doctor would fabricate such a diagnosis or scare a patient without justification; therefore, the information carries a guarantee of truth.  The information is critical to the provision of accurate future treatment.

Federal Rule of Evidence 803(4) provides that the following is not excluded by the hearsay rule:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnose or treatment.

See Fed. R. Evid. 803(4). In the recent case of Cook v. Eli Lilly and Co., supra, App. 4, the D.C. Superior Court held that "plaintiff's statement to her doctor" was admissible to show exposure to DES.  Id.  Melissa Kelley's statements should, therefore, be admitted.

Courts generally use a two-prong test to govern the admissibility of medical records under Fed. R. Evid. 803(4): "(1) is declarant's motive in making the statements consistent with a desire to promote treatment? and (2) is it reasonable for the physician to rely on the information in his diagnosis or treatment?"  See Industr. Power Contractors v. Industr. Comm'n of Utah, et al., 832 P.2d 477, 479 (Utah Ct. App. 1992) (citing Roberts v. Hollocher, 664 F.2d 200, 204 (8th Cir. 1981)).

In Plaintiff's case, the evidence reflects a reported history of DES exposure for fourteen years prior to litigation.  See Pathological Examination, App. 8.  There is nothing to suggest that Plaintiff had any litigious or alternative motive for telling her physicians she was DES exposed fourteen years before filing suit.  She was seeking medical treatment, and her physicians needed to be apprised of her condition.

The second prong of the 803(4) test has been explained as statements that are "pathologically germane" to the diagnosis.  See NITA 1997 Practical Guide to Fed. Evid.  This

requirement is relatively easy to satisfy, as courts have held that "[t]he fact that a doctor takes down certain information is prima facie evidence that it was pertinent to his diagnosis." See Conte v. AGF Assoc's, et al., No. 3:96-CV-177, 1999 U.S. Dist. LEXIS 21482, at *7 (D. Conn. Sept. 3, 1999). Again, given that Plaintiff's physicians took down her information about DES exposure and included it in their analysis and conclusions, it can be assumed they consider that information to be valuable and "pathologically germane" to their diagnoses.

In a DES case, the Superior Court of the District of Columbia denied Eli Lilly's Motion in Limine to limit the use of plaintiff's medical records. Benardete v. Eli Lilly & Co., et al., No. 04-CA-826, Order Denying Defendant's Motion In Limine to Limit the Use of Plaintiff's Medical Records (D.C. Super. Ct. Oct. 11, 2005) attached as App. 9. In Benardete, as here, the plaintiff's records referred to her DES exposure. The Court stated that:

> [T]he references in the plaintiff's medical records to DES and causation memorialize statements that the plaintiff made to her doctors for the purpose of diagnosis or treatment and conclusions and opinions that the plaintiff's doctors reached in the course of the plaintiff's treatment. All such references, if properly authenticated and otherwise relevant, are admissible ... .

Id.

In Elmer v. Tenneco Resins, Inc., 698 F. Supp. 535 (D. Del. 1988), a court held admissible under FRE 803(4) the statement of a patient, deceased at the time of suit, regarding the date of a procedure the patient underwent twenty-eight years before the date of the records. Id. at 544. Courts have even admitted statements included in medical records the patient specifically denied making. See Regec, et al v. Johnson, et al., No. 15838, 1993 Ohio App. LEXIS 1964, at *4-5 (Ohio Ct. App. Mar. 31, 1993). In Regec, the plaintiff in an automobile accident was cross-examined at trial about a notation in his hospital records indicating how fast he had been driving. Id. He responded that he did not recall ever telling anyone at the hospital

how fast he was driving.  Id. at 5.  The jury ruled in favor of the defendant, and plaintiff appealed based on both the judge allowing the cross-examination and the information contained in the medical records.  Id. at 4-5.  The court denied the appeal on this issue stating:

> Statements in a hospital report related to medical treatment or diagnosis are an exception to the hearsay rule.  Ohio R. Evid. 803(4).  The speed a patient was traveling is relevant to treatment and diagnosis as that fact goes to the extent of the patient's possible injuries.  Once that evidence was admitted, it was up to appellant's counsel to discredit it by showing that there was no record of who made the statement or the circumstances under which it was made.

Id. at 5.

Since Plaintiff's medical records are admissible to show that she was exposed to DES, a jury could reasonably conclude that she was exposed to DES, and summary judgment is improper.

B.    PLAINTIFF CAN PROVE PRODUCT IDENTIFICATION

As with exposure, Plaintiff has sufficient evidence to establish that the DES taken by her mother was Lilly's.  Both of Plaintiff's parents testified at deposition that the DES came in a bottle with Lilly's logo.  Furthermore, Plaintiff's mother testified that she bought the DES at her local Drug Fair pharmacy, which, according to one of the pharmacists there, only stocked Lilly DES.

1.        Both of Plaintiff's Parents Identified Lilly as the Manufacturer of the DES Plaintiff was Exposed To

The presence of a defendant's label on a product is sufficient evidence to identify it as the manufacturer of a product.   Smith v. Ariens Co., 377 N.E.2d 954, 956 (Mass. 1978) (presence of label on snowmobile with defendant's name only evidence of product identification).  Both Plaintiff's mother and Plaintiff's father testified at deposition that the DES Plaintiff's mother took came in a bottle with the Lilly label on it.  See Mother Depo. pg. 21,

App. 5; Deposition of Murray Elman ("Father Depo.") pg. 11, 13, App. 10.  It would be reasonable for a jury to conclude that a drug that came in a bottle with the Lilly label was, in fact, Lilly's drug.

Recollection of the label is admissible and not hearsay.  The recollection of labels are held admissible to prove the identity or contents of the item labeled.  In Cook v. Eli Lilly and Co., the mother of the plaintiff testified that the label on the bottle of drugs she took read "diethylstilbestrol."  Such an identification was held admissible by the D.C. Superior Court.  See Cook, App. 4.  In Commonwealth v. Harvey, 666 A.2d 1108 (Pa. Super. 1995), witnesses were allowed to testify that a beverage can read "Busch" to establish that there was beer of a certain alcohol content inside.  666 A.2d at 1112.  In United States v. Alvarez, 972 F.2d 1000 (9th Cir. 1992), cert den. 501 U.S. 977 (1993), a federal agent was allowed to testify to the inscription on a firearm to show that the firearm was manufactured in Spain and thus traveled in interstate commerce.  972 F.2d at 1004.  The items themselves were never introduced into evidence.

In Drayton v. Jiffee Chemical Corp., 591 F.2d 352 (6th Cir. 1978), the bottle of allegedly defective drain cleaner was never recovered.  591 F.2d at 356.  In fact, there was significant physical evidence that the chemicals that caused the injury were not in defendant's drain cleaner, but that of a competitor.  Id.  Despite the lack of a physical bottle and the countervailing evidence, witnesses were allowed to testify that the label on the bottle was that of the defendant's product.  Id.  Here, there is no counter evidence that some other product was taken; Plaintiff's parents' testimony that the DES came in a Lilly bottle should be credited.

2.       Plaintiff's Mother Bought Her DES at the Drug Fair Pharmacy, Which Only Stocked Lilly's DES

Plaintiff's mother testified that she purchased her DES from her local Drug Fair pharmacy in Randolph, Massachusetts.  See Mother Depo. pg. 21, App. 5.  Pharmacist Steven

Baker worked at the Drug Fair in Randolph at the time Plaintiff's mother bought DES there.  See Affidavit of Steven Baker, R. Ph., attached at Appendix 6 to Plaintiff's Opposition to Summary Judgment.  According to Steven Baker, at the Randolph Drug Fair, "all the DES was Lilly."  See Deposition of Steven Baker, pg. 28, App. 11.  A jury may believe Plaintiff's mother's testimony that she bought her DES at the Randolph Drug Fair, and may infer, from Mr. Baker's testimony, that no matter what the doctor's specific prescription, if Plaintiff's mother bought DES at the Randolph Drug Fair, she bought Lilly's DES.

**III.     THE COURT CORRECTLY APPLIED THE HEEDING PRESUMPTION AND DEFENDANT DID NOT REBUT IT**

The "heeding presumption" in this case is the converse of the manufacturer-friendly rule that, if the manufacturer warns, it is presumed that the reader will read the warning.  When a manufacturer does not warn, it is presumed that the warning is the cause of the resulting injury absent the production of contrary evidence.  Knowlton v. Deseret Med., Inc., 930 F.2d 116, 123 (1st Cir. 1991).

Lilly was the manufacturer of the DES that injured Plaintiff.  Therefore, Lilly's warnings are implicated by this suit, and no others.  Massachusetts law holds that only the warning of the particular drug ingested is relevant to a failure-to-warn lawsuit, even if a brand name drug is prescribed and a generic is distributed.  No matter what is prescribed, Massachusetts recognizes that it is the drug dispensed that counts.  Therefore, the burden regarding the heeding presumption is that first, Plaintiff must show that Lilly's warning was inadequate.  If Plaintiff makes that showing, it is presumed that Lilly's inadequate warning was the cause of Plaintiff's injury unless Lilly produces evidence to the contrary, for example, evidence that Dr. Safon would have ignored the warning.  The rebuttal is the physician's breaking the link of causation between the lack of warning and the prescription.

The Court found for purposes of summary judgment that Lilly's warning was insufficient and that, absent contrary evidence, one would assume that a doctor like Dr. Safon would have heeded a proper warning. Mem. Op. at 11. However, the Court then found that the absence of evidence regarding the other factors of causation, exposure and product identification, rebutted the presumption. Plaintiff's counsel apologizes once again that it did not put Plaintiff's evidence regarding exposure and identification before the Court earlier, but respectfully submits that the heeding presumption cannot be rebutted by a lack of evidence of exposure or identification but only by an express lack of reliance by the prescriber.

A.    MASSACHUSETTS LAW REQUIRES THAT ONLY THE WARNING OF THE DRUG ACTUALLY TAKEN BE CONSIDERED

The Court correctly evaluated that only Lilly's warning need be taken into account. Although Defendant points to the fact that DES was a "generic" drug, and each manufacturer had its own warnings as required by federal law, only the manufacturer whose drugs were consumed will be held responsible.

The appellate decision illustrating this principle is Foster v. American Home Products, 29 F.3d 165 (4th Cir. 1994). In Foster, a doctor prescribed the brand name drug Phenergan; however, the prescription was filled with Phenergan's generic equivalent. 29 F.3d at 167. There was no question that the generic manufacturer had done nothing more than copy all of the brand name manufacturer's warnings. Id. at 169. The Fourth Circuit held that the brand name had no duty to individuals who were not injured by its product. Id. at 171. Courts following Foster have held that, even in the absence of records showing which drug the doctor prescribed, only the manufacturer of the drug actually taken has liability for inadequate warnings. See, e.g., Colacicco v. Apotex, Inc., 432 F. Supp. 2d 514, 519 n. 2, 543 (D. Pa. 2006) (no evidence as to whether brand name or generic Paxil prescribed, but generic manufacturer still liable because

that is the drug patient took). Lilly provided no warning at all as to the dangers of DES and did nothing to reverse its sixteen years of promotion, starting in 1953, of DES as a safe and effective drug.

Defendant has taken advantage of the law as stated by <u>Foster</u> to avoid liability for generic versions of its drugs. In <u>Goldych v. Eli Lilly and Co.</u>, No. 5:04-CV-1477, 2006 U.S. Dist. LEXIS 49616 (N.D.N.Y. July 19, 2006), Lilly successfully argued that, even though it was the developer of all research and warnings regarding Prozac, it was not responsible for failing to warn when injuries are caused by a generic version of the drug. <u>Id</u>. at *16. As stated by the court in <u>Goldych</u>, "a generic manufacturer is responsible for the accuracy of labels placed on its products." <u>Id</u>.

<u>Foster</u> has been adopted by Massachusetts courts. In <u>Kelly v. Wyeth</u>, No. MICV2003-03314-B, 2005 Mass. Super. LEXIS 688 (Mass. Super. May 17, 2005), a doctor prescribed Reglan for the plaintiff, but the plaintiff's pharmacist filled her prescription with generic metoclopramide made by another company. 2005 Mass. Super. LEXIS 688 at *3. Citing <u>Foster</u>, the Massachusetts Superior Court held that even though Wyeth could be considered the source of information regarding Reglan, it is the duty of the particular drug manufacturer to warn regarding its product. <u>Id</u>. at *10-11. It did not matter that the doctor relied on the warnings of a drug other than that prescribed.

The rule in <u>Foster</u> is that the warning that matters is not that of the drug a doctor writes on his or her prescription pad, but that of the drug actually taken. In both <u>Foster</u> and <u>Kelly v. Wyeth</u>, the doctor had the brand name drug in mind, but liability followed the drug actually taken. In <u>Colacicco</u>, there was no evidence as to whether the brand name or the generic's

13

information was the one the doctor read, but liability stayed with the manufacturer of the drug that injured the plaintiff. Lilly's DES hurt Plaintiff, so Lilly's warning is the only relevant one.

B.     THE HEEDING PRESUMPTION ALLOWS A JURY TO ASSUME A DOCTOR WOULD READ A WARNING IN THE ABSENCE OF AFFIRMATIVE EVIDENCE THAT HE WOULD IGNORE SUCH A WARNING

As stated supra, every case involving a rebuttal of the heeding presumption is one where the defendant provided specific evidence that the doctor in question would not follow a warning if one were given. Only a proffer of evidence of a doctor failing or refusing to rely on a warning is sufficient to rebut the heeding presumption. Identification and exposure are separate issues and are not implicated by the heeding presumption.

In DeLuryea v. Winthrop Lab's, 697 F.2d 222 (8th Cir. 1983), a non-DES pharmaceutical case, a plaintiff provided no testimony from her prescribing pharmacists, one of whom was deceased, that they would have acted differently with a warning. The Eighth Circuit found that "failure to produce testimony of the prescribing doctors was not fatal to DeLuryea's case" if adequate warnings are presumed heeded. 697 F.2d at 225. Absence of the evidence of the habits of a particular physician is not sufficient. As the court in Knowlton noted, a doctor's ignorance of a warning would amount to malpractice, and malpractice on the part of a doctor should not be assumed. 930 F.2d at 123.

Under Massachusetts law, a rebuttal of the heeding presumption must show that, had the doctor known of the risks, he would have actively ignored them. See Garside v. Osco Drug, Inc., 976 F.2d 77, 81 (1st Cir. 1992) (doctor's own statement that doctor would have ignored a warning held insufficient as defendant must show that doctor actually knew of the risk and ignored it absent the warning). The rebuttal evidence must show "a warning would not reduce the likelihood of injury." Colter v. Barber-Greene Co., 525 N.E.2d 1305, 1312 (Mass. 1988) (admission that plaintiff knew of danger when he cleaned gears of still-moving industrial

machine).  Even if the evidence suggests that the doctor had been careless in other ways, a plaintiff is still entitled to a presumption that a warning would be heeded.  See McCue v. Norwich Pharmacal Co., 453 F.2d 1033, 1035 (1st Cir. 1972) (New Hampshire law) (heeding presumption applied even though doctor let patient take drug for two years without further follow-up).

In fact, when a defendant has presented evidence of a doctor's actual ignorance of any warning, in Massachusetts the presumption remains when a doctor has not personally read the warning.  In Linnen v. A.H. Robins Co., 11 Mass. L. Rep. 231, 1999 Mass. Super. LEXIS 552 (Mass. Super. Ct. Dec. 7, 1999), the defendant tried to rebut the heeding presumption by showing that the doctor who prescribed the defendant's drug had never read the PDR or other warnings for the drug.  1999 Mass. Super. LEXIS 552 at *11-12.  However, since there was evidence that the doctor did speak to other doctors about the drug, it was a question for the jury as to whether a proper warning would reach him.  Id. at *12.

Massachusetts is generous with the heeding presumption, requiring a rebuttal to be proof to the exclusion of any doubt that a doctor would have ignored a warning if it was given.  Lilly has not provided this proof.  The heeding presumption is not rebutted by claiming a lack of evidence on the issues of exposure and identification; exposure and identification are discrete elements of causation separate from heeding, and while a failure of one of them would be fatal to a DES case, it would be fatal as a separate element, unrelated to the heeding presumption.  The only way to rebut the heeding presumption to provide evidence that the doctor would have ignored the warning or relied exclusively on another source of information.

## IV.    PLAINTIFF WAS NOT REQUIRED TO ANTICIPATE THAT THE COURT WOULD EXPAND LILLY'S MOTION

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (U.S. 1986). "Simply filing a summary judgment motion does not immediately compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every element of the case." Russ v. Int'l Paper Co., 943 F.2d 589, 591 (5th Cir. 1991). Plaintiff's counsel, having read dozens of similar motions by Defendant in the past, thought that Defendant stated the heeding issue as its exclusive basis for summary judgment.

Defendant's past motions in DES cases show that Defendant often specifically attacks exposure and identification when it wishes to put those matters in issue. When Defendant wishes to put exposure in issue, Defendant will state that "plaintiff cannot prove that she was exposed to diethylstilbestrol." See, e.g., Defendant Eli Lilly and Company's Motion for Summary Judgment in Cook v. Eli Lilly and Co., pg. 1, App. 12. When Defendant wishes to put identification in issue, Defendant will state that a plaintiff "failed as a matter of law to show that Lilly made the DES to which Plaintiff . . . was allegedly exposed." See, e.g., Defendant Eli Lilly and Company's Motion for Summary Judgment in Delaney v. Eli Lilly and Co., pg. 1, Mem. pg. 1, App. 13. Heeding is a separate issue, and if more than one issue is raised, the heeding issue will be raised separately. Compare Memorandum of Points and Authorities in Support of Defendant Eli Lilly and Company, A Corporation's Motion for Summary Judgment in Miskulin v. Abbott Labs, pg. 1 (exposure and heeding), App. 14, and Defendant Eli Lilly and Company's Motion for Summary Judgment in Tait v. Eli Lilly and Co., pg. 1, Mem. pg. 1-2 (exposure, identification, and heeding), App. 15 with Defendant Eli Lilly and Company's Motion for

16

Summary Judgment in <u>Kasparian v. Eli Lilly and Co.</u>, pg. 1, Mem. pg. 1-2 (heeding only), App. 16.

In the present case, Defendant gave as its basis for summary judgment only that "because Plaintiff has not and can not come forward with any evidence that her mother's treating and prescribing physicians *read or relied* on any warnings or statements made by Lilly," Def's Mtn. pg. 1 (emphasis added). Defendant's only express contention of exposure and identification in this case is a footnote on pg. 2 of its Memorandum of Points and Authorities where Defendant "does not concede" exposure or identification, but emphasizes that "the critical issue" is one of heeding. Def's Mem. at 2 n. 1. Furthermore, a motion for summary judgment that fails to cite any legal precedent or standards regarding an issue will not put the plaintiff on notice that the plaintiff needs to produce evidence on that issue. See <u>LeMaire v. Louisiana</u>, 480 F.3d 383, 2007 U.S. App. LEXIS 4255 at *11-12 (5th Cir. 2007). The mention of this issue in a footnote, even if meant to concede the issues of exposure and identification, is not sufficient to require Plaintiff to brief on those issues.

Defendant further stated in its reply brief that "the issue is not what brand of DES . . . the pharmacist allegedly *dispensed* to Mrs. Elman." Reply Brief at 3 (emphasis in original). Given Defendant's statements, especially the one in its Reply which disclaimed identification as an issue, Plaintiff's counsel assumed that only the heeding issue was in contention. The Court assumed that Lilly put exposure and product identification into issue – both assumptions were incorrect.

The Court's citations to Massachusetts cases where identification of the guilty party was a prerequisite to the case going forward are cases where product identification was specifically in issue. See, <u>e.g.</u>, <u>Spencer v. Baxter Int'l, Inc.</u>, 163 F. Supp. 2d 74, 77 (D. Mass. 2001)

("defendants assert that there is no triable issue of material fact on the element of causation, because the plaintiffs cannot trace Sharyn's HIV infection to a specific defendant's factor concentrate"); <u>Smith v. Ariens Co.</u>, 377 N.E.2d 954, 955 (Mass. 1978) ("defendant first argues [that] . . . there was insufficient evidence to identify the defendant as the manufacturer of the snowmobile"); <u>cf.</u> <u>Domestic Loan & Inv. Bank v. Ernst</u>, 6 Mass. L. Rep. 186, 1996 Mass. Super. LEXIS 113 at *8-9 (Mass. Super. Ct. Nov. 6, 1996) (a waste action instead of a product liability suit; a foreclosing bank sued two owners of a property for leaking oil tanks but only one could have been responsible for the leaks). Unlike <u>Spencer</u> or <u>Smith</u>, Defendant here did not assert a lack of product identification or exposure. In fact, Defendant disclaimed identification for the purpose of summary judgment in its Reply Brief. Only the issue of heeding was in contention, and the Court should not have explored the issues of exposure or product identification.

## V.    PLAINTIFF HAS ESTABLISHED THAT LILLY SHOULD NEVER HAVE MARKETED DES

As Plaintiff has now established exposure and identification, Plaintiff draws the Court's attention to subpart IV-A of its Memorandum in Opposition to Defendant's Motion to Summary Judgment, pgs. 11-12, which summarizes the testimony of Plaintiff's experts Dr. Falk and Dr. Piver that Lilly's warning for DES was inadequate from the first day it was promulgated. The Court has already correctly found that Plaintiff's expert testimony establishes that Lilly's warning was inadequate. <u>See</u> Mem. Op. at 10-11. A reasonable juror could find that no matter what the doctor relied or didn't rely upon, no matter what brand the doctor prescribed, Lilly should not have had its DES in the relevant drug store and is liable for causing Plaintiff's injury.

## VI.    LILLY'S CONTENTION THAT IT DID NOT RECOMMEND DES TO PREGNANT WOMEN IN 1970 IS SPECIOUS

As this Court found, Lilly never expressly rejected the prescription of DES to pregnant women. Mem. Op. at 2. In fact, Defendant's <u>PDR</u> entries contemplated the use of DES on

pregnant women.  Lilly states in the 1970 <u>PDR</u> that a "possible adverse reaction" on the fetus exists, so "the risk of estrogen therapy should be weighed against the possible benefits when diethylstilbestrol is considered for use in a known pregnancy."  1970 <u>PDR</u>, pg. 833, App. 6.  The <u>PDR</u> entry further states that while "nausea" is a side effect, its incidence is less in pregnant women, implying that any other side effects in pregnant women would be less severe.  <u>Id</u>.

As discussed above, Lilly had, for decades prior, stated that DES was for the prevention of miscarriage and the most effective drug for that purpose.  <u>See</u> 1954 <u>The Physician's Desk Reference</u> ("<u>PDR</u>"), page 467, 1959 <u>PDR</u>, page 699; 1966 <u>PDR</u>, page 693,  all App. 6; <u>De Re Medica</u>, App. 7.  Given the testimony of Plaintiffs' experts that the prescription of DES to pregnant women was a standard practice, a jury could assume that Lilly knew that DES continued to be used on pregnant women for the purpose of preventing miscarriage.  Lilly was obliged – if it knew DES was given to pregnant women – to issue a "Dear Doctor" letter or other specific warning to cancel out the prior decades of promotion.

**VII.    CONCLUSION**

Defendant submitted a motion wholly on the heeding presumption, and Plaintiff answered with enough evidence to defeat Defendant's motion on the law stated, according to this Court.  Plaintiff should not be prejudiced by her counsel's failure to append to Plaintiff's opposition all evidence of causation in this case; Plaintiff's counsel was not on notice that such evidence would be required.  Therefore, Plaintiff requests that the grant of summary judgment be overturned.

Respectfully submitted,

AARON M. LEVINE AND ASSOCIATES


_____/s/ Aaron M. Levine_____

Aaron M. Levine, #7864
1320 Nineteenth Street, N.W., Suite 500
Washington, D.C. 20036
(202) 833-8040

COUNSEL FOR PLAINTIFF