# Appendix 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NANCY NETHERLAND *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-654 (RMC) |
| | ) | |
| ELI LILLY AND COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is Nancy Netherland's motion to alter or amend the judgment in the Court's Memorandum Opinion and Order dated March 13, 2006, which granted summary judgment to Eli Lilly and Company ("Lilly") and dismissed her complaint. Despite the fact that Ms. Netherland's current predicament is solely the fault of her counsel, who assumed California law would apply and failed to conduct sufficient discovery, the Court finds that Ms. Netherland's motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) should be granted to avoid manifest injustice.

## I. BACKGROUND

This is a lawsuit to recover damages for injuries to Ms. Netherland caused by the ingestion of diethylstilbestrol ("DES") by her pregnant mother[1] to avoid a miscarriage. *See Netherland v. Eli Lilly and Co.*, No. 04-654, 2006 WL 626922 (D.D.C. March 13, 2006). The question raised by Lilly's motion for summary judgment, after full discovery, was whether Ms.

---

[1] The Court will refer to Plaintiff Nancy Netherland as "Ms. Netherland" and to her mother as "Mrs. Netherland."

Netherland had marshaled sufficient evidence to have a jury decide whether the DES taken by her mother was manufactured by Lilly and not some other pharmaceutical firm, as required by the Louisiana Product Liability Act ("LPLA"). La. Rev. Stat. § 9:2800.54. This Court determined that there was insufficient evidence from which a reasonable jury could find for Ms. Netherland and granted the motion.

In her opposition to Lilly's motion for summary judgment, Ms. Netherland argued that "the testimony of William Barclay, R. Ph., and [her] parents clearly demonstrate that only the Lilly brand of DES was dispensed from the K&B Pharmacy at 3100 Gentilly Boulevard" and that she was entitled to have a jury consider this evidence. *See* Pltfs.' Opp. to Summ. Judgment at 25. She insisted that "Mr. Barclay testified that he dispensed *only* the Eli Lilly brand of DES and knew of no other company who made it, that he properly identified the Lilly bottle and label, and – most importantly – *that Lilly has no witnesses or records indicating that DES manufactured by any drug company other than Lilly was stocked at K&B Pharmacy in 1963-64.*" Pltfs.' Surreply in Resp. to Reply Br. of Defs. at 10-11 (underlining added). This argument exaggerated and misconstrued the deposition testimony of Mr. Barclay and improperly suggested that Lilly, not Ms. Netherland, bore the burden of proof. Thus, it was rejected.

Mr. Barclay was deposed in a different DES case some years ago and, for reasons known only to Ms. Netherland's counsel, he was not deposed for this suit. Mr. Barclay was a first-year pharmacist in 1963-64, when Mrs. Netherland was pregnant. According to his deposition testimony, he never filled a DES prescription with anything other than Lilly DES. However, he acknowledged that K&B would fill a prescription as written by a doctor, even if it meant getting a requested drug from a wholesaler because K&B did not stock it. He stated that the K&B store at

-2-

3100 Gentilly Boulevard might have stocked DES manufactured by other manufacturers than Lilly,
although it generally stocked Lilly products. He admitted that the K&B store at 3100 Gentilly
stocked drugs manufactured by Squibb and Upjohn, also manufacturers of DES in 1963 and 1964,
although he did not know if the store carried their DES products. He testified that the 3100 Gentilly
Boulevard pharmacy was the largest K&B at the time and was very busy. He was never asked about
prescriptions filled by other pharmacists, about the store's hours, about his own working hours, or
his familiarity with prescriptions filled by others. Mr. Barclay gave no testimony about prescriptions
for Mrs. Netherland. No pharmacy records exist. In addition, Ms. Netherland's parents can only
testify that Mrs. Netherland took DES, but they have no knowledge of its manufacturer. Mrs.
Netherland's physician has closed his practice and there are no records remaining.

> Thus, [at the time,] the record reveal[ed] two unconnected facts: Mrs.
> Netherland ingested DES that she purchased from K&B at 3100 Gentilly
> Boulevard and Mr. Barclay dispensed DES manufactured by Lilly from the
> K&B at 3100 Gentilly Boulevard.... [N]o reasonable jury could bridge the
> gap.*
>
> * Neither party suggests that the totality of Mr. Barclay's evidence is
> not before the Court. The fact that the Netherlands rely on Mr.
> Barclay's deposition testimony from another case indicates that Mr.
> Barclay was unavailable for deposition by these parties and would be
> unavailable to testify at trial. Thus, the Court does not envision a
> circumstance in which a jury would have *more* evidence.

*Netherland v. Eli Lilly and Company*, 2006 WL 626922 at *10.

## II. ANALYSIS

Discovery in this case closed on July 8, 2005. Lilly filed its motion for summary
judgment on August 26, 2005. In light of Lilly's arguments, Ms. Netherland's counsel attempted
to locate Mr. Barclay in early September 2005, but was unable to do so successfully because of

Hurricane Katrina. The effort was renewed in light of the Court's opinion, and Ms. Netherland

submits an affidavit from Mr. Barclay with her motion to alter or amend the judgment of the Court.

Lilly moves to exclude it. Lilly aptly relies on *Galvin v. Eli Lilly and Company*, No. 03-1797, 2005

WL 3272142 (D.D.C. Sept, 12, 2005), in which Judge Colleen Kollar-Kotelly of this Court ruled:

> Plaintiff cannot receive Defendant's motion for summary judgment and
> then go in search of new evidence with which to attack Defendant's
> arguments. This contradicts the very notion of a discovery process in which
> the parties marshal their evidence and disclose it to the other side before
> making arguments based on the available evidence.

*Id.* at *2. This Court agrees with Judge Kollar-Kotelly's analysis and would happily apply it here

but for one important distinction: Judge Kollar-Kotelly also considered the late-acquired evidence

and found that it would have made no difference to her analysis so that she did not have to consider

whether manifest injustice would occur if she denied the motion. *Id.* Here, Mr. Barclay's recent

affidavit contains statements that would have caused a different result on summary judgment had

it been presented. "A Rule 59(e) motion is discretionary and need not be granted unless the district

court finds that there is an intervening change of controlling law, the availability of new evidence,

or the need to correct a clear error or *prevent manifest injustice*." *Firestone v. Firestone*, 76 F.3d

1205, 1208 (D.C. Cir. 1996) (per curiam) (emphasis added; internal quotations omitted). Under the

circumstances of this case, the Court must evaluate whether manifest injustice would result from a

denial of Ms. Netherland's Rule 59(e) motion.

Most of Ms. Netherland's memorandum merely argues that her lawyers are right and

the Court was wrong on the facts and the law that govern this case. "[A] motion to reconsider must

establish more than simply the [party's] continued belief that the court's decision was erroneous."

*New York v. United States*, 880 F. Supp. 37, 39 (D.D.C. 1995). The Court will not take the time to

-4-

instruct counsel on their errors of fact, law, and procedure but notes that a motion under Rule 59(e) is not an opportunity to re-argue points already decided. *See New York*, 880 F. Supp. at 38 ("A Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled."); *see also Zyko v. Dep't of Defense*, 180 F. Supp.2d 89, 91 (D.D.C. 2001) (holding that a Rule 59(e) motion is not "a vehicle for presenting theories or arguments that could have been advanced earlier").

        Ms. Netherland also argues that the Court should accept and consider the supplemental statement of Mr. Barclay "in light of his prior unavailability due to Hurricane Katrina." Pltf.'s Mem. at 12 (lower case substituted). This is a most disingenuous argument that is flat-out untrue. Mr. Barclay was fully available to Ms. Netherland in New Orleans at all times before discovery closed on July 8, 2005. Ms. Netherland's counsel only went looking for Mr. Barclay at the end of August 2005, when she received Lilly's motion for summary judgment and realized that Louisiana law might apply and that she might not have sufficient evidence to support Ms. Netherland's claim. *See* Pltfs.' Mem. at 12-13 (counsel "were in the process of obtaining further testimony from William Barclay, the registered pharmacist at K&B Drugs, *in response to Lilly's Motion*, when Hurricane Katrina struck" (emphasis added)).[2] Then, "[u]pon receipt of the Court's Memorandum Opinion, Plaintiffs moved quickly to locate Mr. Barclay, were fortunate to find him in a still-damaged area of New Orleans, and traveled personally to him to obtain his statement." Pltfs.' Reply at 5. This is not "new evidence" as contemplated by Rule 59(e). *See Firestone*, 76 F.3d

---

    [2] Indeed, this quote demonstrates part of Ms. Netherland's problem with this case: her lawyer describes Mr. Barclay as "the registered pharmacist at K&B Drugs," when at the time, he was a first-year pharmacist in a very large drug store with many other more experienced pharmacists and multiple shifts. This kind of exaggeration permeates Ms. Netherland's arguments.

at 1208; New York, 880 F. Supp. at 39. Indeed, Mr. Barclay's supplemental statement not only contradicts his sworn deposition testimony but is inherently contradictory. Now purporting to "clarify" his deposition, Mr. Barclay states "[w]hile I stated during the deposition that K&B carried many different brands of *drugs*, I did not intend that to be construed to mean that they carried other brands of *diethylstilbestrol* while I worked for them in the 1960s." Barclay Supp. Statement ¶ 4, although "at least 90% of the DES dispensed by K&B was the Lilly brand in the time period that includes 1963-64," leading to the conclusion that at least ten percent must have been another company's brand. *Id.* ¶ 6.

Nonetheless, the Court will grant Ms. Netherland's motion. There is no dispute that Ms. Netherland suffers a mal-formed uterus as a result of DES ingestion by her mother when Ms. Netherland was *in utero*. Because of this injury, Ms. Netherland cannot bear children. The question before the Court is not whether Lilly DES is responsible for Ms. Netherland's injuries but whether Ms. Netherland has presented sufficient evidence to withstand a motion for summary judgment. At the time of the Court's ruling, she had not. Now, Mr. Barclay's statement is that 90% of the DES dispensed at the K&B at 3100 Gentilly Boulevard was the Lilly brand. For all the reasons stated by Judge Kollar-Kotelly, this information is much too late and has inherent problems. But the Court finds that it must avoid a manifest injustice to Ms. Netherland and allow her to present her evidence to a jury for its determination of the facts. A lawyer's errors should not be visited upon a client when adherence to the Rules would work a manifest injustice.

The Court amends its Memorandum Opinion and Order issued on March 13, 2006, in this matter and denies Lilly's motion for summary judgment.

**SO ORDERED.**

Date: June 30. 2006

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge