UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MELISSA KELLEY<br><br>            Plaintiff,<br><br>    v.<br><br>ELI LILLY AND COMPANY<br><br><br>            Defendant. | Civil Action No. 05-CV-1882 (RCL) |

**DEFENDANT ELI LILLY AND COMPANY'S OPPOSITION TO PLAINTIFF'S
MOTION FOR RECONSIDERATION OF AMENDMENT OF
THE COURT'S GRANT OF SUMMARY JUDGMENT**

**I.  INTRODUCTION**

Defendant Eli Lilly and Company ("Lilly") moved for summary judgment in this case because Plaintiff produced no evidence that Dr. Safon ever read, relied on, or even was aware of Lilly's product warnings and literature.  All of Plaintiff's claims revolve around an alleged defect in Lilly's product literature.  Without evidence that Dr. Safon ever relied on Lilly's materials, Plaintiff cannot show that Dr. Safon would not have prescribed DES to Plaintiff's mother but for Lilly's inadequate literature.

This Court granted Lilly's Motion for Summary Judgment on the basis that there was no evidence that Dr. Safon prescribed Plaintiff's mother DES at all, no less consulted Lilly's warnings.  In response, Plaintiff filed a Motion for Reconsideration or Amendment of the Court's Grant of Summary Judgment ("Motion for Reconsideration") including new evidence regarding product exposure and identification.  Plaintiff's motion highlights deposition testimony from Plaintiff's mother that DES was prescribed.  Lilly acknowledges that it did not seek summary

judgment on product exposure or product identification, and does not contest these issues here, although they will be challenged at trial.

Even with the new materials cited in Plaintiff's Motion for Reconsideration, there is still no evidence that Dr. Safon prescribed *Lilly's* DES, or ever read, relied on, or even was aware of *Lilly's* product warnings and literature. The fact remains that DES was a generic drug, never patented, that was never proprietary to any company. *Kelley v. Eli Lilly*, Civ. Action No. 05-CV-01882-RCL, Docket Entry No. 23, April 27, 2007, p. 2. In 1970-1971, the years that Ms. Kelley's mother allegedly took diethylstilbestrol, at least 50 companies manufactured diethylstilbestrol. *Id.* Each of these companies was required by Federal Regulations to provide product instructions and warnings. *Id.* In addition to these different materials, a physician could learn about a drug from various other sources, including his own education, medical conferences, colleagues, medical journals, etc.

To meet her burden, Plaintiff must show that Lilly's materials, as opposed to one of these numerous other sources, caused Plaintiff's injuries. To do so, Plaintiff must prove that were it not for the inadequacy of Lilly's product literature, Dr. Safon would not have prescribed DES to Plaintiff's mother, and, thus, Plaintiff's injuries would not have occurred. Without any evidence that Dr. Safon relied on Lilly's product literature, Plaintiff has failed to meet this burden.

## II.  ARGUMENT

### A.  The Only Relevant Question Is Whether Dr. Safon Relied on Lilly's Product Literature.

Each of Plaintiff's claims -- negligence, strict liability, breach of warranty, and negligent misrepresentation -- rests on the alleged wrong of inadequate disclosure. Because the warning is central to each claim, each claim requires Plaintiff to prove that Lilly's written materials were

read and relied upon by the prescribing doctor, that the doctor would not have prescribed the drug had different warnings been provided, and, thus, Plaintiff's injury would not have followed.

As this Court highlighted in the negligent misrepresentation context, "plaintiff has produced no medical records or prescription records that Dr. Safon *ever prescribed the defendant's DES to the plaintiff's mother, or relied on the defendant's literature . . . .* in light of these facts, no rational jury could find reliance on the defendant's product warnings." *Kelley v. Eli Lilly*, Civ. Action No. 05-CV-01882-RCL, Docket Entry No. 23, April 27, 2007, p. 15 (emphasis added). These facts have not changed. The new testimony cited in Plaintiff's Motion for Reconsideration regarding Plaintiff's mother's exposure to DES generally or the Drug Fair's alleged dispensing of Lilly's DES does not shed any further light on what Dr. Safon relied upon in prescribing DES. There is no evidence that Dr. Safon had any connection to the Drug Fair pharmacy or any familiarity with the brands dispensed there. What the pharmacy distributed has no bearing on what Dr. Safon relied upon in deciding to prescribe DES. Thus, Plaintiff's motion should not alter the Court's ruling.

### B. The Heeding Presumption Does Not Apply to this Case.

Plaintiff attempts to hurdle her burden by relying on the heeding presumption. The heeding presumption is not applicable in this case. As a necessary predicate, before gaining the benefit of the rebuttable heeding presumption, Plaintiff must produce evidence *that the particular defendant failed to warn the specific physician who wrote the prescription.* This predicate proof establishes the nexus between the defendant's act -- the warning -- and the prescription that allegedly caused the harm. Plaintiff has not supplied this proof. Without this link, Lilly and its product literature simply have no connection to the events at issue.

This Court skipped the requisite preliminary step of connecting Lilly's product literature with Dr. Safon before applying the heeding presumption. In relying solely on the statements of

Dr. Falk and Dr. Piver regarding the inadequacy of Lilly's warnings to trigger the heeding

presumption, the Court did not find a nexus between Lilly's materials and Dr. Safon.  There is no

basis to apply the heeding presumption without that prerequisite connection.  In every case

Plaintiff relies upon for the heeding presumption, even in the Motion for Reconsideration, the

manufacturer was specifically identified.  *See e.g., Garside v. Osco Drug, Inc.*, 976 F.2d 77, 78-

79 (1st Cir. 1992) (McKesson's Phenobarbital prescribed); *Knowlton v. Deseret Medical, Inc.*

930 F.2d 116, 118 (1st Cir. 1991) (Deseret Medical's catheter and needle used during surgery);

*McCue v. Norwich Pharmacal Co.*, 453 F.2d 1033 (1st Cir. 1972) (Norwich's Furadantin drug

prescribed);  *Colter v. Barber-Greene Co.*, 525 N.E.2d 1305, 1307 (Mass. 1988)(no discussion of

heeding presumption in non-pharmaceutical case); *Linnen v. A.H. Robins Co., Inc.*, 1999 Mass.

Super. LEXIS 552, *2 (Mass. Super. Ct. 1999)("fen-phen" prescribed was manufactured by

AHP); *DeLuryea v. Winthrop Lab.*, 697 F.2d 222, 223 (8th Cir. 1983)(defendant's Talwin

prescribed). Plaintiff cannot gain the benefit of the heeding presumption because she has not

shown whose, if any specific manufacturer's, DES Dr. Safon prescribed or which manufacturer's

warnings, if any, Dr. Safon read and relied upon.

    While it would be reasonable to presume that a doctor would heed Lilly's warnings if he

prescribed Lilly's product specifically or if evidence indicated that he had Lilly's warnings

available, it is unreasonable to apply the heeding presumption without any evidence that the

prescribing physician was even aware of Lilly's warnings.  This is especially true where Dr.

Safon could have consulted the product literature of one of the 50 other manufacturers of DES in

1970/1971.  Suppose that Dr. Safon had a preference for Wyeth's DES and was familiar only

with Wyeth's literature, or that he learned about DES in medical school and never referred to any

manufacturer's product literature.   In either case, Lilly's literature would not have had any impact on his prescription decision.

In the alternative to the heeding presumption, Plaintiff attempts to argue broadly that liability follows the drug dispensed and consumed regardless of what warnings are implicated. The cases Plaintiff cites all involve brand name manufacturers sued despite the fact that the plaintiffs were never exposed to the brand name drug, but rather consumed a generic version. These cases, however, only address motions by the brand name manufacturers seeking dismissal/summary judgment because their products were never consumed by the injured plaintiffs.  The premise of these holdings, which Lilly would not contest, is that a manufacturer cannot be held liable for harm caused by another company's product.  *See Kelly v. Wyeth*, 2005 MASS SUPER LEXIS 688, *15 (2005)(holding "Wyeth owed no duty to the users of a generic equivalent of one of their products"); *Foster v. American Home Prod. Corp.*, 29 F.3d 165, 167 (4th Cir. 1994)("we hold that a name brand manufacturer cannot be held liable on a negligent misrepresentation theory for injuries resulting from the use of another manufacturer's product . . . ."); *Goldych v. Eli Lilly & Co.*, 2006 US DIST. LEXIS 49616, *6 (N.D.N.Y. July 19, 2006)("The central issue is whether a prescription drug manufacturer can be liable for death caused by another company's generic equivalent"); *Colacicco v. Apotex, Inc.*, 432 F.Supp.2d 514, 537-38 (E.D. Pa. May 25, 2006)(dismissing claims against brand and generic manufacturers based on preemption because federal law required the generic product labeling to be identical to the approved brand drug and the FDA stated that any warning enhancement by the generic manufacturer would have been false or misleading).[1]

---

[1] The *Colacicco* court further stated, regardless of preemption, that a brand name manufacturer does not owe a legal duty to consumers of a generic equivalent of its drug. *Id.*  While the court held that the generic manufacturer owed a duty of care to the plaintiff who consumed its drug, the plaintiff's negligence claims were still dismissed based on preemption. *Id.*  at 553-554.

These courts did not decide the issue of whether a manufacturer could be held liable for inadequate warnings without evidence that its product literature was consulted by the prescribing physician.  In fact, in the only case alleging claims for inadequate warnings against the generic manufacturer whose product was consumed (but potentially not prescribed specifically), the generic manufacturer highlighted that its warnings were the exact same as the brand name warnings.  *See Colacicco,* 432 F.Supp.2d at 543(generic manufacturer copied exact labeling from the brand name manufacturer's drug Paxil).  Thus, the issue of what the prescribing doctor relied upon was not presented.

Here, there is no such evidence that the product literature among the 50 DES manufacturers was the same.  In fact, it is clear that the literature was not the same given the different dosages and uses ascribed by each DES manufacturer.  *See American Druggist Blue Book* ("Blue Book"), 1970 and 1971 (excerpts attached as at Exhibit 4 to Affidavit of Lynn M. Zuchowski made in support of Defendant Eli Lilly and Company's Motion for Summary Judgment ("Zuchowski Aff."); *Drug Topics Red Book* ("Red Book"), 1970 and 1971 (excerpts attached as at Exhibit 5 to Zuchowski Aff.).  To the extent that Plaintiff attempts to rely on the 1941 letter from Dr. Hines (Lilly) to Dr. Morrell (Squibb) for the proposition that DES labeling was industry wide and that Lilly took the lead on labeling with the FDA, this proposition is absolutely false.  The letter addresses several companies' applications for FDA approval for Diethylstilbestrol *in 1941 for uses not including the prevention of certain accidents in pregnancy*.  DES was not even approved for use in pregnancy until 1947.  After 1947, Lilly's (and other manufacturer's) warnings changed several times, and each updated version, for each company, was approved by the FDA.  These changes included, for Lilly, the deletion of the accidents in pregnancy indication as reflected in Lilly's product literature in 1970/1971. Thus,

this letter has no bearing on what Lilly's or any other manufacturer's product literature looked like in 1970/1971, nor does it shed light on what Dr. Safon relied upon in allegedly prescribing DES.

Thus, Plaintiff's claims must fail because she has not produced any evidence that Dr. Safon read, relied upon, or was even aware of *Lilly's* product literature. Neither the heeding presumption nor false speculation regarding industry-wide labeling assist Plaintiff in meeting her burden.

## III. CONCLUSION

For the foregoing reasons, Lilly respectfully requests this Court deny Plaintiff's Motion for Reconsideration.

<u>**REQUEST FOR HEARING**</u>

Pursuant to LCvR 7(f), Lilly requests a hearing on its Opposition to Plaintiff's Motion for Reconsideration or Amendment of the Court's Grant of Summary Judgment.

Respectfully submitted,

ELI LILLY AND COMPANY

/s/ James. J. Dillon
James J. Dillon, D.C. Bar # 485593
Foley Hoag LLP
155 Seaport Boulevard
World Trade Center West
Boston, MA 02210-2600
(617) 832-1000

Dated: May 21, 2007

and

Lawrence H. Martin, D.C. Bar # 476639
Foley Hoag LLP
1875 K Street, NW, Suite 800
Washington, D.C. 20006-1238
(202) 223-1200

<u>Certificate of Service</u>

     I hereby certify that on May 21, 2007, a copy of the foregoing Reply Brief in Support of Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                        /s/ Lauren Dwyer

                       Lauren E. Dwyer, Esq.
                       FOLEY HOAG LLP
                       155 Seaport Boulevard
                       Boston, MA 02210-2600
                       (617) 832-1000