UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MELISSA KELLEY

        Plaintiff,

v.

ELI LILLY AND COMPANY

        Defendant.

Civil Action No. 05-CV-1882 (RCL)

**DEFENDANT ELI LILLY AND COMPANY'S [PROPOSED] SUR-REPLY TO PLAINTIFF'S MOTION FOR RECONSIDERATION OR AMENDMENT OF THE COURT'S GRANT OF SUMMARY JUDGMENT**

Defendant Eli Lilly and Company ("Lilly") moved for summary judgment in this case because Plaintiff produced no evidence that Dr. Safon ever read, relied on, or even was aware of Lilly's product warnings and literature and therefore cannot show that Lilly's allegedly inadequate product warnings were ever a factor in the decision to prescribe this drug.  It is Plaintiff's burden to show that the Lilly literature was considered by the prescribing doctor, as that consideration would be the only nexus between the only wrong Lilly is alleged to have committed - inadequate warnings and warranties - and the claim in this case.  If the prescribing doctor made the decision to prescribe DES on some other basis, his own training and experience or the information provided by one of the fifty (50) other companies who separately marketed this drug under their own FDA approved labeling, then the alleged defect in Lilly's product literature is simply irrelevant to this claim.

Plaintiff essentially argues that Lilly was responsible for all of the information regarding DES in the marketplace as a whole, not just in Lilly's own literature and warnings.  Under Plaintiff's rationale, what Dr. Safon relied upon in deciding to prescribe DES to plaintiff's

mother is irrelevant because Lilly would be liable regardless of what Dr. Safon consulted, even if he consulted other warnings or nothing at all. Plaintiff's argument is not supported by law. In Massachusetts, a prescription drug manufacturer's duty to warn runs to the physician who wrote the prescription in the specific case. *See Garside v. Osco Drug Inc.*, 976 F.2d 77, 80 (1st Cir. 1992). No single manufacturer is responsible for all of the information available to the physician, but is only responsible for its own product literature and warnings.

This case presents an historical oddity in several ways. It predates the use of Patient Package Inserts and the now routine practice of printing essentially all package inserts in the Physician's Desk Reference. The events here also predate the 1984 amendment to the Federal Food, Drug, and Cosmetic Act that allowed generic drug manufacturers to produce and sell versions of the original manufacturer's drug previously approved by the FDA, once the manufacturer's patent expired, on the condition that the generic product literature mirror the previously approved manufacturer's. *See* 21 U.S.C. § 355(j); *Kelly v. Wyeth*, 2007 Mass. Super. LEXIS 136, *8-9 (Mass. Super. Ct. April 12, 2007). Unlike current generic drugs that follow on an earlier patent protected proprietary drug, DES was never patented by anyone. Each company that sold the drug did so with its own FDA approved product literature. Given that DES was approved by the FDA for multiple uses and in multiple dosages, there is no reason to assume, and certainly no evidence to support, the proposition that all fifty (50) companies had the same product literature.

Given this history, the line of generic drug cases that Plaintiff cites for the proposition that Lilly is responsible regardless of what Dr. Safon relied upon is inapplicable. In each of these generic drug cases, the warnings at issue among the defendants (brand and generic manufacturers) were the same. *See e.g., Kelly*, 2007 Mass. Super. LEXIS 136, *8-9; *Colacicco*

*v. Apotex Inc.*, 432 F.Supp.2d 514, 537-38 (E.D. Pa. May 25, 2006).  The generic defendant manufacturers did not contest that their warnings were the same as the brand name manufacturer who first received FDA approval, but highlighted this fact in their defenses regarding the content of the warnings.  *Id.*  Thus, unlike with DES, the information available to the prescribing physician from the various defendants in these cases was indisputably the same.

While it may make sense to apply the heeding presumption without proof of what the prescribing physician relied upon in cases where the warnings he could have consulted were all the same, that logic does not apply to this historically different generic drug case.  There is no evidence that the 1970/1971 product literature among the 50 DES manufacturers was the same.  In fact, the 1970/1971 literature was likely not the same given the different dosages available from DES manufacturers.  *See American Druggist Blue Book* ("Blue Book"), 1970 and 1971 (excerpts attached as at Exhibit 4 to Affidavit of Lynn M. Zuchowski made in support of Defendant Eli Lilly and Company's Motion for Summary Judgment ("Zuchowski Aff."); *Drug Topics Red Book* ("Red Book"), 1970 and 1971 (excerpts attached as at Exhibit 5 to Zuchowski Aff.).  Lilly's indications and warnings changed over time,  including the change in Lilly's literature by 1969 to delete the indication of use for certain accidents in pregnancy.  The record simply does not reflect what any other company said in their separately approved FDA literature.

Plaintiff's reliance on *Linnen v. A.H. Robins Co., Inc.*, 1999 Mass. Super. LEXIS 552, *3-4 (Mass. Super. Ct. 1999), is equally unpersuasive as the generic drug cases because that case involved a patented drug and, thus, only one source of information regarding the drug on the market.  Plaintiff cites *Linnen* for the broad proposition that the heeding presumption applies even when there is no specific evidence that a doctor consulted a manufacturer's warnings.  The trial court in *Linnen* applied the heeding presumption for the prescribing doctor without evidence

that she consulted the defendants'[1] literature because there was evidence that she had consulted other experts in the field regarding the drug "fen-phen." *Id.* at *12. The court assumed that those experts could have relied upon the defendants' product literature and, thus, applied the heeding presumption on that basis. First, there is no such evidence here of what or who Dr. Safon consulted regarding his prescription. Second, the assumption in *Linnen* that the manufacturers' warnings would have been relied upon is more reasonable because the fenfluramine at issue was a patented drug with a single manufacturer providing information to the market. As discussed above, DES was never patented and, as a result, over 50 manufacturers had their own FDA approved product literature. Thus, the *Linnen* case is not applicable in the historical context of an unpatented drug.

Plaintiff also cites cases where a specific drug product was prescribed by name in support of her argument that Lilly is responsible no matter whose product literature may have been reviewed. In *Allen v. Upjohn Co.*, 1981 Tenn. App. LEXIS 604, *3 (Tenn. App. Ct. 1981), for instance, the plaintiff was prescribed each of the defendants' products by brand name. *Id.* at *3, n. 1. Where a doctor prescribes a particular brand, it would be logical to assume that he relied on that manufacturer's literature regarding its product. This is not the case here, however, where DES was a generic drug and there is no indication that Dr. Safon specified the Lilly brand in his prescription. Thus, these cases are also inapplicable. *See also* Lilly's Reply Brief in Support of its Motion for Summary Judgment, p. 7 (discussing additional heeding cases with identified manufacturer); Lilly's Opposition to Plaintiff's Motion for Reconsideration or Amendment of the Court's Grant of Summary Judgment, p. 4 (same).

---

[1] The court in *Linnen* referred to the defendants collectively because Defendant Wyeth-Ayerst Laboratories Division of American Home Products Corporation owned defendant A.H. Robins Co., Inc. Thus, there was a single manufacturer of the fenfluramine at issue.

In addition to the above arguments, Plaintiff misapplies several other cases in her Reply Brief that warrant clarification.  First, Plaintiff attempts to build her motion with citation to cases applying market share liability, which Massachusetts rejects.  *Compare Dalke v. Upjohn Co.*, 555 F.2d 245 (9th Cir. 1977)(reversing summary judgment for defendant in market share case on adequacy of warning where prescribing doctor testified that he read the PDR and consulted various package inserts), *with Payton v. Abbott Labs.*, 437 N.E. 2d 171, 188-190 (Mass. 1982)(rejecting market share liability in Massachusetts).  In a market share case, a defendant is liable if it sold the offending drug during the relevant time period, regardless of whether the specific defendant's drug caused the plaintiff's harm.  There is, therefore, no cause to require proof that a manufacturer's warnings were read and relied upon.  *See* Defendant Eli Lilly and Company's Reply Brief in Support of its Motion for Summary Judgment , p. 8.  This relaxed burden of proof is not applicable here.

Second, Plaintiff cites *Theer v. Philip Carey*, 628 A.2d 724 (N.J. 1993), in support of the proposition that the heeding presumption applies where the doctor to be warned has died.  *Theer*, however, did not involve a prescribing doctor or a prescription drug.  It addressed claims by the spouse of an individual injured by asbestos exposure in the workplace.  In deciding whether the deceased spouse would have changed his behavior had different asbestos warning been provided, the New Jersey court applied a more generous heeding presumption for the deceased because he was exposed to the offending product while completing mandatory tasks at work.  *Id.* at 729-730.  This rule arising from obligatory workplace tasks is not relevant to the current action.  *Id.*

Even with the new cases and inapplicable legal theories cited in Plaintiff's Reply Brief, there is still no evidence that Dr. Safon prescribed *Lilly's* DES, or ever read, relied on, or even was aware of *Lilly*'s product warnings and literature.  Thus, Plaintiff's claims must fail because

she has not produced any evidence that *Lilly's* product literature and warnings caused her injuries.

## CONCLUSION

For the foregoing reasons, Lilly respectfully requests this Court deny Plaintiff's Motion for Reconsideration.

                                                             Respectfully submitted,

                                                             ELI LILLY AND COMPANY

                                                            /s/ James. J. Dillon
                                                            James J. Dillon, D.C. Bar # 485593
                                                            Foley Hoag LLP
                                                            155 Seaport Boulevard
                                                            World Trade Center West
                                                            Boston, MA 02210-2600
                                                            (617) 832-1000

                                                            and

Dated: June 5, 2007

                                                            Lawrence H. Martin, D.C. Bar # 476639
                                                            Foley Hoag LLP
                                                            1875 K Street, NW, Suite 800
                                                            Washington, D.C. 20006-1238
                                                            (202) 223-1200

- 7 -

<u>Certificate of Service</u>

     I hereby certify that on June 5, 2007, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

      /s/ Lauren Dwyer
Lauren E. Dwyer, Esq.
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000